Julie E. Schwartz, CA Bar No. 260624
JSchwartz@perkinscoie.com
**PERKINS COIE LLP**
3150 Porter Drive
Palo Alto, CA 94304-1212
T: 650.838.4300
F: 650.838.4350

Hayden M. Schottlaender, TX Bar No. 24098391
(Application for Admission *PHV* Forthcoming)
HSchottlaender@perkinscoie.com
**PERKINS COIE LLP**
500 N. Akard St., Suite 3300
Dallas, TX 75214
T: 214.965.7700
F: 214.965.7799

Attorneys for Movant
**TWITTER, INC.**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| *In re DMCA Sec. 512(h) Subpoena to Twitter, Inc.* | Case No. 4:20-mc-80214 DMR |
| | **TWITTER'S NOTICE OF MOTION AND MOTION TO QUASH** |
| | Date: March 11, 2021<br>Time: 1:00 p.m.<br>Judge: Hon. Donna M. Ryu<br>Courtroom 4, 3rd Floor |

**NOTICE OF MOTION AND MOTION TO QUASH**

**PLEASE TAKE NOTICE** that on March 11, 2021, at 1:00 p.m. or as soon thereafter as this matter may be heard, in Courtroom 4, Third Floor, of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, Movant Twitter, Inc. ("Twitter") will, and hereby does, move to quash the subpoena issued to it by Bayside Advisory, LLC ("Applicant").

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, the Declaration of Hayden M. Schottlaender, all pleadings and papers on file in this action, and such other matters as the Court may consider.

DATED:  January 23, 2021

PERKINS COIE LLP

By: */s/ Julie E. Schwartz*
    Julie E. Schwartz

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .......................................................................................................... 1

II.     BACKGROUND .......................................................................................................... 2

III.    ARGUMENT ............................................................................................................... 7

        A.      The Highfields Test Applies to This Dispute........................................................ 8

        B.      The Subpoena Is Unlikely to Survive First Amendment Scrutiny....................... 10

                1.      Bayside Cannot Maintain a Copyright Action if the Account Was
                        Engaged in Fair Use .......................................................................... 10

                        a.      The Tweets Were Transformative and Non-Commercial ............. 11

                        b.      Candid Photographs Are Primarily Factual Works Not
                                Warranting Significant Copyright Protection .............................. 12

                        c.      The Third Factor, Amount of Property Used, Is Neutral for
                                Fair Use Analysis for Photographs ................................................ 12

                        d.      There is Limited or No Market for the Photographs at Issue........ 13

                2.      The Balance of Harms Weighs Heavily Against Bayside ....................... 13

                        a.      The Account Is Likely to Be Irreparably Injured, and
                                Criticism of Private Equity Figures Would Be Chilled ................ 14

                3.      Bayside Appears to Have No Interests Warranting Protection................. 14

IV.     CONCLUSION........................................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Art of Living Found. v. Does 1-10,*
    No. 10-CV-05022-LHK, 2011 WL 5444622 (N.D. Cal. Nov. 9, 2011)........................9, 10, 14

*Campbell v. Acuff-Rose Music, Inc.,*
    510 U.S. 569 (1994) .................................................................................................11, 12, 13

*Fitzgerald v. CBS Broad., Inc.,*
    491 F. Supp. 2d 177 (D. Mass. 2007) ....................................................................................12

*Highfields Cap. Mgmt., L.P. v. Doe,*
    385 F. Supp. 2d 969 (N.D. Cal. 2005) ............................................................................ passim

*In re Anonymous Online Speakers,*
    661 F. 3d 1168 (9th Cir. 2011)...............................................................................................8

*In re DMCA Subpoena to Reddit, Inc.,*
    441 F. Supp. 3d 875 (N.D. Cal. 2020) ..........................................................10, 11, 12, 13

*Katz v. Google Inc.,*
    802 F.3d 1178 (11th Cir. 2015)........................................................................11, 12, 13

*McIntyre v. Ohio Elections Comm'n,*
    514 U.S. 334 (1995) .................................................................................................................8

*Music Grp. Macao Com. Offshore Ltd. v. Does,*
    82 F. Supp. 3d 979 (N.D. Cal. 2015) ...................................................................................8, 9

*Seltzer v. Green Day, Inc.,*
    725 F.3d 1170 (9th Cir. 2013)...........................................................................................12, 13

*Sony Music Entertainment Inc. v. Does 1-40,*
    326 F. Supp. 2d 556 (S.D.N.Y. 2004).......................................................................9, 10, 13

**STATUTES**

17 U.S.C. § 107 ............................................................................................................10, 11

17 U.S.C. § 512 ...................................................................................................................6, 7, 9

**TABLE OF AUTHORITIES**
(continued)

Page

**OTHER AUTHORITIES**

Antoine Gara, *Robert Smith Breakup Exclusive: Billionaire Brian Sheth Reveals Why He's Leaving Vista Following Tax Evasion Case,* Forbes Daily Cover (Nov. 26, 2020), https://www.forbes.com/sites/antoinegara/2020/11/26/billionaire-breakup-robert-smiths-tax-fraud-and-a-bout-of-covid-send-vistas-brian-sheth-packing/?sh=5b075122733c ........................................................................................6

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

## I.     INTRODUCTION

3      Twitter, Inc. ("Twitter") respectfully requests that the Court quash a subpoena issued by

4   Bayside Advisory LLC ("Bayside") to Twitter on December 2, 2020 (the "Subpoena").

5      The Subpoena seeks to identify the anonymous account holder(s) who operate the

6   @CallMeMoneyBags account (the "Account") on Twitter. In October 2020, the Account posted a

7   series of Tweets (messages on Twitter) containing pictures of women, alongside commentary

8   such as "Brian Sheth is the King of Private Equity," and "Life is good when you are Brian

9   Sheth." Brian Sheth is the billionaire former President and co-founder of Vista Equity Partners.

10      The pictures themselves appear to be candid snapshots like those commonly found on

11   social media. Nonetheless, weeks later, Bayside (whose connection to Sheth is unknown[1])

12   registered copyrights to those photographs, directed Twitter to remove the photographs under the

13   Digital Millennium Copyright Act ("DMCA"), and then requested that the Clerk of this Court

14   issue a subpoena to Twitter to unmask the user who posted the photographs. The Subpoena

15   issued, and Twitter objected for numerous reasons, including on the grounds that Bayside had not

16   satisfied the First Amendment safeguards applicable to anonymous speech.

17      Specifically, anonymous online speech is protected by the First Amendment, and

18   therefore, before a litigant may use a subpoena to unmask an anonymous speaker, they must

19   demonstrate evidence of "real harm" that outweighs the speaker's First Amendment rights. *See*

20   *Highfields Cap. Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 975-76 (N.D. Cal. 2005)

21   ("*Highfields*"). This "real evidentiary basis" requires evidence that a plaintiff can establish a

22   *prima facie* claim against the defendant in question. *Id.* at 970–71 (citation omitted).

23      Here, Twitter is concerned that the Subpoena is an attempt to use copyright law to

24   suppress public criticism or rumors of extramarital affairs. Indeed, it appears that Bayside could

25   not maintain a *prima facie* claim of copyright infringement because the speech at issue here

26

27      [1] Indeed, very little about Bayside is known. Bayside does not appear to be registered to do
business in California; it does not publicly conduct any business; and Twitter has been unable to
28   otherwise determine who Bayside is or what Bayside does.

1    constitutes fair use. It presents the copyrighted photographs not for any commercial purpose, but

2    exclusively for parodical criticism and commentary.

3        Moreover, the balance of harms weighs heavily against Bayside. If unmasked, the

4    Account's speech and that of others like it—those critical of Sheth and other private equity firms

5    and figures—will be chilled, potentially into nonexistence, by the threat of suit. The copyright

6    harms to Bayside, on the other hand, are virtually nonexistent. These photographs appear to have

7    limited, if any, commercial value.

8        The court should refuse to permit copyright law to be weaponized in this manner and

9    quash Bayside's subpoena.

10                    **II.        BACKGROUND**

11       Twitter is an online communications platform that permits users to pseudonymously

12   publish content such as text and photographs in the form of Tweets. Declaration of Hayden M.

13   Schottlaender ("Schottlaender Decl."), ¶ 2.

14       The Account uses the handle @CallMeMoneyBags, viewable at

15   www.twitter.com/callmemoneybags. The Account has between 350 and 400 followers and the

16   publicly-viewable content posted by the Account demonstrates that the user primarily Tweets

17   about issues in the private equity space. Schottlaender Decl., ¶ 3. For instance, some of the most

18   recent Tweets from the account are disseminating a news article regarding a law firm's creation

19   of a #MeToo practice targeting private equity clients, and criticizing a party allegedly hosted by a

20   private equity firm that did not observe social distancing practices. *Id.*

21       In October 2020, the Account posted six Tweets, each mentioning Sheth. *Id.* The Tweets

22   also attached various images of women.[2] The Tweets and accompanying photographs at issue are

23   as follows:

24

25

26

27   _____

28       [2] The photographs at issue were sent to Twitter by Bayside in connection with their
     subpoena.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28









-3-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28









-4-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28







1   Schottlaender Decl., at ¶¶ 4, 12.

2        None of the Tweets mention Bayside. *Id.* ¶ 4. Twitter's counsel has attempted to learn the

3   connection between Bayside and Sheth or the images at issue but has been unsuccessful. *Id.*

4   Bayside does not appear to be registered to conduct business in California, and public searches of

5   Bayside reveal only an Ohio real estate holdings company with no apparent connection to Sheth

6   and no specialization in creating or acquiring copyrights of candid photographs. *Id.*

7        Sheth is the billionaire former President and co-founder of Vista Equity Partners. He is the

8   subject of a significant amount of media attention, particularly recently, as he left Vista Equity in

9   2020 in the wake of a highly publicized tax evasion case against the other co-founder of Vista

10  Equity Partners, Robert F. Smith.[3]

11       Bayside submitted to Twitter a DMCA takedown request for those six Tweets, before

12  registering copyrights for those photographs. [Doc. 1-1, Declaration of Robert E. Allen, at ¶ 3.]

13  Days later, the copyrights were registered. [Doc. 1, at 0.] Twitter has removed the photographs

14  from the platform pursuant to Bayside's DMCA request. Schottlaender Decl., ¶ 5.

15       Bayside then filed a request under 17 U.S.C. § 512(h) for the clerk of this Court to issue a

16  subpoena to Twitter to provide identifying information for the Account. [Doc. 1.]

17       That subpoena was served on Twitter on December 3, 2020. Schottlaender Decl., ¶ 6. It

18  sought compliance by December 4. *Id.* A cover letter accompanying the subpoena recognized that

19  December 4 "may no longer be a tenable deadline" and offered Twitter an extension of time if

20  necessary. *Id.,* at Exhibit A-1.

21       On December 14, Twitter objected to the subpoena on several grounds. Schottlaender

22  Decl., Ex. A-2. It objected that it had not been provided a reasonable time to review or respond to

23  the subpoena. *Id.* And it further objected that in order to unmask an anonymous online speaker,

24  Bayside would need to obtain a ruling from a Court that addressed the First Amendment

25  protections afforded that speaker. *Id.*

26

27       [3] Antoine Gara, *Robert Smith Breakup Exclusive: Billionaire Brian Sheth Reveals Why He's Leaving Vista Following Tax Evasion Case*, Forbes Daily Cover (Nov. 26, 2020), https://www.forbes.com/sites/antoinegara/2020/11/26/billionaire-breakup-robert-smiths-tax-fraud-and-a-bout-of-covid-send-vistas-brian-sheth-packing/?sh=5b075122733c

28

Thereafter, Twitter and Bayside met and conferred on Twitter's objections. Schottlaender Decl., Ex. A, at ¶ 9. Bayside contended that Twitter's First Amendment objection had no application to a copyright subpoena issued under Section 512(h). *Id.* Twitter asked for authority for that position and Bayside offered none. *Id.* Undeterred, Bayside demanded that Twitter comply and threatened that if Twitter continued to rely on its First Amendment objection, Bayside would move to hold Twitter in contempt. *Id.*

Immediately following the call, Twitter emailed Bayside with citations to a number of cases holding that the First Amendment standards cited in Twitter's objections are to be applied to subpoenas issued under Section 512(h). *Id.*, ¶ 10. Twitter further noted that Bayside's interests in unmasking the Account did not appear to relate strictly to copyright, and that it instead appeared to Twitter that Sheth was in some way connected to the subpoena efforts, in an attempt to suppress criticism of Sheth's lifestyle. *Id.*

Bayside replied, acknowledging the existence of a First Amendment standard, but then seemingly attempted to convince Twitter—rather than a Court—that it had met that standard. *Id.*, ¶ 11. Twitter asked Bayside to provide copies of the photographs at issue. Bayside replied on January 22, at 9:46 p.m., providing copies of the photographs, and threatening that it would move to compel if Twitter did not produce responsive data by 3:00 p.m. on Saturday, January 23. *Id.* Based on Bayside's imminent threat to seek to hold Twitter in contempt for its refusal to unmask the targeted user without a court's consideration of its First Amendment protections, Twitter files the instant Motion.

## III.    ARGUMENT

The Court should quash Bayside's subpoena if the Court determines that Bayside has not satisfied the First Amendment standards recognized by this Court as necessary to unmask an anonymous online speaker. It is uncertain whether Bayside could meet that standard. Fair use likely dissolves any prima facie case of copyright infringement here, as fair use protects First Amendment rights in establishing that people may use copyrighted works in satire, criticism, and commentary. Bayside further fails to meet that standard because the balance of harms weighs

1    heavily against it; it suffers virtually no harm to its copyrights by virtue of the Tweets' existence,

2    while Twitter's unmasking of the user is likely to chill speech critical of the private equity

3    industry.

4    **A.      The *Highfields* Test Applies to This Dispute**

5              Anonymous online speech is protected by the First Amendment to the United States

6    Constitution. As the Ninth Circuit has recognized, "[a]s with other forms of expression, the ability

7    to speak anonymously on the Internet promotes the robust exchange of ideas and allows

8    individuals to express themselves freely without 'fear of economic or official retaliation … [or]

9    concern about social ostracism.'" *In re Anonymous Online Speakers*, 661 F. 3d 1168, 1173 (9th

10   Cir. 2011) (citing *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341–42 (1995)). Enforcing

11   a subpoena to unmask an unknown speaker on the Internet "poses a real threat to chill protected

12   comment on matters of interest to the public. Anonymity liberates." *Highfields,*, 385 F. Supp. 2d

13   at 980-81.

14             Requiring litigants to meet First Amendment standards ensures that speech is not chilled

15   unnecessarily and that speakers are not unmasked inappropriately. Enforcing an unmasking

16   subpoena could enable a litigant "to impose a considerable price on [another's] use of one of the

17   vehicles for expressing his views that is most likely to result in those views reaching the intended

18   audience. That 'price' would include public exposure of [a litigant's] identity and the financial

19   and other burdens of defending against a multi-count lawsuit—perhaps in a remote jurisdiction."

20   *Id.*

21             In order to unmask an online speaker, the issuing party must "persuade the court that there

22   is a real evidentiary basis for believing that the [speaker] has engaged in wrongful conduct that

23   has caused real harm to the interests of the [issuing party]." *Music Grp. Macao Com. Offshore*

24   *Ltd. v. Does*, 82 F. Supp. 3d 979, 983 (N.D. Cal. 2015) (citing *Highfields*, 385 F. Sup. 2d at 975-

25   96 and applying that decision's two-step unmasking test). This "real evidentiary basis" requires

26   evidence that a plaintiff can establish a *prima facie* claim against the defendant in question.

27   *Highfields*, 385 F. Supp. 3d at 970–71 (citation omitted).

28

If a litigant makes this showing, the court must then "assess and compare the magnitude of harms that would be caused" to the parties' competing interests if the court ordered disclosure of the speaker's identity. *Music Grp. Macao*, 82 F. Supp. 3d at 983 (citing *Highfields*, 385 F. Supp. 2d at 976). If the court is not satisfied that the litigant has met both steps of the *Highfields* test, the requesting party is not entitled to unmask the anonymous speaker. *Id.* at 985–87 (denying motion to compel Twitter to produce identifying information for two anonymous Twitter users where Plaintiff did not satisfy *Highfields* test).

This *Highfields* test has been recognized to apply specifically to subpoenas issued in connection with copyright infringement actions and subpoenas issued under Section 512(h) of the DMCA. *See Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *6–7 (N.D. Cal. Nov. 9, 2011) (granting motion to quash unmasking subpoena after holding that *Highfields* applied to copyright infringement action because fair use afforded First Amendment protections to the allegedly infringing conduct). In *Art of Living*, the plaintiff was a spiritual organization teaching yoga and meditation. *Id.* at *1. After some bloggers posted a copy of that plaintiff's copyrighted teaching manual, alongside disparaging remarks about the spiritual organization, those bloggers were sued as Doe defendants for copyright infringement, and the organization sent subpoenas to the blogging platforms to uncover the identities of the bloggers. *Id.* Defendants moved to quash those subpoenas, and the parties disputed whether *Highfields* ought to govern that motion to quash, or a lesser standard articulated by *Sony Music Entertainment Inc. v. Does 1-40*, 326 F. Supp. 2d 556 (S.D.N.Y. 2004), which engages in a *prima facie* claim analysis but: (1) does not require the plaintiff to "adduce competent evidence" to establish a maintainable copyright action; and (2) does not engage in a balancing of harms that evaluates the potential chilling effect of unmasking. *Highfields,* 385 F. Supp. at 975-76.[4]

---

[4] The test set forth by *Sony* evaluated the following factors: "(1) a concrete showing of a prima facie claim of actionable harm . . . ; (2) specificity of the discovery request . . . ; (3) the absence of alternative means to obtain the subpoenaed information . . ; (4) a central need for the subpoenaed information to advance the claim . . . ; and (5) the party's expectation of privacy. . . " *Sony*, 326 F. Supp. 2d at 564-65 (citations omitted).

This Court determined that *Highfields* offers the more appropriate standard where alleged copyright infringement has some arguable First Amendment value, for instance, where it is accompanied by "critical, anonymous commentary." *Art of Living Found.*, 2011 WL 5444622, at * 6. *Sony*, conversely, offered a much less protective standard because the alleged infringement in that case was mere distribution of copyrighted music using peer-to-peer file sharing—an activity lacking in expression warranting First Amendment protections. Thus, under the plain holding of *Art of Living*, because the alleged infringement occurred in the context of critical, anonymous commentary, *Highfields* offers the appropriate test by which the Court should evaluate Bayside's subpoena.[5]

**B.    The Subpoena Is Unlikely to Survive First Amendment Scrutiny**

**1.    Bayside Cannot Maintain a Copyright Action if the Account Was Engaged in Fair Use**

Under the *Highfields* test, the Tweets at issue appear to constitute a fair use of Bayside's photographs such that Bayside could not possibly maintain a copyright infringement action. The "fair use of a copyrighted work…is not an infringement of copyright." 17 U.S.C. § 107; *see also In re DMCA Subpoena to Reddit*, 441 F. Supp. 3d 875, 883 (N.D. Cal. 2020) ("[F]air use is not a mere defense to copyright infringement, but rather is a use that is not infringing at all."). The factors considered in determining fair use are:

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

---

[5] There is one case suggesting that *Highfields* may not apply to copyright infringement actions. *See In re DMCA Subpoena to Reddit, Inc.*, 441 F. Supp. 3d 875, 882 (N.D. Cal. 2020). But that Court appears to have applied *Highfields* anyway, evaluating whether a *prima facie* infringement action could be maintained in light of the defendant's fair use of the allegedly infringing materials. *Id.* at 883 ("a good argument can be made that [fair use analysis] fits much better in determining whether there was a prima facie case of copyright infringement"). *Reddit*'s questioning of *Highfields* is ultimately inapposite here; that court quashed the subpoena because the defendant engaged in fair use. *Id.* at 887.

(4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107.

Each of these factors weigh in the user's favor here.

### a.      The Tweets Were Transformative and Non-Commercial

The "central purpose" of this first factor is to determine "whether and to what extent the new work is transformative." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994) (internal quotation marks omitted). Copying a work for the purpose of criticism or discussion is inherently transformative. *See Reddit*, 441 F. Supp. 3d at 884 ("Darkspilver used the ad and chart for criticism and commentary in a manner fundamentally at odds with Watch Tower's original purposes…This was a transformative use.").

An Eleventh Circuit case with similar facts is particularly instructive. In *Katz v. Google Inc.*, 802 F.3d 1178 (11th Cir. 2015), the plaintiff, Raanan Katz, was a "commercial real estate tycoon" who was photographed in an "ugly, embarrassing, and compromising" candid moment. *Id.* at 1180 (internal quotation marks omitted). The defendant reproduced that photograph in dozens of blog posts "in three ways: (1) copied in its unaltered, original state; (2) accompanied by sharply worded captions; or (3) cropped and pasted into mocking cartoons." *Id.* at 1181. Katz then had the photograph's rights assigned to him and sued the defendant for copyright infringement. *Id.* Evaluating each of the fair use factors under 17 U.S.C. § 107, the Eleventh Circuit affirmed summary judgment for the defendant because each of those uses plainly constituted a fair use. *Id.* at 1184.

With respect to the first fair use factor, the Eleventh Circuit recognized that the defendant's use was non-commercial, given that the defendant made no profits. *Id.* at 1182. Similarly, here, there is no indication that the Account is getting paid for the content they post, and it has a mere 300 followers. It would be difficult for Bayside to establish that the Account's sharing of Bayside's photographs was for any commercial purpose.

And, the Eleventh Circuit recognized that the defendant's use of a copyrighted photograph, when paired with commentary or when otherwise intended to criticize, ridicule, or

satirize someone's character, is inherently transformative. *Id.* at 1182–83. The photographs at issue are candid snapshots of women in private planes or at parties. It appears the anonymous Twitter user here posted those candid photographs for the purpose of criticizing or satirizing Sheth. As a result, the user's posting of the photographs appears to be a transformative fair use rather than infringement.

> **b.      Candid Photographs Are Primarily Factual Works Not Warranting Significant Copyright Protection**

In evaluating the nature of a copyrighted work, courts review whether a work is more creative or factual in nature. *Campbell*, 510 U.S. at 586. The former warrants more copyright protection than the latter. *Id.* Factual works are "light-years away from the creative works at the core of copyright protection." *Reddit*, 441 F. Supp. 3d at 885. A candid photograph is factual, as there is no attempt to "convey ideas, emotions, or in any way influence [the subject's] pose, expression, or clothing." *Katz*, 802 F. 3d at 1183 (citing *Fitzgerald v. CBS Broad., Inc.*, 491 F. Supp. 2d 177, 188 (D. Mass. 2007) (recognizing candid photograph of mobster to be a primarily factual work)).

The photographs at issue here are candid photographs of women. Thousands of similar photographs are posted to Instagram or Twitter every single day. As a result, the second factor weighs in favor of fair use.

> **c.      The Third Factor, Amount of Property Used, Is Neutral for Fair Use Analysis for Photographs**

Where a photograph is at issue in a copyright dispute, the third factor "will not weigh against an alleged infringer, even when he copies the whole work." *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1178 (9th Cir. 2013). This is because a photograph, or in *Seltzer,* a drawing, is not "meaningfully divisible" such that only a portion could be taken in order to convey the expression of the fair use. *Id.*; *see also Katz*, 802 F. 3d at 1183–84 (citing *Fitzgerald*, 491 F. Supp. 2d at 188) (holding that third factor "weighs less" for copyright of a photograph because "all or most of the work often must be used in order to preserve any meaning at all").

While Twitter does not know how much of Bayside's copyrighted photos were used for the Tweets, that fact is irrelevant. The user's Tweets used such portions as needed to convey the user's intended criticism or ridicule of Brian Sheth.

### d.    There is Limited or No Market for the Photographs at Issue

The fourth fair use factor asks whether the defendant's use "would result in a *substantially adverse impact on the potential market*" for the original works. *Campbell*, 510 U.S. at 590 (emphasis added) (quotation omitted). Where the alleged infringement "does not substitute for the original and serves a 'different market function,' such factor weighs in favor of fair use." *Seltzer*, 725 F. 3d at 1179 (quoting *Campbell*, 510 U.S. at 591). Where a prospective plaintiff takes "the highly unusual step of obtaining [a] copyright to [a] Photo and initiating [a] lawsuit specifically to *prevent* its publication…there is no potential market." *Katz*, 802 F.3d at 1184.

This situation is no different than the embarrassing photograph at issue in *Katz*. These are candid photographs with little to no apparent commercial value. It appears Bayside's intention is to stop the photographs from being disseminated. The fourth factor weighs in favor of fair use.

Because the first, second, and fourth factors suggest that the user here was engaged in fair use, and because the third factor should not be analyzed in the context of candid photographs at all, the Court may find that Bayside cannot establish a *prima facie* claim of infringement. And, as a result, the Court should quash Bayside's subpoena under either the appropriate *Highfields* standard, or the lesser *Reddit* or *Sony* standards.

### 2.    The Balance of Harms Weighs Heavily Against Bayside

The second component of the *Highfields* test "requires the court to assess and compare the magnitude of harms that would be caused to the competing interests by a ruling in favor of plaintiff and by a ruling in favor of defendant." *Highfields*, 385 F. Supp. 2d at 976. Because the Account would suffer substantially more harm if unmasked than Bayside would if the user were permitted to remain anonymous, the Court should quash Bayside's subpoena.

-13-

1

### a.   The Account Is Likely to Be Irreparably Injured, and Criticism of Private Equity Figures Would Be Chilled

Bayside's unmasking subpoena threatens to chill speech critical of the private equity industry, whose players possess resources to sue any critics into silence. As *Highfields* recognized: "Anonymity liberates." *Id.* at 980. The public exposure of critics' identities impose "financial and other burdens of defending against a multi-count lawsuit perhaps in a remote jurisdiction. Very few would-be commentators are likely to be prepared to bear costs of this magnitude." *Id.* at 981. "So when word gets out that the price tag of effective sardonic speech is this high, that speech likely will disappear." *Id.* That chilling effect must be weighed as a significant harm resulting from enforcement of the subpoena. *Id.* at 980–81.

Beyond the chilling effect on future speech, the individual harm to the Account may be immense and irreparable. Revelation of their identity may invite social ostracism, expose them to harassment, or prevent future employment opportunities. *Art of Living*, 2011 WL 5444622, at *9. Unmasking could also dilute their criticism and commentary as their identity, or their relative popularity, will overshadow the messages communicated. *Id.* ("Insofar as Skywalker may communicate his message more openly or garner a larger audience by employing a pseudonym, unveiling his true identity diminishes the free exchange of ideas guaranteed by the Constitution.").

### 3.   Bayside Appears to Have No Interests Warranting Protection

As discussed above, because the photographs at issue have little to no commercial value and because their postings appear to have qualified as fair use, there is no apparent reason that Bayside needs to unmask the user; Bayside could not take any further action. *See Highfields*, 385 F. Supp. 2d at 981 ("There simply is no reason to believe…that the posting of these three messages poses any threat to any commercial interest of plaintiffs."). Where a potential plaintiff has such limited interest in unmasking, "the scales tip decidedly in [the prospective] defendant's favor" such that the Court should quash the plaintiff's subpoena. *Id.*

-14-

1

## IV.    CONCLUSION

2          For the foregoing reasons, the Court should quash Bayside's subpoena, which is issued

3    not to protect any meaningful copyright, but to suppress speech intended to criticize a private

4    equity billionaire.

5

DATED:  January 23, 2021                          /s/ *Julie E. Schwartz*

6                                                  Julie E. Schwartz, CA Bar No. 260624
                                                   JSchwartz@perkinscoie.com
7                                                  **PERKINS COIE LLP**
                                                   3150 Porter Drive
8                                                  Palo Alto, CA 94304-1212
                                                   T: 650.838.4300
9                                                  F: 650.838.4350

10

11                                                 Hayden M. Schottlaender, TX Bar No.
                                                   24098391
12                                                 (Application for Admission *PHV*
                                                   Forthcoming)
13                                                 HSchottlaender@perkinscoie.com
                                                   **PERKINS COIE LLP**
14                                                 500 N. Akard St., Suite 3300
                                                   Dallas, TX 75214
15                                                 T: 214.965.7700
                                                   F: 214.965.7799
16

17                                                 Attorneys for Movant
                                                   **TWITTER, INC.**
18

19

20

21

22

23

24

25

26

27

28