1  ROBERT E. ALLEN (SBN 166589)
   rallen@glaserweil.com
2  LAWRENCE M. HADLEY (SBN 157728)
   lhadley@glaserweil.com
3  THOMAS P. BURKE JR. (SBN 288261)
   tburke@glaserweil.com
4  GLASER WEIL FINK HOWARD
      AVCHEN & SHAPIRO LLP
5  10250 Constellation Boulevard, 19th Floor
   Los Angeles, California 90067
6  Telephone: (310) 553-3000
   Facsimile: (310) 556-2920
7
   Attorneys for Petitioner
8  Bayside Advisory LLC

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                    SAN FRANCISCO DIVISION

12                                    CASE NO.: 4:20-mc-80214-DMR

13

14  IN RE DMCA § 512(h)               **PETITIONER BAYSIDE ADVISORY
    SUBPOENA TO TWITTER, INC.**       **LLC'S OPPOSITION TO TWITTER'S**
15                                    **MOTION TO QUASH**

16                                    *Declaration of Robert E. Allen and Proposed*
                                      *Order filed concurrently herewith*
17
                                      Date:     March 11, 2021
18                                    Time:     1:00 p.m.
                                      Judge:    Hon. Donna M. Ryu
19                                              Courtroom 4, 3rd Floor

20

21

22

23

24

25

26

27

28

1960318

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND ...........................................2

III.  LEGAL STANDARD ............................................................................................4

IV.   ARGUMENT .........................................................................................................4

    A.    The Motion Is Untimely and Was Made Without Notice. ..........................4

    B.    The First Amendment Does Not Protect Copyright Infringement Nor the Identity of Copyright Infringers.................................................................5

    C.    Bayside Has Established a Prima Facie Case of Infringement....................7

    D.    Bayside Satisfies the *Sony Music* Factors. ...............................................8

    E.    Although Not Required, Bayside Also Satisfies the Balancing of Harms Test Erroneously Attributed to *Highfields*. ...........................................11

    F.    Use of the Photographs Did Not Constitute Fair Use. .............................14

        1.    Purpose and Character of the Use. ................................................16

        2.    Nature of the Copyrighted Work.....................................................20

        3.    Amount and Substantiality of the Portion Copied. ........................20

        4.    Effect on the Potential Market for the Copyrighted Work. ............21

        5.    Balance of the Four Factors ...........................................................22

V.    CONCLUSION ....................................................................................................22

Glaser Weil

i

**TABLE OF AUTHORITIES**

Page

**CASES**

*Arista Records, LLC v. Doe 3,*
    604 F.3d 110 (2d Cir. 2010)..................................................................6, 10

*Art of Living Found. v. Does 1-10,*
    2011 WL 5444622 (N.D. Cal. Nov. 9, 2011)..................................................12

*Baraban v. Time Warner, Inc.,*
    2000 WL 358375 (S.D.N.Y. Apr. 6, 2000)....................................................20

*Barcroft Media, Ltd. v. Coed Media Grp., LLC,*
    297 F. Supp. 3d 339 (S.D.N.Y. 2017) .......................................................17

*BMP Media USA, Inc. v. Crowdgather, Inc.,*
    2014 WL 12601054 (C.D. Cal. July 28, 2014) ..........................................5, 10

*Brammer v. Violent Hues Prods., LLC,*
    922 F.3d 255 (4th Cir. 2019)................................................................18

*Burrow-Giles Lithographic Co. v. Sarony,*
    111 U.S. 53 (1884) ......................................................................20

*Campbell v. Acuff-Rose Music, Inc.,*
    510 U.S. 569 (1994) .............................................................16, 17, 21

*Columbia Ins. Co. v. seescandy.com,*
    185 F.R.D. 573 (N.D. Cal. 1999) ........................................................7, 11

*Cruz v. Cox Media Grp., LLC,*
    444 F. Supp. 3d 457 (E.D.N.Y. 2020) .......................................................17

*Dendrite Int'l., Inc. v. Does No. 3,*
    42 N.J. Super. 134, 775 A.2d 756 (2001) ...................................................11

*Dr. Seuss Enters., L.P. v. ComicMix LLC,*
    983 F.3d 443 (9th Cir. 2020)...............................................................15

*Duncan v. Cohen,*
    2008 WL 2891065 (N.D. Cal. July 22, 2008)..................................................5

*Elvis Presley Enters. v. Passport Video,*
    349 F.3d 622 (9th Cir. 2003)...............................................................17

*Ets-Hokin v. Skyy Spirits, Inc.,*
    225 F.3d 1068 (9th Cir. 2000)..............................................................20

*Ferdman v. CBS Inter. Inc.,*
    342 F. Supp. 3d 515 (S.D.N.Y. 2018) .......................................................18

*Gillespie v. Civiletti,*
    629 F.2d 637 (9th Cir. 1980)...............................................................4

*Handloser v. HCL Am., Inc.*,
    2020 WL 4700989 (N.D. Cal. Aug. 13, 2020)................................................................5

*Harper & Row Publishers, Inc. v. Nation Enters.*,
    471 U.S. 539 (1985) ...............................................................................................5, 15

*Highfields Capital Mgmt., L.P. v. Doe*,
    385 F. Supp. 2d 969 (N.D. Cal. 2005).................................... 7, 11, 12, 13, 14

*In re Anonymous Online Speakers*,
    661 F.3d 1168 (9th Cir. 2011)......................................................... 7, 10, 12, 15

*In re DMCA Subpoena to Reddit, Inc.*,
    441 F. Supp. 3d 875 (N.D. Cal. 2020).......................................... 14, 15, 19

*In re Subpoena Issued Pursuant To The Digital Millennium Copyright Act To:*
    *43SB.COM, LLC.*,
    2007 WL 4335441 (D. Idaho Dec. 7, 2007) ................................................7

*In re Verizon Internet Servs., Inc.*,
    257 F. Supp. 2d 244 (D.D.C. 2003)............................................................6, 7

*IO Group v. J.W.*,
    2011 WL 237673 (N.D. Cal. Jan. 24, 2011) .............................................6

*Jarvis v. K2 Inc.*,
    2004 WL 7338345 (W.D. Wash Oct. 1, 2004) ........................................20

*Katz v. Google Inc.*,
    802 F.3d 1178 (11th Cir. 2015)............................................................18, 19

*Leadsinger, Inc. v. BMG Music Publ'g*,
    512 F.3d 522 (9th Cir. 2008).....................................................................15

*Lucasfilm Ltd. v. Ren Ventures*,
    2018 WL 5310831 (N.D. Cal. June 29, 2018) .........................................17

*Mavrix Photographs LLC v. Sandra Rose LLC*,
    2016 WL 6246408 (C.D. Cal. Apr. 6, 2016) ...........................................21

*Monge v. Maya Magazines, Inc.*,
    688 F.3d 1164 (9th Cir. 2012).........................................17, 18, 20, 21, 22

*Music Group Macao Commercial Offshore Ltd. v. Does*,
    82 F. Supp. 3d 979 (N.D. Cal. 2015).........................................................12

*Recording Industry Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.*,
    351 F.3d 1229 (D.C. Cir. 2003) ..................................................................6

*Rich v. Butowsky*,
    2020 WL 5910069 (N.D. Cal. Oct. 6, 2020)..............................................4

*SBO Pictures, Inc. v. Does 1-3036*,
    2011 WL 6002620 (N.D. Cal. Nov. 30, 2011)..........................................11

Glaser Weil

**Glaser Weil**

*Schoonmaker v. City of Eureka*,
    2018 WL 5829851 (N.D. Cal. Nov. 7, 2018)............................................................5

*Seltzer v. Green Day, Inc.*,
    725 F.3d 1170 (9th Cir. 2013).................................................................16, 21

*Signature Mgmt. Team, LLC v. Automattic, Inc.*,
    941 F. Supp. 2d 1145 (N.D. Cal. 2013)................8, 9, 10, 12, 13, 14, 16

*Sony Music Entm't Inc. v. Does 1-40*,
    326 F. Supp. 2d 556 (S.D.N.Y. 2004) ......................6, 8, 9, 10, 11

*UMG Recordings, Inc. v. Augusto*,
    628 F.3d 1175 (9th Cir. 2011)....................................................7

*UMG Recordings, Inc. v. Does 1-4*,
    2006 WL 1343597 (N.D. Cal. Apr. 19, 2006) ...........................10

*Weissmann v. Freeman*,
    868 F.2d 1313 (2d Cir. 1989).....................................................19

*Worldwide Church of God v. Philadelphia Church of God, Inc.*,
    227 F.3d 1110 (9th Cir. 2000).............................................19, 22

## **STATUTES**

17 U.S.C. § 106.........................................................................................8

17 U.S.C. § 410(c) .....................................................................................7

17 U.S.C. § 501(a) .....................................................................................7

17 U.S.C. § 512.......................................................................................1, 2

17 U.S.C. § 512(c)(3)(A)(v)........................................................................6

17 U.S.C. § 512(c)(3)(A)(vi).......................................................................6

17 U.S.C. § 512(f)......................................................................................6

17 U.S.C. § 512(h) ..................................................................................3, 6

17 U.S.C. § 512(h)(1).................................................................................3

17 U.S.C. § 512(h)(2).................................................................................3

17 U.S.C. § 512(h)(2)(c).............................................................................6

## **RULES**

Fed. R. Civ. P. 45(d)(3).............................................................................4

# I. __INTRODUCTION__

Twitter's motion to quash (the "Motion") is the second refusal of Twitter to comply with the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512: The first was with respect to a notice to take down copyrighted works that were infringed, pursuant to section 512(c); and the second is with respect to a subpoena to identity the infringer of those works, pursuant to section 512(h).

Bayside Advisory LLC ("Bayside") exclusively owns the copyrights to certain photographs, which have been registered with the Copyright Office (the "Photographs"). A Twitter user with the handle @CallMeMoneyBags ("MoneyBags") posted in each of six separate tweets one of the Photographs to his[1] Twitter account without Bayside's permission toward the end of October 2020. Pursuant to the DMCA, Bayside submitted a takedown notice to Twitter for the six Photographs contained in the tweets. Instead of responding expeditiously to remove the Photographs, and without legal basis, Twitter rejected Bayside's notice and instead forced Bayside's counsel to register as a user with Twitter and then use Twitter's form. Bayside then submitted this form and Twitter eventually removed the Photographs from its platform *twelve days* after it received Bayside's notice. MoneyBags never filed a DMCA counter-notice.

Bayside then requested that this Court issue a subpoena under the DMCA to uncover the identity of MoneyBags and protect its rights under the Copyright Act. Although the DMCA required Twitter to "expeditiously disclose" MoneyBags' identity, Twitter refused to do so, instead objecting, primarily on the grounds that such information is protected by the First Amendment. Though Twitter indicated that it notified him of the subpoena, MoneyBags has not appeared in this action or otherwise contacted counsel for Bayside.

The Motion should be denied, both procedurally because it is untimely, and substantively because Bayside has complied with the requirements of section 512(h) and has made a prima facie showing that MoneyBags has engaged in copyright infringement, an activity not protected by the First Amendment. Bayside has also satisfied the additional tests that some courts have

[1] Bayside uses masculine pronouns to refer to @CallMeMoneyBags since the account's biography currently reads "Call me Mr. Moneybags."

1    required before ordering the disclosure of the identity of an anonymous copyright infringer. Nor

2    is the copying of the Photographs protected by fair use. Indeed, if Twitter actually thought that

3    was true, it never would have removed the Photographs from its service in the first place. Twitter

4    should not be allowed to continue to disregard the DMCA because Twitter finds it inconvenient

5    or contrary to its business model to do so.

6    **II.    FACTUAL AND PROCEDURAL BACKGROUND**

7        The Twitter account @CallMeMoneyBags[2] has 399 followers and has tweeted 67 times.

8    The overwhelming majority of the tweets are critical of the private equity industry and figures

9    within it. Since October 19, MoneyBags has tweeted numerous times about various figures in the

10   private equity industry. Six of those tweets each included a Photograph. While the text of these

11   tweets mentions Brian Sheth (and hashtags of various members and entities of the private equity

12   industry, including Robert Smith and Bob Brockman), the Photographs were not of any of those

13   people or taken by them. Rather, the Photographs are each of a model posed in different settings

14   (the facial identity of the model in two of the Photographs is unidentifiable). None of the people

15   mentioned in the tweets own or control (and have never owned or controlled) the copyrights to

16   the Photographs, nor own or control (and have never owned or controlled) any interest in

17   Bayside. (Declaration of Robert E. Allen ["Allen Decl."] ¶¶ 3-4, Ex. 1).

18       On October 29, 2020, Bayside submitted a DMCA takedown request to Twitter for the

19   six Photographs contained in the tweets pursuant to 17 U.S.C. § 512(c) (the "DMCA Notice").

20   (Allen Decl. ¶ 5, Ex. 2). Bayside sent the DMCA Notice, which included all of the required

21   elements set forth in section 512(c)(3), to Twitter's designated agent pursuant to section

22   512(c)(2) via Federal Express and email. (*Id.*) Instead of responding "expeditiously to remove, or

23   disable access to, the material that is claimed to be infringing," as required in section

24   512(c)(1)(C), Twitter rejected on October 29, 2020 the DMCA Notice sent via email because it

25   was sent as an email attachment and rejected the DMCA Notice sent via Federal Express on

26   November 2, 2020 because Twitter alleged that it "didn't have enough detail" about the

27

28   [2] Accessible at https://twitter.com/callmemoneybags.

1960318

Photographs (which was false), and instead provided its own "copyright complaint form" for Bayside to fill out and submit. (*Id.* ¶¶ 6-7, Exs. 3-4). There is nothing in the DMCA that requires a copyright complainant to use the service provider's form in lieu of sending the notice via email or mail to its designated agent in accordance with section 512(c)(2).

The "copyright complaint form" can only be filed by a Twitter subscriber, thereby requiring Bayside's counsel to register as a user with Twitter. Bayside then submitted Twitter's "copyright complaint form" on November 2, 2020, and Twitter removed the Photographs from its platform *seven days* after the submission of the "copyright complaint form" and *twelve days* after Twitter received the DMCA Notice. (*Id.* ¶ 8, Ex. 5) . MoneyBags never filed a counter-notice under the DMCA.

The text and the hashtags of the tweets remain publicly accessible. Bayside obtained registrations from the United States Copyright Office for the Photographs, effective November 2, 2020. On November 25, 2020, Bayside filed a request for the issuance of a subpoena under 17 U.S.C. § 512(h) to identify the infringer MoneyBags (the "Subpoena"). *See* Dkt. No. 1.

Section 512(h) allows "[a] copyright owner or a person authorized to act on the owner's behalf [to] request the clerk of any United States district court to issue a subpoena to a service provider for identification of an alleged infringer in accordance with this subsection." 17 U.S.C. § 512(h)(1).

The Subpoena was issued on December 2 and served on Twitter on December 3, 2020. Though the date for compliance on the subpoena was listed as December 4, 2020, a cover letter accompanying the Subpoena provided Twitter up until December 18, 2020 to comply. In the Motion, Twitter does not challenge that it had a reasonable amount of time to respond to the Subpoena.

Upon receipt of the Subpoena, Twitter was required to "expeditiously disclose to the copyright owner or person authorized by the copyright owner the information required by the subpoena, notwithstanding any other provision of law and regardless of whether the service provider responds to the notification." 17 U.S.C. § 512(h)(2). Twitter failed to do so, instead objecting on December 14, 2020 that a First Amendment analysis of the Subpoena was required.

1    In its objection letter, Twitter stated that it "has sent notice and a copy of your subpoena

2  to the email address associated with the accounts that were properly identified in your

3  subpoena"—i.e., MoneyBags. Throughout January 2021, the parties met and conferred regarding

4  Bayside filing a motion to compel Twitter to comply with the Subpoena. Despite Twitter's

5  repeated insistence that Sheth either owned the Photographs or had an interest in Bayside,

6  Bayside made clear several times that such statements were false.[3] Notwithstanding the fact that

7  the parties were meeting and conferring about Bayside's motion to compel, Twitter filed this

8  Motion without notice on January 23, 2021. (Allen Decl. ¶ 11, Ex. 7).

9  **III.    LEGAL STANDARD**

10    "On a Rule 45 motion to quash a subpoena, the moving party has the burden of

11  persuasion, but the party issuing the subpoena must demonstrate that the discovery sought is

12  relevant." *Rich v. Butowsky*, 2020 WL 5910069, at \*2 (N.D. Cal. Oct. 6, 2020) (Ryu, J.) (internal

13  citation omitted). Therefore, Twitter "bears the burden to demonstrate why discovery should not

14  be permitted." *Id.* Additionally, "where the identity of alleged defendants will not be known

15  prior to the filing of a complaint[,] ... the plaintiff should be given an opportunity through

16  discovery to identify the unknown defendants, unless it is clear that discovery would not uncover

17  the identities, or that the complaint would be dismissed on other grounds." *Gillespie v. Civiletti*,

18  629 F.2d 637, 642 (9th Cir. 1980).

19  **IV.    ARGUMENT**

20       **A.    The Motion Is Untimely and Was Made Without Notice.**

21    Twitter's motion to quash is untimely. Under the Federal Rules, a court "must quash or

22  modify a subpoena that … requires disclosure of privileged or other protected matter, if no

23  exception or waiver applies" only "[o]n timely motion." Fed. R. Civ. P. 45(d)(3). "Courts

24

25  [3] Omitted from the correspondence attached to the Declaration of Hayden M. Schottlaender (Dkt.
   No. 5-1) was counsel for Bayside's letter of January 20, 2021 distinguishing the caselaw cited by

26  Twitter to that point and informing Twitter, among other things, that "the photos are exclusively
   and solely owned and controlled by our client Bayside Advisory LLC, the photos are registered

27  with the United States Copyright Office reflecting that Bayside is the sole owner, **Mr. Sheth
   never had any ownership or control interest in the photos and that Mr. Sheth does not own**

28  **or control any interest in Bayside**." (Emphasis in original) (Allen Decl. ¶ 9, Ex. 6).

generally agree that a motion to quash under Rule 45 is timely if made before the date specified for compliance with the subpoena." *Handloser v. HCL Am., Inc.*, 2020 WL 4700989, at *4 (N.D. Cal. Aug. 13, 2020) (internal citation omitted); *see also Schoonmaker v. City of Eureka*, 2018 WL 5829851, at *1 (N.D. Cal. Nov. 7, 2018) ("Certainly [the interested parties] knew that absent a court order (either sustaining an objection or granting a motion to quash) timely compliance with the Rule 45 subpoena was mandatory.").

The date for compliance with the Subpoena was December 18, 2020. Neither Twitter nor its counsel ever asked Bayside for an extension of time to file a motion to quash. Further, Bayside alerted Twitter in its January 20, 2021 letter than it was too late for Twitter to file a motion to quash, yet Twitter filed the Motion anyway. (Allen Decl. ¶ 9, Ex. 6). Since Twitter's motion to quash was not filed until over a month after the date for compliance, it is untimely and should be denied on that basis alone.

Further, Twitter did not comply with Local Rule 37-1 prior to filing the Motion. While the parties were meeting and conferring about Bayside's related motion to compel, at no time did Twitter mention that it was contemplating filing a motion to quash, let alone meet and confer about it in accordance with this local rule.

**B.** **The First Amendment Does Not Protect Copyright Infringement Nor the Identity of Copyright Infringers.**

Twitter's argument that Bayside must first satisfy First Amendment standards before identifying a copyright infringer pursuant to a section 512(h) subpoena is without merit. The First Amendment does not afford protection for copyright infringement. *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 556 (1985) ("Copyright laws are not restrictions on freedom of speech as copyright protects only form of expression and not the ideas expressed."); *accord BMP Media USA, Inc. v. Crowdgather, Inc.*, 2014 WL 12601054, at *1 (C.D. Cal. July 28, 2014); *see also Duncan v. Cohen*, 2008 WL 2891065, at *2 (N.D. Cal. July 22, 2008) (denying anti-SLAPP motion because a copyright infringement claim does not affect defendant's freedom of speech). Second, the First Amendment does not protect the identity of a copyright infringer. *Crowdgather*, 2014 WL 12601054, at *1 ("As a corollary to *Harper's*

5

1  holding, infringer identities are not protected from disclosure by the First Amendment."); *accord*

2  *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010) ("[T]o the extent that anonymity

3  is used to mask copyright infringement or to facilitate such infringement by other persons, it is

4  unprotected by the First Amendment."); *Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d

5  556, 558 (S.D.N.Y. 2004); *IO Group v. J.W.*, 2011 WL 237673, at *2 (N.D. Cal. Jan. 24, 2011)

6  (Ryu, J.).

7        Accordingly, a section 512(h) subpoena "places no limits on protected activity; it governs

8  unprotected copyright piracy, and § 512(h) reaches only the identity of the subscriber (already

9  known to the service provider), not any underlying expression." *In re Verizon Internet Servs.,*

10  *Inc.*, 257 F. Supp. 2d 244, 262 (D.D.C. 2003) (denying motion to quash 512(h) subpoena), *rev'd*

11  *on other grounds*, *Recording Industry Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.*, 351 F.3d

12  1229 (D.C. Cir. 2003).

13        Further, section 512(h) has built-in safeguards and disincentives to protect against

14  baseless or abusive subpoenas, thereby preventing the intrusion on MoneyBags' First

15  Amendment rights: (1) a copyright owner must have a "good faith belief" that the use of

16  copyrighted material is not authorized before obtaining a section 512(h) subpoena. 17 U.S.C. §

17  512(c)(3)(A)(v); (2) a copyright owner must submit a sworn declaration to the effect that the

18  purpose for which the subpoena is sought is to obtain the identity of an alleged infringer and that

19  such information will only be used for the purpose of protecting rights under the Copyright Act.

20  *Id*. § 512(h)(2)(c); (3) the person seeking a section 512(h) subpoena must state, under penalty of

21  perjury, that he is authorized to act on behalf of the copyright owner. *Id.* § 512(c)(3)(A)(vi); and

22  (4) any person who "knowingly materially misrepresents" that activity is infringing "shall be

23  liable for damages, including costs and attorneys' fees, incurred by the alleged infringer" as a

24  result of the misrepresentation. *Id.* § 512(f). "With all these protections, it is unlikely that

25  § 512(h) will require disclosure, to any significant degree, of the identity of individuals engaged

26  in protected anonymous speech, as opposed to those engaged in unprotected copyright

27  infringement." *Verizon*, 257 F. Supp. 2d at 263.

28

**Glaser Weil**

**C.** **Bayside Has Established a Prima Facie Case of Infringement.**

Courts in the Ninth Circuit have denied motions to quash a subpoena upon the showing of a prima facie case of copyright infringement and have granted motions to quash in its absence.[4] *Compare In re Subpoena Issued Pursuant To The Digital Millennium Copyright Act To: 43SB.COM, LLC.,* 2007 WL 4335441, at *4 (D. Idaho Dec. 7, 2007) (denying motion to quash a section 512(h) subpoena where copyright owner demonstrated a prima facie case of copyright infringement—"the Court will not go into an in-depth analysis of the merits of a copyright infringement claim in determining whether to quash this subpoena."); *IO Group*, 2011 WL 237673, at *2 (denying motion to quash and allowing the disclosure of anonymous internet user identity in a copyright infringement action) *with Highfields Capital Mgmt., L.P. v. Doe,* 385 F. Supp. 2d 969, 970 (N.D. Cal. 2005) (granting motion to quash a subpoena to identify an internet poster involving non-copyright claims [and thus not a section 512(h) subpoena] where plaintiff failed to show that "there is a real evidentiary basis for believing that the defendant has engaged in wrongful conduct that has caused real harm to the interests of the plaintiff."); *see also Verizon*, 257 F. Supp. at 263 (a 512(h) subpoena establishes a prima facie case of copyright infringement).

To establish a prima facie case of copyright infringement, a party must show (1) ownership of a valid copyright and (2) violation by the alleged infringer of at least one of the exclusive rights granted to copyright owners by the Copyright Act. *See* 17 U.S.C. § 501(a); *UMG Recordings, Inc. v. Augusto*, 628 F.3d 1175, 1178 (9th Cir. 2011). Bayside has satisfied both elements. First, Bayside has registered the Photographs with the Copyright Office: "In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). The Photographs were first published in 2017 and 2020 and registered in November 2020, well within the five-year grace period. The

---

[4] Many courts in the Ninth Circuit have applied the *lesser* good faith standard from *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 578-79 (N.D. Cal. 1999). *See generally In re Anonymous Online Speakers,* 661 F.3d 1168, 1175 (9th Cir. 2011) (*seescandy* represents the lowest bar).

1960318

1  registrations were granted an effective date of November 2, 2020 and list Bayside as the

2  copyright owner.

3     Second, MoneyBags reproduced and displayed the Photographs without authorization by

4  Bayside. 17 U.S.C. § 106 (listing the exclusive rights of copyright). Bayside's DMCA Notice

5  confirmed, under penalty of perjury, that Twitter was reproducing and publicly displaying them,

6  and Twitter admits that it removed the Photographs from its platform, thereby confirming that it

7  was reproducing and displaying them. (Dkt. No. 5 at 11). Indeed, "the DMCA essentially

8  requires the party seeking a subpoena to plead a prima facie case of copyright infringement for a

9  subpoena to issue." *Signature Mgmt. Team, LLC v. Automattic, Inc.*, 941 F. Supp. 2d 1145, 1157

10 (N.D. Cal. 2013). Bayside did so here and its requested subpoena issued. *See* Dkt. Nos. 1, 1-1.

11 Bayside, therefore, has established a prima facie case of copyright infringement against

12 MoneyBags.

13    **D.**   **Bayside Satisfies the *Sony Music* Factors.**

14    In deciding whether to allow the disclosure of the identity of an accused anonymous

15 copyright infringer, many courts have required a copyright owner to demonstrate more than a

16 prima facie case of infringement by satisfying the factors set forth in *Sony Music*.[5] *Sony Music*

17 involved an attempt by plaintiff record companies to uncover the identities of forty unidentified

18 "Doe" defendants who had been accused of copyright infringement through filesharing. *Sony*

19 *Music,* 326 F. Supp. 2d*.* at 558. Plaintiffs served a subpoena on a non-party internet service

20 provider, seeking to obtain defendants' identities, and four defendants moved to quash the

21 subpoena. *Id.* In deciding the motion to quash, the *Sony Music* court first concluded that the

22 identity of a person who uses the internet to distribute copyrighted works without permission "is

23 not protected from disclosure by the First Amendment." *Id.* The court then considered the

24 following factors to weigh the need to disclose the identifying information:

25    (1) a concrete showing of a prima facie claim of actionable harm;
   (2) specificity of the discovery request;

26    (3) the absence of alternative means to obtain the subpoenaed information;

---

[5] Prior to the Motion, Twitter's legal position was that the *Sony Music* test was the correct one to evaluate section 512(h) subpoenas. (Allen Decl. ¶ 11, Ex. 7 at 3).

Glaser Weil

(4) a central need for the subpoenaed information to advance the claim; and
(5) the party's expectation of privacy.

*Id.* at 564-65 (citations omitted).

First Factor—Prima Facie Claim. The *Sony Music* court considered the same two factors in establishing a prima facie case of copyright infringement as described in Section C above: ownership and copying. *Id.* at 565. As detailed above, Bayside has made a concrete showing of a prima facie claim. *Automattic,* 941 F. Supp. 2d at 1157 ("[T]he DMCA essentially requires the party seeking a subpoena to plead a prima facie case of copyright infringement for a subpoena to issue.").

Second Factor—Specificity of the Request. The *Sony Music* court considered the plaintiff's discovery request, which was the name, address, telephone number, email address, and Media Access Control address for each Doe defendant, "sufficiently specific to establish a reasonable likelihood that the discovery request would lead to identifying information that would make possible service upon particular defendants who could be sued in federal court." *Sony Music,* 326 F. Supp. 2d at 566. Here, Bayside similarly only seeks "[a]ll identifying information, including but not limited to real names, IP addresses, MAC addresses, email addresses, and telephone numbers, associated with the Twitter account '@CallMeMoneyBags' accessible at the URL '[https://twitter.com/callmemoneybags](https://twitter.com/callmemoneybags).'" Bayside's request is no broader than necessary to learn MoneyBags' true identity, and, like in *Sony Music,* "[s]uch information will enable [Bayside] to serve process on [MoneyBags]." *Id.*

Third Factor—Alternative Means. The *Sony Music* court examined the application for expedited discovery and plaintiff's opposition to quash for the steps that the plaintiffs took to locate the Doe defendants through other means, including the use of publicly available database to trace the IP address for each defendant. The court determined that the plaintiffs "established that they lacked other means to obtain the subpoenaed information …." *Id.* Similarly, Bayside has no alternative means for uncovering MoneyBags' identity. Bayside carefully examined MoneyBags' entire Twitter feed, but it reveals no clues as to his identity or location. (Allen Decl. ¶ 10). Bayside has also examined the EXIF data associated with the Photographs posted by

9

1960318

MoneyBags, but this data also contains no clues about MoneyBags' real name or identity. *Id.*

Fourth Factor—Need to Advance Claim. The subpoenaed information is central to Bayside's copyright infringement claims. As was the case in *Sony Music*, "[a]scertaining the identities and residences of the Doe defendants is critical to plaintiffs' ability to pursue litigation, for without this information, plaintiffs will be unable to serve process." *Sony Music*, 326 F. Supp. 2d at 566.

Fifth Factor—Expectation of Privacy. The *Sony Music* court found that the defendants had a minimal expectation of privacy where they accepted the ISP's terms of service, thereby agreeing not to transmit or distribute any material in violation of copyright laws. *Id.* at 566-67. Similarly, MoneyBags had to agree to Twitter's terms of service, which also preclude the posting of materials in violation of copyright law. (Allen Decl. ¶ 12, Ex. 8). Further, MoneyBags has no "expectation of privacy for copyright infringement." *Automattic, Inc.*, 941 F. Supp. 2d at 1158.

Balancing of the Factors. The *Sony Music* court weighed all of the factors and concluded that the defendants' "right to remain anonymous must give way to plaintiffs' right to use the judicial process to pursue what appear to be meritorious copyright infringement claims." *Sony Music,* 325 F. Supp. 2d at 567. Similarly, all five *Sony Music* weigh in favor of allowing Bayside to enforce its Subpoena and uncover MoneyBags' identity.

Other courts, including the Second Circuit, confirm that the *Sony Music* test is the correct standard to evaluate the disclosure of the identity of an anonymous copyright infringer.[6] *See, e.g., Arista Records*, 604 F.3d at 119 ("We agree that [the *Sony Music* test] constitutes an appropriate general standard for determining whether a motion to quash, to preserve the objecting party's anonymity, should be granted."); *Crowdgather,* 2014 WL 12601054, at *2 (applying the *Sony Music* factors and ordering the disclosure of the identity of those who posted plaintiff's copyrighted works on defendant's website); *UMG Recordings, Inc. v. Does 1-4,* 2006 WL 1343597, at *2-*3 (N.D. Cal. Apr. 19, 2006) (applying the *Sony Music* factors and finding

---

[6] The Ninth Circuit cited *Sony Music* positively in describing the different levels of review in cases involving the disclosure of the identity of an online speaker. *Online Speakers*, 661 F.3d 1168 at 1175. *Sony Music* appears to be the only copyright case cited in *Online Speakers*.

Glaser Weil

1   good cause for the disclosure of the Doe defendants' names and contact information).

2   **E.**   **Although Not Required, Bayside Also Satisfies the Balancing of Harms Test**

3   **Erroneously Attributed to _Highfields._**

4   Twitter argues that this Court should apply the test from _Highfields Capital Management_

5   to evaluate the Subpoena, even though _Highfields_ did not involve copyright infringement or the

6   issuance of a 512(h) subpoena. The district court's opinion in _Highfields_ rested solely on the fact

7   that the plaintiff "failed to make a sufficient showing that defendant has engaged in wrongful

8   conduct causing harm to plaintiff." 385 F. Supp. 2d at 971. As the court explained, this standard

9   is analogous to the requirement of showing "a prima facie claim of actionable harm," citing _Sony_

10   _Music_, or a showing "that an act giving rise to civil liability actually occurred," citing the lesser

11   standard set in _seescandy. Id._ at 970-71. Bayside satisfied that test by complying with the terms

12   of obtaining a 512(h) subpoena.

13   The magistrate judge's report and recommendation attached to the opinion, however,

14   includes a second stage analysis where "the court would balance the parties' competing interests

15   to determine whether the extent of the harm to defendant's First Amendment and privacy

16   interests could be justified by the magnitude of the contribution that enforcing the subpoena

17   likely would make to the interests plaintiff seeks to advance through the litigation." _Id._ at 980.

18   Notably, the magistrate cites two cases on which he relies, yet _neither of them require a_

19   _balancing of interest test_ nor does the district court mention or address this balancing test. _See id._

20   at 978 n.8 (_Dendrite Int'l., Inc. v. Does No. 3_, 42 N.J. Super. 134, 775 A.2d 756 (2001) (denying

21   discovery because the plaintiff failed to make a prima facie case of defamation, using the test

22   from _seescandy_ to balance free speech rights against the strength of the prima facie case) and

23   _seescandy.com_, 185 F.R.D. 573 (using its test for the purpose of balancing those rights).[7]

24

---

25   [7] To identify a Doe defendant, _seescandy_ requires the moving party to: (1) identify the defendant
with enough specificity; (2) recount the steps taken to locate the defendant; (3) show that its

26   action could survive a motion to dismiss; and (4) file a request for discovery, identifying the
persons on whom discovery might be served and for which there is a reasonable likelihood it will

27   lead to identifying information. _SBO Pictures, Inc. v. Does 1-3036_, 2011 WL 6002620, at *2
(N.D. Cal. Nov. 30, 2011) (citing _seescandy_, 185 F.R.D. at 578-80). This test achieved the

28   court's objective in balancing First Amendment rights. It did not apply a separate balancing test.

Twitter cites two cases that applied this balancing test, *Music Group Macao Commercial Offshore Ltd. v. Does*, 82 F. Supp. 3d 979 (N.D. Cal. 2015) and *Art of Living Found. v. Does 1-10,* 2011 WL 5444622 (N.D. Cal. Nov. 9, 2011). *Macao* involved defamation, not copyright infringement. *Art of Living* did involve copyright infringement, but the court misinterpreted the holding of *Highfields* to require the additional balancing of harms. 2011 WL 5444622, at *4. The magistrate in *Highfields* had recommended granting the motion to quash because plaintiff had failed to adduce sufficient evidence of the viability of any of plaintiff's claims. While the magistrate had requested the district court to make such balancing *if* the district court rejected the magistrate's recommendation, the district court accepted the magistrate's recommendation and never got to or addressed whether such balancing was required. *Highfields*, 385 F. Supp. 2d at 970, 980. Indeed, the Ninth Circuit, when discussing the different standards applicable to disclosing an anonymous speaker based on the nature of the speech, confirmed that *Highfields* supports the standard requiring a plaintiff to make "a prima facie showing of the claim for which the plaintiff seeks the disclosure of the anonymous speaker's identity. *See, e.g., … Highfields Capital Mgmt., LP v. Doe,* 385 F. Supp. 2d 969 (N.D. Cal. 2005) …." *Online Speakers*, 661 F.3d at 1175.

*Art of Living* is also distinguishable because it did not involve a 512(h) subpoena, the poster extensively criticized the copyrighted work (see section IV.F below on fair use) and the poster not only appeared in the case through counsel but also responded to discovery. *Art of Living,* 2011 WL 5444622, at *10 ("[T]his case appears to be unique among the relevant body of case law in that Skywalker has not only appeared through counsel and filed numerous dispositive motions, but also propounded and responded to interrogatories and requests for production."). Thus, the balancing of the harms tipped in favor of the defendant at that stage in the litigation because the infringer had appeared and was actively involved in the case. But the court further noted that "disclosure of Skywalker's identity may be necessary in order to conduct a pre-trial deposition and to enforce any judgment ultimately obtained against him." *Id.*

This court addressed the disclosure of a copyright infringer pursuant to a 512(h) subpoena in *Automattic,* 941 F. Supp. 2d 1145. In *Automattic*, the owner of a copyrighted

Glaser Weil

1  textbook sought the identity of a blogger pseudonymously known as "Amthrax," who posted

2  plaintiff's copyrighted work on his blog "in the context of a critical campaign against the

3  institution holding the copyright." *Id.* at 1149-50, 1157. The court applied both the *Sony Music*

4  test and the balancing test created by the *Highfields* magistrate and adopted by the court in *Art of*

5  *Living.* First*,* the court first analyzed whether plaintiff has demonstrated a prima facie case of

6  copyright infringement. *Automattic*, 941 F. Supp. 2d at 1157. Noting that "the DMCA essentially

7  requires the party seeking a subpoena to plead a prima facie case of copyright infringement for a

8  subpoena to issue," the Court quickly concluded that the plaintiff had demonstrated a prima facie

9  case. *Id.*

10       Second, the court applied the test from *Art of Living*, balancing the harm to Amthrax that

11  would occur if the motion to quash was denied with the harm to plaintiff if the motion to quash

12  was granted. *Id.* at 1157-58. The court examined the harm to Amthrax, finding "that Amthrax's

13  First Amendment concerns are predicated on his underlying fear that [plaintiff] will misuse the

14  DMCA process. The DMCA subpoena is to be used solely for the purposes of protecting the

15  serving party's rights in its copyright. Provided [plaintiff] properly uses Amthrax's identifying

16  information obtained using the DMCA subpoena, and does not disseminate his identity or take

17  any retaliatory action, Amthrax will suffer only minimal harm if his Motion is denied." *Id.*

18  (citation omitted). The court then examined the harm to the copyright owner, finding that the

19  copyright owner had a substantial interest in obtaining Amthrax's identity to facilitate a

20  copyright infringement action against him. The court concluded that the balance weighed in

21  favor of disclosure of Amthrax's identity. "The minimal potential harm to Amthrax of disclosure

22  of his identifying information for the purposes of the DMCA does not justify the burden placed

23  on [the copyright owner] by granting Amthrax's Motion."[8] *Id.*

24       Third, the court applied the test from *Sony Music* and found that the plaintiff had satisfied

25  all of the factors except factor three—the plaintiff had not shown that there was an absence of

26

27  [8] Notably, the Court determined that plaintiff's "interest in obtaining Amthrax's identity to

28  facilitate a copyright infringement action" outweighed the "minimal potential harm" to Amthrax even though he had offered to appear anonymously through counsel and offered to accept service through his attorney. *Id.*

Glaser Weil

1   alternative means to obtain the subpoenaed information—and that there was less of a need for

2   the subpoenaed information than in *Sony Music* because Amthrax had offered to accept service

3   and defend the copyright claim through his attorney. *Id.* at 1158. Nevertheless, the court

4   concluded that "[c]ombined, the factors tip in favor of allowing [plaintiff] to obtain Amthrax's

5   identifying information" and denied Amthrax's motion to quash. The copyright owner "has made

6   a prima facie showing of copyright infringement, and the DMCA will adequately protect

7   Amthrax's First Amendment interest. The information may only be used for asserting

8   [plaintiff's] rights under its copyright, and Amthrax will be able to raise his fair use defense in

9   those proceedings." *Id.*

10          Bayside's case against MoneyBags is even more compelling than Signature

11   Management's was against Amthrax. Unlike in *Automattic*, here, Bayside has met all of the *Sony*

12   *Music* factors. Additionally, MoneyBags has not appeared and has not offered to accept

13   service—anonymously or otherwise—despite the fact that he was notified of Bayside's

14   subpoena. Also, Amthrax's speech in *Automattic* involved a matter of public concern: multi-level

15   marketing schemes. *Id*. at 1149. Here, MoneyBags' tweets concern rumor and inuendo about a

16   private person. MoneyBags does not criticize private equity generally in the offending tweets nor

17   criticize any of the Photographs. Regardless, if the Court applies the balancing of harms test

18   found in *Art of Living*, then, like in *Automattic,* the potential harm to Bayside from quashing the

19   Subpoena substantially outweighs the potential harm to MoneyBags from enforcing it.

20          **F.      Use of the Photographs Did Not Constitute Fair Use.**

21          Although Twitter argues that this Court should apply the *Highfields* test (i.e., inclusive of

22   the balancing of harms test applied in *Art of Living*), (Dkt. No. 5 at 13-14), Twitter later cites a

23   recent case from this court, *In re DMCA Subpoena to Reddit, Inc.*, which rejected the *Highfields*

24   test for use in cases involving copyright infringement and the DMCA. 441 F. Supp. 3d 875, 882

25   (N.D. Cal. 2020) ("While the *Highfields* test certainly has a role in some online speech cases, it

26   is not well suited for a copyright dispute."); Dkt. No. 5 at 10, n.5. Twitter then argues that *Reddit*

27   merely suggests that *Highfields* does not apply to copyright infringement actions and contends

28   that the *Reddit* Court applied *Highfields* anyway. Not so. The *Reddit* court did not undertake any

14

balancing of harms. Instead, the *Reddit* court focused solely on whether the infringer's use of the copyrighted works constituted fair use where the salient facts were not disputed, and the record was well developed. *Id.* at 883-84. In doing so, however, the *Reddit* court required the plaintiff to not just make a prima facie case for copyright infringement, but to prove, without the benefit of discovery, that the infringer's use was fair—effectively, a summary judgment standard with the burden to disprove the affirmative defense of fair use on the plaintiff. Such holding is inconsistent with the Ninth Circuit's opinion in *Online Speakers*, 661 F.3d at 1176-77 (the *Cahill* standard, which requires plaintiffs to be able to survive a hypothetical motion for summary judgment, is appropriate for cases involving political speech). Instead, as this court held in *Automattic,* the identity of the infringer should be disclosed (subject to the protections in the DMCA) and the infringer will be able to raise his fair use defense in the copyright infringement action.

Even if this Court conducts a fair use inquiry, the copying of the Photographs in the Tweets was not fair use, and it was Twitter's burden to prove otherwise. *Dr. Seuss Enters., L.P. v. ComicMix LLC*, 983 F.3d 443, 459 (9th Cir. 2020) ("[T]he Supreme Court and our circuit have unequivocally placed the burden of proof on the proponent of the affirmative defense of fair use."). Indeed, if Twitter actually thought that MoneyBags' use of the Photographs in the tweets constituted fair use, Twitter would not have removed the Photographs from its platform. Failure to do so in accordance with section 512(c) would only have meant that Twitter was ineligible for the DMCA safe harbor for copyright infringement claims.

Preliminarily, whether the copying of the Photographs in the tweets constitutes fair use is a mixed question of law and fact. *Harper & Row Publishers, Inc. v. Nation Enters.,* 471 U.S. 539, 560 (1985). Consequently, courts only address fair use when no material facts are in dispute, which is almost always at the summary judgment stage after the litigants have developed a record. *See Leadsinger, Inc. v. BMG Music Publ'g,* 512 F.3d 522, 530 (9th Cir. 2008). Twitter acknowledges in the Motion that it does not possess all relevant facts (Dkt. No. 5 at 11), yet asks this court to find that the copying of the Photographs constitute fair use based on conjecture and

1960318

speculation.[9] That is improper and does not satisfy its burden of proof. Further, when similarly presented with a motion to quash a section 512(h) subpoena, this Court has instead denied the motion, identified the infringer and acknowledged that "[d]uring the copyright action, [the accused infringer] will be able to raise his fair use defense." *Automattic,* 941 F. Supp. 2d at 1158.

Turning to the four fair use factors in section 107 of the Copyright Act, Twitter has failed to meet its burden with respect to any of them.

### 1.   Purpose and Character of the Use.

*Transformation*. Twitter claims that the copying of Photographs in the tweets was transformative. Twitter is wrong, fails to explain how the use of the Photographs was transformative, and has presented no evidence to meet its burden to support that argument. As defined by the Supreme Court, "one work transforms another when 'the new work ... adds something new, with a further purpose or different character, altering the first with new expression, meaning or message.'" *Seltzer v. Green Day, Inc*., 725 F.3d 1170, 1176 (9th Cir. 2013) (quoting *Campbell v. Acuff-Rose Music, Inc*., 510 U.S. 569, 579 (1994)). MoneyBags, however, made no alteration to any of the Photographs or to their expressive content or message, making their use a typical non-transformative case. *Id.* at 1177 ("In the typical 'non-transformative' case, the use is one which makes no alteration to the expressive content or message of the original work.").

According to Twitter, MoneyBags posted six tweets, each mentioning Sheth and attaching various images of women. (Dkt. No. 5 at 7). Yet the posts do not provide any commentary or criticism of the Photographs. Instead, MoneyBags copied the Photographs without alteration and used them (in at most two of the posts) as illustrative aids to arguably criticize Sheth (the majority of the posts are devoid of any criticism of either the Photograph or of Sheth). Nor is there any commentary in the Posts about any of the women in the Photographs.

---

[9] Twitter asserts that the Photographs relate to Brian Sheth, but can find no connection between Bayside and him *or the* Photographs. This is unsurprising, considering that Bayside advised Twitter in its January 20, 2021 letter that ***Mr. Sheth never had any ownership or control interest in the Photographs and that Mr. Sheth does not own or control any interest in Bayside.*** (Allen Decl. ¶ 9, Ex. 6).

Glaser Weil

1    Absent alterations, criticism, or commentary on the Photographs themselves, their use

2    cannot be transformative. *Monge v. Maya Magazines, Inc*., 688 F.3d 1164, 1175 (9th Cir. 2012)

3    ("*Campbell* makes clear that the 'heart' of a claim for transformative use is 'the use of some

4    elements of a prior author's composition to create a new one that, at least in part, comments on

5    that author's works.'" (quoting *Campbell*, 510 U.S. at 580)). In *Monge*, a magazine reproduced

6    celebrity photos, accompanied by the following headlines and captions: "The Secret Wedding of

7    Noelia and Jorge Reynoso in Las Vegas"; "We even have photos of their first night as a married

8    couple!"; "In fact, a lot has been said about a supposedly secret wedding in Las Vegas, Nevada,

9    that took place in January 2007, but until now, no one had shown photos of that memorable day.

10   TVNotas got a hold of those photos and shows them to you now, exclusively." The court found

11   that "neither minor cropping nor the inclusion of headlines or captions transformed the

12   copyrighted works," *id.* at 1174, because the magazine "did not transform the photos into a new

13   work" and did not "incorporate the photos as part of a broader work," but instead "left the

14   inherent character of the images unchanged." *Id.* at 1176; *see also Elvis Presley Enters. v.*

15   *Passport Video,* 349 F.3d 622, 628-29 (9th Cir. 2003) (voice-overs do not transform a work:

16   "There must be real, substantial condensation of the materials . . . and not merely the facile use

17   of scissors; or extracts of the essential parts, constituting the chief value of the original work."

18   (internal citations omitted)).

19   This court has similarly rejected finding transformation where the infringer did not

20   comment on or alter the original work. *Lucasfilm Ltd. v. Ren Ventures*, 2018 WL 5310831, at *4

21   (N.D. Cal. June 29, 2018) ("Here, defendants merely reposted images and dialogue from the

22   original works with 'minor cropping [or] the inclusion of headlines or captions' which cannot

23   transform the copyrighted works into something new.") (quoting *Monge*, 688 F.3d at 1174)).

24   Other courts have concluded the same: "Display of a copyrighted image or video may be

25   transformative where the use serves to illustrate criticism, commentary, or a news story *about*

26   that work." *Barcroft Media, Ltd. v. Coed Media Grp., LLC*, 297 F. Supp. 3d 339, 352 (S.D.N.Y.

27   2017); *Cruz v. Cox Media Grp., LLC*, 444 F. Supp. 3d 457 (E.D.N.Y. 2020) (use was as an

28   illustrative aid instead of a transformative use because photograph depicted the subjects

described in the article instead of criticizing or commenting on the photo itself); *Ferdman v. CBS Inter. Inc*., 342 F. Supp. 3d 515, 533 (S.D.N.Y. 2018) (use was not transformative because the photograph itself was not the story, only the contents of the photograph was of some public interest); *see also Brammer v. Violent Hues Prods., LLC,* 922 F.3d 255, 264 (4th Cir. 2019) (use of a photograph expressly for its content is not transformative—"such a use does not necessarily create a new function or meaning that expands human thought; if this were so, virtually all illustrative uses of photography would qualify as transformative.").

Here, even if the text in the tweets constituted more than simple headings, such text does not transform the Photographs. For example: (1) the October 28, 2020 tweet states "Brian Sheth is the King of Private Equity," yet the Photograph is of a posed woman next to a floral display; (2) the October 21, 2020 tweet states "Brian Sheth is the best investor in private equity. This is how he spends his money. I would say this is a good investment!" yet the photograph is of the torso of an unidentifiable woman, posing in a bathing suit; and (3) the October 20, 2020 (8:20 a.m.) tweet states "Life is good when you are Brian Sheth," yet the photograph is of a posed woman on a plane. Under copyright law, MoneyBags "possesses an unfettered right to use any factual information revealed [through the photos] for the purpose of enlightening its audience, but it can claim no need to bodily appropriate [the copyright owner's] expression of that information by utilizing portions of the actual [photos]." *Monge*, 688 F.3d at 1175. Accordingly, while copyright law does not preclude MoneyBags from criticizing Sheth, it does not allow MoneyBags to copy the Photographs without altering or commenting on the Photographs themselves.

Twitter cites inapposite cases to support its position. In the out-of-circuit case *Katz v. Google Inc.,* a blogger used a candid photograph of the plaintiff in posts critical of the plaintiff. Unlike MoneyBags, the *Katz* blogger commented on Katz's appearance in the photograph itself and, among other things, cropped and pasted the image of Katz's face into cartoons that either depicted him wearing a dunce cap or otherwise ridiculed his behavior. The court concluded that the blogger's "use of the Photo was transformative because, in the context of the blog post's surrounding commentary, she used Katz's purportedly 'ugly' and 'compromising' appearance to

Glaser Weil

1  ridicule and satirize his character." 802 F.3d 1178, 1182-83 (11th Cir. 2015). Similarly, the

2  blogger in *In re DMCA Subpoena to Reddit, Inc*. posted two copyrighted works related to *The*

3  *Watchtower* magazine, an ad and a chart, and extensive criticism *of those works*, which the court

4  found transformative. 441 F. Supp. 3d 875, 884 (N.D. Cal. 2020). The context in both *Katz* and

5  *Reddit* is absent here where the object of MoneyBags' commentary, Sheth, is not in any of the

6  Photographs, nor is there any commentary in the tweets about the Photographs. Consequently,

7  the use of the Photographs is not transformative.

8      ***Commerciality***. Twitter argues that the use was not commercial because "there is no

9  indication that the Account is getting paid for the content they post and it has a mere 300

10  followers." (Dkt. No. 5 at 16) Whether MoneyBags is paid for the content is not the issue. "The

11  crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain

12  but whether the user stands to profit from exploitation of the copyrighted material without paying

13  the customary price." *Harper & Row*, 471 U.S. at 562. If one of MoneyBags' Tweets went viral,

14  MoneyBags would gain followers and the ability to become a paid influencer (brands pay social

15  media influencers to post about their brands). The Ninth Circuit recognizes that "in weighing

16  whether the purpose was for 'profit,' 'monetary gain is not the sole criterion . . . particularly in

17  [a] … setting [where] profit is ill-measured in dollars." *Worldwide Church of God v.*

18  *Philadelphia Church of God, Inc*., 227 F.3d 1110, 1117-18 (9th Cir. 2000) (internal citation

19  omitted) (defendant profited from copying the work by providing it at no cost to its members, by

20  attracting through distribution of the work new members who donate income to defendant, and

21  by enabling defendant's growth); *Weissmann v. Freeman*, 868 F.2d 1313, 1324 (2d Cir. 1989) (a

22  professor can "profit" by gaining recognition among his peers and authorship credit). Twitter

23  wrongly places the burden on Bayside to establish that MoneyBags' sharing of the Photographs

24  was not for profit instead of providing any evidence that MoneyBags did not "profit" through

25  attempting to gain followers and increased influence. Consequently, the first factor weighs

26  against fair use.

27

28

1960318

**Glaser Weil**

2.      <u>**Nature of the Copyrighted Work.**</u>

Twitter incorrectly refers to the Photographs as "candid," and then argues that candid photographs are factual as opposed to creative works. Merriam-Webster's Dictionary defines "candid" as "relating to or being photography of subjects acting naturally or spontaneously *without being posed."* [10] (Emphasis added.) The subject of each of the Photographs is posed and therefore the Photographs are not candid photographs.

Regardless of whether the Photographs are deemed to be candid, however, photographs "are generally viewed as creative, aesthetic expressions of a scene or image and have long been the subject of copyright." *Monge*, 688 F.3d at 1177 (finding even point-and-shoot images are not entirely factual in nature); *see Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 61 (1884) (photographic portrait of Oscar Wilde was entitled to copyright protection because of various creative elements employed by the photographer); *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1074 (9th Cir. 2000) ("Indeed, the idea that photography is art deserving [copyright] protection reflects a longstanding view of Anglo-American law."); *see also Baraban v. Time Warner, Inc.*, 2000 WL 358375, at *4 (S.D.N.Y. Apr. 6, 2000) ("Although photographs are often 'factual or informational in nature,' the art of photography has generally been deemed sufficiently creative to make the second fair use factor weigh in favor of photographer-plaintiffs."); *Jarvis v. K2 Inc.*, 2004 WL 7338345, at * 11 (W.D. Wash Oct. 1, 2004) (quoting *Baraban*). Consequently, the second factor weighs against fair use.

3.      <u>**Amount and Substantiality of the Portion Copied.**</u>

Quoting *Seltzer*, Twitter argues that "[w]here a photograph is at issue in a copyright dispute, the third factor 'will not weight against an alleged infringer, even when he copies the whole work.'" (Dkt. No. 5 at 17) Twitter conveniently omits the final clause of that sentence from *Seltzer*. The full sentence reads as follows: "Given [the fact that the Scream photo is not meaningfully divisible], this court has acknowledged that this factor will not weigh against an alleged infringer, even when he copies the whole work, *if he takes no more than is necessary for*

---

[10] Available at www.merriam-webster.com/dictionary/candid, sense 3.

1    *his intended use*." Seltzer, 725 F.3d at 1178 (emphasis added). This last clause is key to

2    determining whether the amount and substantiality of the portion copied was fair. *See Campbell*,

3    510 U.S. at 586-87.

4         By copying six photographs instead of one to arguably criticize Sheth about the same

5    issue, MoneyBags has taken too much of Bayside's copyrighted works to convey that message.

6    In *Monge*, the court found that this factor weighed against fair use because the defendant "used

7    far more than was necessary to corroborate its story—all three wedding images and three post-

8    wedding photos." *Monge*, 688 F.3d at 1179 ("[O]ne clear portrait depicting the newly married

9    couple in wedding garb with the priest would certainly have sufficed to verify the clandestine

10    wedding"); *see Mavrix Photographs LLC v. Sandra Rose LLC,* 2016 WL 6246408, at *3 (C.D.

11    Cal. Apr. 6, 2016) (this factor weighed against finding fair use because the same pregnant

12    celebrity appeared four times on defendant's website, and three photographs depict the celebrity

13    wearing the same outfit on the same day). Consequently, the third factor weighs against fair use.

14           **4.**    <u>**Effect on the Potential Market for the Copyrighted Work.**</u>

15         Twitter misstates the law with respect to this factor. Purportedly quoting *Campbell*,

16    Twitter states "[t]he fourth fair use factor asks whether the defendant's use 'would result in a

17    substantially adverse impact on the potential market' for the original works.'" (Dkt. No. 5 at 18).

18    What the Supreme Court actually stated was that this factor "requires courts to consider not only

19    the extent of market harm caused by the particular actions of the alleged infringer, but also

20    *whether unrestricted and widespread conduct of the sort engaged in by the defendant … would*

21    result in a substantially adverse impact on the potential market for the original." *Campbell*, 510

22    U.S. at 590 (internal citation omitted and emphasis added).

23         Twitter fails to mention or address this critical inquiry—whether the unrestricted and

24    widespread posting of the Photographs would have a substantially adverse impact on the

25    potential market for the originals. Such omission is fatal to a finding that this factor favors fair

26    use. *Id.* at 594 ("[I]t is impossible to deal with the fourth factor except by recognizing that a

27    silent record on an important factor bearing on fair use disentitled the proponent of the defense, 2

28    Live Crew, to summary judgment."); *see also Monge*, 688 F.3d at 1181 (finding that the fourth

1960318

factor weighs against fair use where the defendant "does not offer any evidence of the relevant market or the lack of market harm from its publication other than broad, unsubstantiated statements in its brief.").

Without any evidence, Twitter argues that the Photographs have no apparent commercial value and that Bayside's sole purpose is to stop the Photographs from being disseminated. (Dkt. No. 5 at 18). Even if the latter statement was true, it is irrelevant because the potential market for the photos exists independent of Bayside's present intent. *Monge*, 688 F.3d at 1181 ("The potential market for the photos exists independent of the couple's present intent, and the district court's decision to the contrary was error."); *Worldwide Church*, 227 F.3d at 1119 ("Even an author who had disavowed any intention to publish his work during his lifetime was entitled to protection of his copyright, first, because the relevant consideration was the 'potential market' and, second, because he has the right to change his mind.").

Twitter has thus failed to meet its burden in establishing that this factor weighs in favor of fair use. Further, because MoneyBags did not transform the Photographs and create new works, MoneyBags' "mere duplication of the photos 'serves as a market replacement for [the originals], making it likely that cognizable market harm to the original[s] will occur.'" *Monge*, 688 F.3d at 1182-83 (quoting *Campbell*, 510 U.S. at 591). Consequently, the fourth factor weighs against fair use.

## 5.   Balance of the Four Factors

Twitter has not met its burden with respect to any of the four fair use factors, as a matter of law. Accordingly, Twitter has failed to show that MoneyBags' copying of the Photographs was not an infringement of Bayside's copyrights.

## V.   CONCLUSION

The court should deny Twitter's motion to quash and order Twitter to comply with the Subpoena.

DATED: February 4, 2021

GLASER WEIL FINK HOWARD
AVCHEN & SHAPIRO LLP


By: */s/ Robert E. Allen*
ROBERT E. ALLEN
Attorneys for Petitioner
*Bayside Advisory LLC*

1960318