Julie E. Schwartz, CA Bar No. 260624
JSchwartz@perkinscoie.com
**PERKINS COIE LLP**
3150 Porter Drive
Palo Alto, CA 94304-1212
T: 650.838.4300
F: 650.838.4350

Hayden M. Schottlaender, TX Bar No. 24098391
(Application for Admission *PHV* Pending)
HSchottlaender@perkinscoie.com
**PERKINS COIE LLP**
500 N. Akard St., Suite 3300
Dallas, TX 75214
T: 214.965.7700
F: 214.965.7799

Attorneys for Movant
**TWITTER, INC.**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| *In re DMCA Sec. 512(h) Subpoena to Twitter, Inc.* | Case No. 4:20-mc-80214 DMR<br><br>**TWITTER'S REPLY IN SUPPORT OF ITS MOTION TO QUASH**<br><br>Date:   March 11, 2021<br>Time:   1:00 p.m.<br>Judge:   Hon. Donna M. Ryu<br>           Courtroom 4, 3rd Floor |

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ..................................................................................................................... 2

    A.  The Court Should Grant Twitter's Motion if the Tweets Are Fair Use ................. 2

    B.  The Tweets Were Fair Use ....................................................................................... 3

        1.  The Uses Were Fair as Non-Commercial and Transformative ................... 3

        2.  Candid Photographs Do Not Warrant Protection ....................................... 4

        3.  Amount and Substantiality Are Irrelevant Factors in Fair Use Analysis for Photographs ................................................................................ 5

        4.  There is Limited to No Potential Market for the Photographs ................... 5

    C.  Even if the Tweets Were Not Fair Use, the Court Should Apply Highfields' Balancing Test to Protect the Account's Anonymity ............................................... 6

        1.  Highfields Is the Appropriate Standard Here .............................................. 6

        2.  The Subpoena is Unlikely to Survive First Amendment Scrutiny Under Highfields' Balancing Test ............................................................. 7

    D.  Twitter's Motion was Timely Filed ........................................................................ 9

    E.  The Court Should Disregard Bayside's Irrelevant Remarks About Twitter's DMCA Practices ..................................................................................................... 11

III. CONCLUSION ................................................................................................................ 11

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Art of Living Found. v. Does 1-10*,
   No. 10-CV-05022-LHK, 2011 WL 5444622 (N.D. Cal. Nov. 9, 2011) ...............................2, 7

*Friedman v. Old Republic Home Prot. Co.*,
   No. SACV 12-1833, 2014 WL 12845131 (C.D. Cal. June 24, 2014) ....................................10

*Highfields Cap. Mgmt., L.P. v. Doe*,
   385 F. Supp. 2d 969 (N.D. Cal. 2005) ............................................................................ passim

*In re DMCA Subpoena to Reddit, Inc.*,
   441 F. Supp. 3d 875 (N.D. Cal. 2020) .....................................................................................2

*In re PGS Home Co. Ltd.*,
   No. 19-mc-80139-JCS, 2019 WL 6311407 (N.D. Cal. Nov. 25, 2019) ....................................7

*Katz v. Google Inc.*,
   802 F.3d 1178 (11th Cir. 2015) .......................................................................................3, 4, 5

*Monge v. Maya Mags., Inc.*,
   688 F.3d 1164 (9th Cir. 2012) .............................................................................................3, 5

*Schoonmaker. Handloser v. HCL Am., Inc.*,
   No. 19-cv-01242-LHK (VKD), 2020 WL 4700989 (N.D. Cal. Aug. 13, 2020) .......................9

*Schoonmaker v. City of Eureka*,
   No. 17-cv-06749-VC (RMI), 2018 WL 5829851 (N.D. Cal. Nov. 7, 2018) ........................9, 10

*Sedgwick Claims Mgmt. Svcs., Inc. v. Delsman*,
   No. C 09-1468, 2009 WL 2157573 (N.D. Cal. July 17, 2009) ...............................................4, 6

*Signature Mgmt. Team, LLC v. Automattic*,
   941 F. Supp. 2d 1145 (N.D. Cal. 2013) ..................................................................................6, 8

*Sony Music Entertainment Inc. v. Does 1-40*,
   326 F. Supp. 2d 556 (S.D.N.Y. 2004) ...........................................................................1, 2, 6, 7

**STATUTES**

17 U.S.C. § 107(1) ...............................................................................................................................3

**OTHER AUTHORITIES**

Brian N. Sheth, WIKIPEDIA, https://en.wikipedia.org/wiki/Brian_Sheth .........................................9

**TABLE OF AUTHORITIES**
**(continued)**

Page

Fed. R. Civ. P. 45 ................................................................................................................9, 10

James McClain, Billionaire Brian Sheth pays $15.5 million for the house next door, DIRT (Dec. 6, 2018, 11:03 AM), https://www.dirt.com/moguls/finance/brian-sheth-adria-house-beverly-hills-14886/ ..............................................................................................................................9

Garrett Parker, *10 Things You Didn't Know About Brian Sheth*, MONEY INC. (2017), https://moneyinc.com/10-things-you-didnt-know-about-brian-sheth/ ...........................9

## I. INTRODUCTION

Twitter, Inc. ("Twitter") respectfully requests that the Court grant its Motion to Quash ("Motion") the subpoena served on it by Bayside Advisory LLC ("Bayside"). Bayside is attempting to unmask and sue an anonymous Twitter user (the "Account") for commenting on the lifestyle of Brian Sheth, a newsworthy billionaire. The Court should quash Bayside's subpoena to unmask that user if Bayside has not overcome that user's First Amendment right to anonymous speech. While Bayside makes much ado about alleged copyright infringement, it does not appear there is infringement here. Where copyrighted photographs are used as a means of critique, comment, or mockery, that use is fair and not infringing.

Whether the Court chooses to employ the *Sony* standard or the *Highfields* standard impacts only whether the Court engages in a balancing test. The *Highfields* standard is more appropriate here because *Sony* applies only in cases of naked copyright infringement—such as music piracy—devoid of any First Amendment expression. That is not the situation here. The alleged copyright was accompanied by critical commentary. And, as a result, the Court should engage in a balancing of harms that would result in the subpoena being quashed if Bayside has established no benefit, economic or otherwise, to pursuing an infringement action. But, again, under either standard, the Court should quash the subpoena if the user engaged in fair use, a dispositive fact under both *Sony* and *Highfields*.

Finally, Bayside's remarks as to Twitter's DMCA practices and the timeliness of Twitter's Motion are easily dismissed. Twitter's DMCA practices have nothing to do with the present discovery dispute. Bayside's counsel expressly conceded that fact after Twitter filed its Motion. In asking Twitter to withdraw its Motion, Bayside told Twitter that it would describe Twitter's DMCA practices in order to "expose" Twitter to potential copyright claims by future litigants. Thus, Bayside's arguments appear designed to pressure Twitter to withdraw its objections. And Bayside is simply wrong that Twitter's Motion was untimely. Twitter properly filed its motion after timely serving written objections.

## II. ARGUMENT

### A. The Court Should Grant Twitter's Motion if the Tweets Are Fair Use.

The Court should quash Bayside's subpoena if the Account was engaged in fair use. While Bayside contends that copyright infringement is not protected by the First Amendment, fair use is not merely a defense to copyright infringement, "but rather is a use that is not infringing at all." *In re DMCA Subpoena to Reddit, Inc.*, 441 F. Supp. 3d 875, 883 (N.D. Cal. 2020). And even if the Court employed the *Sony* standard that Bayside favors, it appears fair use would preclude Bayside's ability to establish a prima facie case of infringement under that standard. Thus, if the Court decides that the Account was engaged in fair use, the inquiry ends and the subpoena should be quashed. *See id.* ("if the fair use inquiry demonstrates that Darkspilver is not an infringer of Watch Tower's copyrighted works, the subpoena must be quashed.").

Bayside's only response to the importance of fair use here is that only the user should be permitted to raise such an argument, after being unmasked, in an eventual lawsuit in which he or she is named. Opposition, at 14-15. This exact argument was rejected by this Court less than a year ago in *Reddit*, which called the argument "surprising…given that [the requestor] was required to evaluate fair use before sending its take-down notice[.]" *Reddit*, 441 F. Supp. 3d at 886. *Reddit* recognized two other reasons to reject the argument. First, there is no reason to wait; the Court has all the information it would need at this point to confirm that fair use protects the user. *Id.* And second, Bayside's argument is "contrary to the law." *Id.* at 887. The user need not "raise" the argument in defense in an eventual lawsuit because there should be no eventual lawsuit; fair use precludes a plaintiff's ability to bring suit. *Id.*

In addition, this Court should reject the argument that the user should raise a fair use defense in a lawsuit because allowing unmasking at this stage would chill First Amendment activity. *See Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011) ("courts should determine whether a discovery request is likely to result in chilling protected activity."). Revelation of the Account's identity, so that Bayside can sue them to "test" their fair use argument, exposes the user to "the financial and other burdens of defending against a multi-count lawsuit-perhaps in a remote jurisdiction." *Highfields Cap. Mgmt.*,

-2-

1   *L.P. v. Doe*, 385 F. Supp. 2d 969, 981 (N.D. Cal. 2005). "Very few would-be commentators are likely to be prepared to bear costs of this magnitude. So, when word gets out that the price tag of effective sardonic speech is this high, that speech likely will disappear." *Id.* Of course, if fair use were permitted to be challenged via unmasking-and-subsequent-lawsuit by all copyright holders, fair use would drastically decline.

**B.     The Tweets Were Fair Use**

**1.     The Uses Were Fair as Non-Commercial and Transformative**

Bayside contends that the Tweets were not transformative because the Account did not alter, criticize, or comment on the photographs themselves. Opposition, at 17. In support, Bayside cites *Monge v. Maya Mags., Inc.*, 688 F.3d 1164 (9th Cir. 2012), a case in which celebrities sued a tabloid for publishing photographs of their secret wedding. *Monge* dealt with an entirely different type of fair use: news reporting for profit. *Id.* at 1173. Consequently, its entire discussion on the transformative nature of tabloid publications is inapposite; the Account at issue here was not reporting any news or making any money. And Bayside falls short in arguing that the Tweets at issue here were commercial, a significant component of the first fair use factor. 17 U.S.C. § 107(1). A tabloid's publication of photographs is undeniably commercial, a factor upon which the entire *Monge* decision turned. *See Monge*, 688 F.3d at 1176–77 ("Maya's use was undisputedly commercial in nature…Maya's minimal transformation of the photos is substantially undercut by its undisputed commercial use."). In contrast, Bayside merely argues that these Tweets were commercial because "*if*" the Tweets had gone viral, the Account "*would*" attract more followers, which may lead to the Account pursuing a new career as a "paid influencer." Opposition, at 19. Such a broad interpretation of the commerciality factor would gut the factor and embolden copyright litigants to invent equally attenuated fictions to overcome any claim of fair use.

Instead, this case is far more like *Katz v. Google Inc.*, 802 F.3d 1178 (11th Cir. 2015), the case illustrated in Twitter's Motion, wherein the Eleventh Circuit found fair use where a blogger used a copyrighted photo to ridicule and criticize someone. Bayside attempts to distinguish *Katz* by suggesting that the use there was only fair because the blogger commented on the photograph

-3-

itself. Opposition, at 18. Not so. And Bayside offers no support for that rule. As Twitter explained in its Motion, *Katz* identified three separate uses of the photograph by the blogger: "(1) copied in its unaltered, original state; (2) accompanied by sharply worded captions; [and] (3) cropped and pasted into mocking cartoons." *Katz* then recognized "[e]very use" to be fair and transformative, as the photo was placed into the context of a blog intended to ridicule and satirize that plaintiff. *Id.* at 1182–83. This Account at issue here appears to exist to criticize individuals and participants in the private equity industry. In the context of the Account, and with the context provided by the text offered alongside the photos ("Life is good when you're a 44-year old private equity billionaire"), the Account appears to have been engaged in ridicule and commentary when it used the photographs. *See also Sedgwick Claims Mgmt. Svcs., Inc. v. Delsman*, No. C 09-1468 SBA, 2009 WL 2157573, at *5 (N.D. Cal. July 17, 2009) (finding transformative a defendant's use of copyrighted portraits of executives of plaintiff's organization, superimposed on postcards mimicking "WANTED" posters, where defendant did not alter or comment on the photographs themselves).

### 2. Candid Photographs Do Not Warrant Protection

Bayside concedes that candid photographs do not warrant copyright protection such that their use is generally considered fair.[1] Instead, Bayside argues that the photographs are not candid. But Bayside's argument lacks any evidence in support. It fails to identify any photographer, the subjects of the photographs, or, as *Katz* put it, any evidence that "the photographer [] attempted to convey ideas, emotions, or in any way influence [the subjects'] pose, expression, or clothing." *Katz*, 802 F.3d at 1183. One of the photographs at issue is a blurry snapshot depicting a woman on a private plane, mid-sentence, looking at something off-camera. Opposition, Ex. 1. Another is a poorly-lit image of a woman, at night, standing in front of a large letter "B," with what appears to be a section of a chair captured in the foreground and the backside of a poorly-lit woman accidentally captured in the background. *Id.* These are photographs intended for social media, not for sale as fine art.

---

[1] Bayside compiles a smattering of cases regarding stylized portraits that support Twitter's position; the law distinguishes between art and candid snapshots. Opposition, at 20.

### 3. Amount and Substantiality Are Irrelevant Factors in Fair Use Analysis for Photographs

Twitter's Motion establishes that the substantiality of a photograph is not an issue in this fair use analysis because a photograph is not divisible in the way that a book or movie might be. Bayside's response is that the Account used too many photographs to make its point. Bayside then cites two cases dealing with commercial publications in the celebrity news reporting context, which Twitter has explained above are inapposite to the fair use analysis here. In *Monge*, for instance, the news gatherer's purpose of posting the photographs was to prove that a marriage had occurred. And for that reason, the Ninth Circuit recognized that the tabloid could have merely posted a picture of the wedding certificate. *Monge*, 688 F.3d at 1179 ("its reporting purpose could have been served through publication of the couple's marriage certificate"). By contrast, the Account's entire purpose here appears to be to be funny or otherwise criticize Brian Sheth for living a lifestyle filled with parties, planes, and women. The series of photographs are critical to the punchline and to the point; Brian Sheth is often surrounded by multiple different women, or is constantly throwing parties, or is constantly traveling by private plane. It is that *excess* at the heart of the parody, and a barrage of photographs conveys that parodical message. In other words, it is not for Bayside to determine the number of photographs that the Account should have used to make the sardonic commentary as funny or as cutting as possible. The third factor is neutral.

Separately, Bayside walks a fine line here. As *Monge* recognizes, "[e]ach of the individual [] photos is a separate work." *Id.* at 1180. And as a result, the relevant inquiry here is the substantiality of the use of each photograph (precisely why this factor is neutral for photographs). If, instead, Bayside is contending that these photographs are a part of a collection, it has failed to provide any information regarding its business that would enable this Court to decide whether a small or large portion of Bayside's collection has been used by the Account.

### 4. There is Limited to No Potential Market for the Photographs

Twitter provided on-point authority for the proposition that where a plaintiff takes the "highly unusual step of obtaining [a] copyright to [a] Photo and initiating [a] lawsuit specifically

-5-

to *prevent* its publication…there is no potential market." *Katz*, 802 F.3d at 1184. This is important, as "the relevant question is not whether the work itself has lost value, but rather, whether the secondary use has usurped the commercial demand for the original." *Sedgwick*, 2009 WL 2157573, at *6. Where "there is no such demand, [] there is no commercial market[.]" *Id.* Bayside is correct that Twitter cannot introduce evidence on this point. But Bayside, tellingly, has not introduced any evidence regarding its commercial intent. As a result, at worst, the fourth fair use factor is neutral as lacking sufficient evidence to adjudicate. But the factors above, establishing that the Account's use here was transformative, and non-commercial, and the nature of these photographs as lacking artistic merit, strongly support a finding of fair use.

**C.     Even if the Tweets Were Not Fair Use, the Court Should Apply *Highfields*' Balancing Test to Protect the Account's Anonymity**

### 1.     *Highfields* Is the Appropriate Standard Here

Twitter agrees with Bayside that the First Amendment does not afford protection for naked copyright infringement. But that is not at issue. Instead, both parties appear to recognize that the First Amendment protects an internet speaker's anonymity where they are engaged in expression that a prospective plaintiff alleges to be copyright infringement. Even *Automattic*, cited frequently in Bayside's Opposition, agrees. *See Signature Mgmt. Team, LLC v. Automattic*, 941 F. Supp. 2d 1145, 1154 (N.D. Cal. 2013) (explaining that the First Amendment protects anonymous online speech, even in the copyright context, and that the "degree of scrutiny varies depending on the circumstances and the type of speech at issue."). Variations in the type of expression at issue will determine the degree of scrutiny under the First Amendment. *Id.*

*Highfields* presents the appropriate test here—not *Sony*—because Courts use *Highfields* where copyrighted materials are used for commentary or criticism. *See* Motion, at 11 (comparing *Highfields*, 385 F. Supp. 2d at 975-76 with *Sony Music Entertainment Inc. v. Does 1-40*, 326 F. Supp. 2d 556 (S.D.N.Y. 2004)). As Twitter has explained, *Sony* offered a less protective standard because the alleged infringement there was mere distribution of copyrighted music—an activity

-6-

devoid of expression. *See Sony*, 326 F. Supp. 2d at 564 (recognizing that the "conduct qualifie[d] as speech, but only to a degree.").

In contrast, *Highfields* involved postings on a Yahoo! message board by an anonymous user pretending to be the plaintiff and making jokes about "going to buy a new corporate jet." *Highfields*, 385 F. Supp. 2d at 973. As the *Highfields* court represented those messages, they were "sardonic commentary…express[ing] dissatisfaction with the … way company executives choose to spend company resources. They can also be interpreted as expressing disapproval or criticism of Highfields Capital-mocking its arrogance and condescension." *Id.* at 975.

Consequently, this Court, when dealing with alleged anonymous copyright infringement <u>accompanied by critical commentary</u>, has recognized that *Highfields*—not *Sony*—offers the appropriate test. *Art of Living*, 2011 WL 5444622, at *5 ("while *Sony Music* implicitly assumes that the only First Amendment interest at issue is the right to anonymity, *Highfields* is premised on the understanding that the content of the defendant's speech also has First Amendment value"). Because the Account used Bayside's photographs for the purpose of mocking or criticizing Sheth, *Highfields* is the appropriate standard.

**2. The Subpoena is Unlikely to Survive First Amendment Scrutiny Under *Highfields'* Balancing Test**

As discussed above, the only difference between *Highfields* and *Sony* significant to this dispute is that *Highfields* requires a balancing test to be conducted even after a prospective plaintiff establishes a *prima facie* case of infringement. *Id.* at *4 (noting that *Highfields* adds a requirement for the court to "balance 'the magnitude of the harms that would be caused to the competing interests by a ruling in favor of plaintiff and by a ruling in favor of defendant.'") (citing *Highfields*, 385 F. Supp. 2d at 980) (additional citations omitted).[2]

---

[2] Bayside attempts to argue that *Highfields* does not involve a balancing test by creating an artificial division between the district court's decision in that case, and the magistrate judge's recommendation. That argument should be rejected; *Highfields* is widely understood to have adopted the two-part test. *See, e.g., In re PGS Home Co. Ltd.*, No. 19-mc-80139-JCS, 2019 WL 6311407, at *6 (N.D. Cal. Nov. 25, 2019) (granting Twitter's Motion to quash in applying *Highfields'* balancing test and concluding that "even if [the] Tweets did cause real harm, that harm is outweighed by the First Amendment concerns related to disclosing the speaker's identity.").

-7-

In twenty-two pages of text, Bayside does not attempt to rebut Twitter's argument that Bayside seeks to file a copyright case for the sole purpose of silencing commentary critical of Brian Sheth. Bayside has not identified the nature of their business. It has not identified what it intends to do with the copyrighted photographs. It has not identified any market for candid photographs of this nature. It has not identified the photographer. And it has not identified the subjects of the photographs. As a result, Bayside has yet to identify any benefits it would obtain as a result of the unmasking other than the suppression of speech.

Compared to the zero benefits identified by Bayside, Twitter has set forth the harms that would flow from identifying the Account. Unmasking here would be a direct abridgment of free speech, permitting Bayside to weaponize copyright law to silence critics of Brian Sheth. That would generate a significant chilling effect, dissuading anyone from criticizing the rich and powerful with the recognition that such criticism runs the risk of costly litigation. *Highfields*, 385 F. Supp. 2d at 981 ("when word gets out that the price tag of effective sardonic speech is that high, that speech likely will disappear"). Twitter has filed this Motion because of the net chilling effect that this subpoena and eventual lawsuit could impose.

Bayside attempts to undercut those harms—again, without identifying any benefits of their own—with two arguments. First, Bayside laments that the Account "has not appeared and has not offered to accept service." Opposition, at 14. And second, Bayside argues that the Tweets concern "rumor and innuendo" about a "private person" rather than "matters of public concern." *Id.* Those are not factors relevant to a balancing test. The case that Bayside cites in support, *Automattic*, actually recognizes the opposite: acceptance of service is irrelevant to the balancing test. *Automattic*, 941 F. Supp. 2d at 1157 ("TEAM has an interest in obtaining Amthrax's identity…regardless of his offer to accept service through his attorney."). And critically, *Automattic* found that balance to weigh in favor of the plaintiff in that case on facts tellingly different from those found here. *Automattic* dealt with an anonymous blogger who posted an entire copyrighted textbook, sold by the plaintiff, on his blog, without commentary. *Id.* at 1149. Conversely, the photographs here are not being sold by Bayside such that the Tweets could

-8-

deprive Bayside of any revenues, and, more importantly, the photographs are accompanied by critical commentary warranting First Amendment protection. *See supra*, Part C.1.

Bayside's second argument, that the Tweets promote "rumor" about a "private person," is similarly irrelevant. Bayside has not identified how it would benefit from ending rumors about Brian Sheth if, as Bayside contends, it has no connection to Brian Sheth. And, as importantly, Bayside has not identified any authorities providing that these "rumor" or "private person" arguments have any relevance to the requisite analysis under the First Amendment.[3]

In sum, where Bayside has not identified the benefits it would enjoy from unmasking, and Twitter has identified the significant injuries to the people who use its platform and to free speech that would result, "the scales tip decidedly" in Twitter's favor such that the Court should quash the motion. *Highfields*, 385 F. Supp. 2d at 981.

### D. Twitter's Motion was Timely Filed

Bayside argues that Twitter's Motion is untimely. Opposition, at 4–5. That would be the case had Twitter not timely served written objections, in compliance with Federal Rule of Civil Procedure 45(d)(2)(B) prior to filing its Motion. Twitter is not aware of a single authority holding that, where a nonparty objects to a subpoena "before the earlier of the time specified for compliance or 14 days after the subpoena is served," that party cannot then follow those objections with a motion to quash thereafter.[4] Rule 45 requires only that a motion to quash be

---

[3] More, it does not appear that Sheth is, in fact, a "private person." His Wikipedia page, for instance, contains over a dozen links to news articles about him. *See* Brian N. Sheth, WIKIPEDIA, https://en.wikipedia.org/wiki/Brian_Sheth (last accessed February 11, 2021). His family life appears in news publications. *See* Garrett Parker, *10 Things You Didn't Know About Brian Sheth*, MONEY INC. (2017), https://moneyinc.com/10-things-you-didnt-know-about-brian-sheth/. His home purchases appear in news publications. *See* James McClain, *Billionaire Brian Sheth pays $15.5 million for the house next door*, DIRT (Dec. 6, 2018, 11:03 AM), https://www.dirt.com/moguls/finance/brian-sheth-adria-house-beverly-hills-14886/.

[4] Bayside cites two cases in support of its definition of timeliness: *Handloser* and *Schoonmaker*. *Handloser v. HCL Am., Inc.*, No. 19-cv-01242-LHK (VKD), 2020 WL 4700989 (N.D. Cal. Aug. 13, 2020); *Schoonmaker v. City of Eureka*, No. 17-cv-06749-VC (RMI), 2018 WL 5829851 (N.D. Cal. Nov. 7, 2018). *Handloser* is irrelevant; it deals with a *party*'s objection to a subpoena served on a nonparty and held that a *party* seeking to contest a subpoena served on a nonparty must move to quash before the date of compliance. *Handloser*, 2020 WL 4700989, at *4. And *Schoonmaker* is equally irrelevant; it is a three-paragraph opinion finding that a nonparty waived her objections to a subpoena by failing to timely object or file a motion to quash. *Schoonmaker*, 2018 WL 5829851, at *1.

-9-

1 filed "timely," and there is no authority explaining what "timely" means where a nonparty had previously served objections in compliance with the Rules.

Bayside's interpretation would be illogical in this context. The result of untimely objections or of an untimely motion may be waiver of the objections. *See Schoonmaker*, 2018 WL 5829851, at *1 ("The court finds Ms. Kramer's failure to timely file objections as a waiver."). But Twitter plainly did not waive any objections here; it timely served objections consistent with the Federal Rules. As a result, Bayside fails to articulate the result of the "untimeliness" of Twitter's Motion. Bayside's interpretation would also be unjust. It would establish that where a nonparty serves written objections, that nonparty's only ability to have those objections heard by a court would be to await a motion to compel.

Logically, the interpretation of "timely" under Rule 45 must account for a nonparty's right to timely serve written objections in accordance with Rule 45(d)(2)(B) and meet and confer with issuing counsel. This may obviate the need for a motion to quash entirely. But if it does not, a motion to quash filed thereafter should be "timely" so long as it is filed within a reasonable time after the conclusion of informal efforts to resolve those objections without the Court's involvement. *See Friedman v. Old Republic Home Prot. Co.*, No. SACV 12-1833 AG (OPx), 2014 WL 12845131, at *2 (C.D. Cal. June 24, 2014) ("It is not appropriate…to rob CRES of the opportunity to move to quash the subpoena because its good faith efforts to resolve the matter outside of Court made its request untimely under some decisions interpreting Rule 45.").

Where Twitter's objections were unquestionably served timely, its Motion was similarly "timely" under Rule 45 because it was filed the same day that it became apparent that Twitter and Bayside were at an impasse regarding Twitter's objections. During efforts to meet and confer, Bayside threatened to move to compel Twitter's compliance unless Twitter would produce the Account's identifying information by Friday, January 22, 2021. Opposition, Ex. 6, at 3. On that day, at 11:46 p.m., Bayside provided Twitter's counsel with the photographs at issue and, in light of Bayside's response, offered to wait until "3pm pacific time tomorrow" (Saturday) before making good on its prior threat to move to compel Twitter's compliance. Opposition, Ex. 7, at 1.

-10-

Twitter filed its Motion on Saturday, January 23. Thus, to avoid facing an unwarranted motion to compel, Twitter "timely" filed its Motion to Quash.

### E. The Court Should Disregard Bayside's Irrelevant Remarks About Twitter's DMCA Practices

Twitter removed the copyrighted images from its platform promptly after receiving a DMCA takedown request from Bayside. That takedown is not at issue in this litigation, and the process by which the photographs were removed is entirely irrelevant to an adjudication of the Account's First Amendment rights. Regardless, Bayside complains about being asked to use Twitter's takedown form. *See* Opposition, at 2–3. This is nothing more than a failed negotiating tactic. In immediate response to Twitter's filing its Motion, Bayside's counsel called Twitter's counsel, asking Twitter to withdraw the Motion. If Twitter refused, Bayside warned, then Bayside's opposition would "expose" Twitter's DMCA practices, which he suggested "could invite" future litigation. Twitter declined to withdraw the Motion, as Bayside's claims are meritless, and Twitter's practices have now been outlined for no apparent reason.

### III.   CONCLUSION

For the reasons articulated in Twitter's Motion and above, the Court should quash Bayside's subpoena.

| | | |
|---|---|---|
| 1 | DATED: February 16, 2021 | /s/ *Julie E. Schwartz* |
| 2 | | Julie E. Schwartz, CA Bar No. 260624 |
| | | JSchwartz@perkinscoie.com |
| 3 | | **PERKINS COIE LLP** |
| | | 3150 Porter Drive |
| 4 | | Palo Alto, CA 94304-1212 |
| | | T: 650.838.4300 |
| 5 | | F: 650.838.4350 |

Hayden M. Schottlaender, TX Bar No. 24098391
(Application for Admission *PHV* Pending)
HSchottlaender@perkinscoie.com
**PERKINS COIE LLP**
500 N. Akard St., Suite 3300
Dallas, TX 75214
T: 214.965.7700
F: 214.965.7799

Attorneys for Movant
**TWITTER, INC.**

-12-