UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE DMCA § 512(h) SUBPOENA TO TWITTER, INC. | Case No. 20-mc-80214-DMR<br><br>**ORDER ON MOTION TO QUASH AND MOTION TO COMPEL**<br><br>Re: Dkt. Nos. 5, 10 |

In October 2020, Bayside Advisory LLC ("Bayside") issued a takedown notice under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(h), to Twitter, Inc. ("Twitter") requesting that it remove six photos posted on Twitter by user @CallMeMoneyBags. Bayside subsequently served Twitter with a subpoena for information identifying the user(s) of the @CallMeMoneyBags account. [Docket Nos. 1-3.] Twitter now moves to quash the subpoena, while Bayside moves to compel Twitter to comply with the subpoena. [Docket Nos. 5 (Mot. to Quash), 10 (Mot. to Compel).]

The court subsequently ordered Twitter to serve all briefs on the email address associated with the @CallMeMoneyBags account and granted permission to the account user(s) to specially appear by December 10, 2021 to submit information regarding the fair use of the photos under the Copyright Act, 17 U.S.C. § 107, as well as the harms that may result if the court denies the motion to quash and grants the motion to compel. [Docket No. 19 (Nov. 4, 2021 Order).] The account user(s) did not make an appearance.

This matter is suitable for determination without hearing pursuant to Civil Local Rule 7-1(b). For the following reasons, the motion to quash is denied. The motion to compel is granted.

**I.      BACKGROUND**

In October 2020, Twitter user @CallMeMoneyBags posted six tweets referring to Brian

Sheth, a prominent figure in the private equity industry. [Docket Nos. 5-1 (Schottlaender Decl., Jan. 23, 2021) ¶¶ 3, 4; 9-1 (Allen Decl., Feb. 4, 2021) ¶ 4, Ex. 1.] The tweets included one of six photographs, each depicting a woman or portions of a woman's body. Three of the six photographs showed a woman in various states of undress. It is unclear whether all six photographs are of the same individual. *Id*. Each photograph had accompanying text:

- The new Mrs. Brian Sheth at the top of Beverly Hills.
- Life is good when you are Brian Sheth.
- Brian Sheth has upgraded in his personal life. The only thing better than having a wife…is having a hot young girlfriend.
- Brian Sheth is the best investor in private equity. This is how he spends his money. I would say this is a good investment!
- Good morning from Mrs. Brian Sheth @3. Life is good when you're a 44-year old private equity billionaire.
- Brian Sheth is the King of Private Equity.

Allen Decl. Ex. 1. The tweets also contained various hashtags, including #BrianSheth, #RobertSmith, #BobBrockman, #VistaEquity, and #Billionaire, among others. *Id*.

On October 29, 2020, Bayside submitted a DMCA takedown notice to Twitter for the six photos in the tweets by @CallMeMoneyBags. The DMCA allows a copyright owner to notify a service provider of material that is claimed to be infringing and ask it to "remove, or disable access to, the material that is claimed to be infringing." 17 U.S.C. §§ 512(c)(1), (c)(3). Allen Decl. ¶ 5, Ex. 2 (takedown notice). Bayside registered its copyrights in the photos on November 2, 2020.[1] [Docket No. 1.]

On October 29, 2020, Twitter sent an email to Bayside rejecting the DMCA notice because Bayside failed to submit the request through Twitter's online form. Allen Decl. ¶ 6, Ex. 3. Twitter sent Bayside a second email on November 2, 2020 in which it stated that it needed

---

[1] The record does not show a connection between Bayside and the individuals named in the tweets. According to Bayside, it "is not and has never been owned or controlled by Brian Sheth, Robert Smith, or Bob Brockman. Brian Sheth, Robert Smith, or Bob Brockman, do not own, and have not ever owned, any interest in the copyrights to the Photographs." Allen Decl. ¶ 3.

2

additional information about the "copyrighted work(s)" and again directed Bayside to send its request via the online form. *Id*. at ¶ 7, Ex. 4. Bayside submitted Twitter's "copyright complaint form" on November 2, 2020 and received notice from Twitter on November 9, 2020 that it had "removed access to the content [Bayside] reported to [Twitter] for claimed infringement." *Id*. at ¶ 8, Ex. 5; *see also* Schottlaender Decl. ¶ 4 (images of tweets with images removed).

On November 25, 2020, Bayside requested issuance of a subpoena to Twitter under 17 U.S.C. § 512(h) for information identifying the user(s) of the @CallMeMoneyBags account. [Docket Nos. 1, 1-1.] That provision of the DMCA states that a copyright owner "may request the clerk of any United States district court to issue a subpoena to a service provider for identification of an alleged infringer in accordance with this subsection." 17 U.S.C. § 512(h). The Clerk issued the subpoena on December 2, 2020. [Docket No. 2.]

Bayside served Twitter with the subpoena on December 3, 2020. Schottlaender Decl. ¶ 6, Ex. A-1. Twitter objected to the subpoena by letter on December 14, 2020 on First Amendment grounds and sent a copy of the subpoena to the email address associated with @CallMeMoneyBags. Schottlaender Decl. ¶ 7, Ex. A-2. The parties conferred by email, telephone, and letter in January 2021. Schottlaender Decl. ¶¶ 8-11; Allen Decl. ¶ 11, Ex. 7.

Twitter now moves to quash the subpoena presumably under Federal Rule of Civil Procedure 45, although it does not cite that authority. Bayside moves to compel compliance with the subpoena pursuant to 17 U.S.C. § 512(h)(2) and Rule 45.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 45 governs discovery of nonparties by subpoena. Fed. R. Civ. P. 45. The Advisory Committee Notes to Rule 45 state that "the scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules," which in turn is the same as under Rule 26(b). Advisory Committee Notes to 1970 Amendment; Fed. R. Civ. P. 34(a) ("A party may serve on any other party a request within the scope of Rule 26(b)."). Federal Rule of Civil Procedure 26 provides

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in

>   the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* "Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679-80 (N.D. Cal. 2006).

Rule 45 provides that "on timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies; or subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii), (iv). "Of course, if the sought-after documents are not relevant, nor calculated to lead to the discovery of admissible evidence, then any burden whatsoever imposed would be by definition 'undue.'" *Del Campo v. Kennedy*, 236 F.R.D. 454, 458 (N.D. Cal. 2006) (quoting *Compaq Computer Corp. v. Packard Bell Elec., Inc.*, 163 F.R.D. 329, 335-36 (N.D. Cal. 1995)). "[A] court determining the propriety of a subpoena balances the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *Gonzales*, 234 F.R.D. at 680 (citation omitted). The party who moves to quash a subpoena bears the "burden of persuasion" under Rule 45(c)(3). *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005) (citations omitted).

## III.  DISCUSSION

Twitter objects to the subpoena on the ground that it seeks information revealing the identity of an anonymous online speaker. It argues that the subpoena should be quashed unless the court finds that Bayside has satisfied the First Amendment safeguards that apply in such circumstances. According to Twitter, Bayside must "persuade the court that there is a real evidentiary basis for believing that the [speaker] has engaged in wrongful conduct that has caused real harm to the interests of the [issuing party]" in order to unmask the speaker. Mot. to Quash 8 (quoting *Music Grp. Macao Com. Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 983 (N.D. Cal. 2015) (citing *Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 975-76 (N.D. Cal. 2005))). Twitter asserts that "the Tweets at issue appear to constitute a fair use of Bayside's photographs

4

1    such that Bayside could not possibly maintain a copyright infringement action." *Id*. at 10-13.

2    Bayside counters that the First Amendment does not protect copyright infringement or the
3    identity of those who infringe on copyrights. It disputes Twitter's contention that
4    @CallMeMoneyBags's use of the photos constitutes fair use. Mot. to Compel 7.

5    It is well-settled that "an author's decision to remain anonymous, like other decisions
6    concerning omissions or additions to the content of a publication, is an aspect of the freedom of
7    speech protected by the First Amendment." *See In re Anonymous Online Speakers*, 661 F.3d
8    1168, 1173 (9th Cir. 2011) (quoting *McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334, 342
9    (1995)). While noting that courts have adopted "a variety of standards to benchmark whether an
10   anonymous speaker's identity should be revealed," the Ninth Circuit has so far declined to
11   establish a particular test for protection of anonymous speech in the discovery context. *See In re
12   Anonymous Online Speakers*, 661 F.3d at 1175-76. It did, however, "suggest that the nature of the
13   speech should be the driving force in choosing a standard by which to balance the rights of
14   anonymous speakers in discovery disputes." *Id*. at 1177. Thus, the Ninth Circuit stated that a
15   more rigorous standard may apply where the speech is political, religious, or literary, while
16   commercial speech "should be afforded less protection." *See id*. "The specific circumstances
17   surrounding the speech serve to give context to the balancing exercise." *Id*.

18   With respect to copyright, one court in this district recently held that when a party seeks to
19   discover the identity of an anonymous speaker in connection with a DMCA subpoena, "an
20   analysis under copyright law and fair use will do" rather than an "anonymous speech approach"
21   such as that set forth in *Highfields*, 385 F. Supp. 2d 972, 975-76, which did not involve claims of
22   copyright infringement. *See In re DMCA Subpoena to Reddit, Inc*., 441 F. Supp. 3d 875, 882-83
23   (N.D. Cal. 2020). This is because "copyright law contains built-in First Amendment
24   accommodations." *Id*. at 882 (quoting *Eldred v. Ashcroft*, 537 U.S. 186, 219-20 (2003)).
25   Specifically, "[t]he doctrine of fair use provides everything needed to balance the competing
26   interests of the First Amendment and the copyright laws." *In re DMCA Subpoena*, 441 F. Supp.
27   3d at 882 (citations omitted). Fair use, which is codified at 17 U.S.C. § 107, "allows the public to
28   use not only facts and ideas contained in a copyrighted work, but also expression itself for limited

United States District Court
Northern District of California

purposes." *Eldred*, 537 U.S. at 190.  To determine whether a work constitutes fair use, courts "engage in a case-by-case analysis and a flexible balancing of relevant factors." *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 800 (9th Cir. 2003).  The four factors are:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work.

*Id.* (citation omitted); *see* 17 U.S.C. § 107.  "All are to be explored, and the results weighed together, in light of the purposes of copyright."  *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994).  "Fair use is a mixed question of law and fact," *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1199 (2021) (quotation and citation omitted), and "the burden of proving fair use is always on the putative infringer."  *Lenz*, 815 F.3d at 1153 (quotation omitted).

The fair use of a copyrighted work is a non-infringing use.  *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1152 (9th Cir. 2016) (citing 17 U.S.C. § 107).  Therefore, if the fair use inquiry demonstrates that an anonymous speaker is not an infringer of copyrighted works, a DMCA subpoena must be quashed, since the only authorized purpose for a subpoena under the DMCA is to discover the identity of an alleged infringer.  *In re DMCA*, 441 F. Supp. 3d at 883.

Other recent cases in this district have used the *Highfields* test to determine whether the identity of an anonymous speaker should be revealed where copyright claims were not at issue.  Under the *Highfields* standard, the party seeking to unmask a speaker "must adduce *competent evidence*—and the evidence [the party] adduces must address *all* of the inferences of fact that [it] would need to prove in order to prevail under at least one of the causes of action [it] asserts." 385 F. Supp. 2d at 975-76 (emphasis in original) (noting that "[t]he court may not enforce the subpoena if . . . any *essential* fact or finding lacks the requisite evidentiary support.").  If the party seeking to unmask a speaker meets its initial burden, the court must then "assess and compare the magnitude of the harms that would be caused to the competing interests by a ruling in favor of" the movant and the speaker.  *Id.* at 976.  *See, e.g., In re PGS Home Co. Ltd.*, No. 19-MC-80139-JCS, 2019 WL 6311407, at *5-6 (N.D. Cal. Nov. 25, 2019) (in case involving defamation and

unlawful business interference claims under Japanese law, applying *Highfields* test to evaluate motion to quash subpoena seeking information about anonymous speaker involving commercial speech); *In re Yasuda*, No. 19-MC-80156-TSH, 2020 WL 759404, at *5-6 (N.D. Cal. Feb. 14, 2020) (same); *Wirt v. Twitter, Inc.*, No. 21-MC-80166-JSC, 2021 WL 5919846, at *1-2 (N.D. Cal. Dec. 15, 2021) (in case involving defamation and false light claims, applying *Highfields* test to motion to quash subpoena for information unmasking anonymous speaker).

Here, the court need not decide whether it is appropriate to use fair use as a proxy for the First Amendment analysis in a copyright infringement case involving an anonymous speaker, or whether to instead use the *Highfields* standard. This is because the speaker fails to meet either test on the current record.

On November 4, 2021, the court issued an order stating that "it lacks a well-developed record on which to base any ruling" on the issue of fair use. Nov. 4, 2021 Order 2; *compare In re DMCA*, 441 F. Supp. 3d at 884 (conducting fair use analysis where "[t]he record is well developed, and neither side contends that any evidence material to the fair use inquiry is missing," noting "the salient evidence is not meaningfully disputed."). The court determined that evidence of "the user's purpose and intended meaning" in posting the tweets, which is relevant to the first and third factors of the fair use test, "is likely available only from the individual(s) who posted the tweets." Moreover, it concluded, Twitter's contentions about the purpose of the tweets was speculative. Nov. 4, 2021 Order 3. The court also noted that it lacked sufficient information to "balance 'the magnitude of the harms that would be caused to the competing interests by a ruling in favor of [Bayside] and by a ruling in favor of [Twitter and the user of the @CallMeMoneyBags account]'" to the extent such a balancing was necessary, again finding that Twitter's assertions on that point were speculative. *Id.* (quoting *Art of Living Foundation v. Does*, No. 10-cv-05022 LHK, 2011 WL 5444622, at *4 (N.D. Cal. Nov. 9, 2011) (quoting *Highfields*, 385 F. Supp. 2d at 980)).

Therefore, the court ordered Twitter to immediately serve a copy of the November 4, 2021 Order and the parties' briefing on the email address associated with the @CallMeMoneyBags account. The court gave the account user(s) until December 10, 2021 to make a special and

1  anonymous appearance to file evidence regarding fair use and/or the harms that may result if the
2  court denies the motion to quash.  Nov. 4, 2021 Order 3-4.  Twitter served the user(s) on
3  November 8, 2021.  [Docket No. 20.]  No appearance has been made on behalf of any individual
4  associated with the @CallMeMoneyBags account.

5        As noted, "the burden of proving fair use is always on the putative infringer."  *Lenz*, 815
6  F.3d at 1153 (quotation omitted).  On the current record and solely for the purpose of determining
7  whether this subpoena should be quashed or enforced, the court is unable to conclude that
8  @CallMeMoneyBags's use of Bayside's copyrighted photos constituted fair use because the
9  anonymous speaker did not augment the record in order to meet their burden.  The first factor
10 looks to "whether and to what extent the new work is 'transformative.'"  *Campbell*, 510 U.S. at
11 579.  Relatedly, the third factor asks whether "the quantity and value of the materials used . . . are
12 reasonable in relation to the purpose of the copying."  *Id*. at 586 (quotation marks and citation
13 omitted).  The tweets at issue consist of statements combined with Bayside's photos along with
14 hashtags that do not convey an obvious meaning.  Without evidence regarding the purpose and
15 meaning of the tweets, the court cannot say that @CallMeMoneyBags's use of the photos was
16 "transformative" or reasonable in relation to @CallMeMoneyBag's purpose in posting the tweets.
17 *See, e.g., In re DMCA*, 441 F. Supp. 3d at 884-85 (concluding that use of Jehovah's Witness's
18 copyrighted materials was "transformative" given undisputed evidence that speaker used materials
19 "for criticism and commentary in a manner fundamentally at odds with [the organization's]
20 original purpose," placed materials "on a forum expressly dedicated to criticism of [the
21 organization] by former members, succeeded in generating a number of comments" from other
22 critics of the organization, "and declared that his sole purpose was to criticize the organization and
23 spark discussion about it").

24       Similarly, the fourth factor is "the effect of the use upon the potential market for or value
25 of the copyrighted work." 17 U.S.C. § 107(4).  This factor "is influenced by whether the
26 commercial use was transformative."  *Dr. Seuss Enters., L.P. v. ComicMix LLC*, 983 F.3d 433,
27 451 (9th Cir. 2020) (citing *Monge v. Maya Mags., Inc.*, 688 F.3d 1164, 1181 (9th Cir. 2012)).
28 Here, the absence of any evidence from the user(s) of @CallMeMoneyBags about the relevant

8

market or the lack of market harm from the publication of Bayside's photos precludes a finding of fair use here. *See Campbell*, 510 U.S. at 594 ("it is impossible to deal with the fourth factor except by recognizing that a silent record on an important factor bearing on fair use disentitled the proponent of the defense . . . to summary judgment."); *Dr. Seuss*, 983 F.3d at 459 (noting that *Campbell* "squarely forecloses" the argument that the owner of the copyrights bears the burden to prove potential market harm).

In sum, the court concludes that the putative infringer has not met its burden of establishing fair use for the purpose of quashing the subpoena.

To the extent that the *Highfields* standard applies, Twitter asks the court to "assess and compare the magnitude of harms that would be caused to the competing interests by a ruling in favor of [Bayside] and by a ruling in favor of [@CallMeMoneyBags]." Mot. to Quash 13 (quoting *Highfields*, 385 F. Supp. 2d at 976). Again, the court cannot balance the harms in favor of quashing the subpoena because, despite having been given the opportunity to do so, the user(s) of @CallMeMoneyBags did not submit evidence demonstrating that unmasking their identity could cause harm or injury. *See, e.g., In re DMCA*, 441 F. Supp. 3d at 878 (discussing speaker's evidence that "[h]e valued the anonymity [of the Reddit discussion forum] because he was deeply concerned about being ostracized, shunned, or disfellowshipped by the Jehovah's Witness community for voicing criticisms or doubts about the organization"); *Art of Living*, 2011 WL 5444622, at *9 (discussing speaker's evidence that revealing his identity would expose him and his family "to harassment and retaliation from adherents of Ravi Shankar").[2]

//
//
//
//

---

[2] Bayside also argues that Twitter's motion to quash is untimely and "made without notice." Opp'n to Mot. to Quash 4-5. Given the court's decision on the merits of the motions to compel and quash, it declines to reach these arguments.

## IV. CONCLUSION

For the foregoing reasons, Bayside's motion to compel is granted. Twitter's motion to quash is denied. Twitter shall produce information responsive to Bayside's subpoena within 10 days of the date of this order.

**IT IS SO ORDERED.**

Dated: December 29, 2021



Donna M. Ryu
United States Magistrate Judge