Aaron Mackey (SBN 286647)
amackey@eff.org
Corynne McSherry (SBN 221504)
corynne@eff.org
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Telephone: (415) 436-9333
Facsimile: (415) 436-9993

Jacob A. Snow (SBN 270988)
jsnow@aclunc.org
Nicole A. Ozer (SBN 228643)
nozer@aclunc.org
ACLU FOUNDATION OF NORTHERN
CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493

*Attorneys for Amici Curiae*
*Electronic Frontier Foundation and ACLU*
*Foundation of Northern California*

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

|  |  |
|---|---|
| *In re DMCA Sec. 512(h) Subpoena to Twitter, Inc.* | Case No.:  20-mc-80214 VC |
|  | **AMICI CURIAE BRIEF OF ELECTRONIC FRONTIER FOUNDATION AND ACLU FOUNDATION OF NORTHERN CALIFORNIA IN SUPPORT OF TWITTER'S MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE** |
|  | Date:  May 12, 2022 |
|  | Time:  10:00 AM |
|  | Dept: Courtroom 4, 17th Floor |
|  | Hon. Vince Chhabria |

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................... 1

I.    THE FIRST AMENDMENT REQUIRES ALL LEGAL DEMANDS TO UNMASK ANONYMOUS SPEAKERS—INCLUDING DMCA SUBPOENAS—TO SATISFY THE TWO-PART TEST RECOGNIZED IN HIGHFIELDS ......................................... 2

    A.   There is no copyright exception to *Highfields'* scrutiny ........................................... 2

        1.   The First Amendment protects online anonymity and, in this circuit, and those protections do not vary by the nature of the claim ................................. 2

        2.   Those same First Amendment protections apply to copyright disputes and are essential to curb abuse ................................................ 3

    B.   A fair use analysis alone is not a substitute for robust *Highfields'* scrutiny ............. 5

II.    BAYSIDE'S SUBPOENA CANNOT SURVIVE THE REQUISITE SCRUTINY ........ 7

    A.   Bayside bears the burden on both steps ......................... 8

    B.   Bayside cannot meet its burden on the first step ............................ 9

        1.   Lawfulness can be determined on the face of the use ..................... 9

        2.   Based on the facts in the record, the use at issue is a lawful fair use ........... 10

    C.   Bayside cannot meet its burden on the second step ............................. 12

III.   ONLINE SERVICES MUST BE ABLE TO DEFEND THEIR USERS' FIRST AMENDMENT RIGHTS ........................................................ 13

CONCLUSION ..................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

### Cases

*Arista Records, LLC v. Doe 3*,
   604 F.3d 110 (2d Cir. 2010) .......................................................................4

*Art of Living Found. v. Does 1-10*,
   No. 10-CV-05022-LHK, 2011 WL 5444622 (N.D. Cal. Nov. 9, 2011)................................4, 13

*Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*,
   459 U.S. 87 (1982) ...............................................................................13

*Burnett v. Twentieth Century Fox*,
   491 F. Supp. 2d 962 (C.D. Cal. 2007) ...............................................................9

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569 (1994)...........................................................................11, 12

*City of Inglewood v. Teixeira*,
   2015 WL 5025839 (C.D. Cal. Aug. 20, 2015)..........................................................10

*Dendrite Int'l v. Doe No. 3*,
   775 A.2d 756 (N.J. App. Div. 2001)................................................................3, 13

*Denison v. Larkin*,
   64 F. Supp. 3d 1127 (N.D. Ill. 2014) ...............................................................10

*Doe v. 2TheMart.com, Inc.*,
   140 F. Supp. 2d 1088 (W.D. Wash. 2001)...............................................................3

*Eisenstadt v. Baird*,
   405 U.S. 438 (1972)..............................................................................15

*Elrod v. Burns*,
   427 U.S. 347 (1976)..............................................................................12

*Enterline v. Pocono Med. Ctr.*,
   751 F. Supp. 2d 782 (M.D. Pa. 2008) ...............................................................14

*Glassdoor, Inc. v. Superior Court*,
   9 Cal. App. 5th 623 (2017) ........................................................................14

*Highfields Cap. Mgmt., L.P. v. Doe*,
   385 F. Supp. 2d 969 (N.D. Cal. 2005) .......................................................*passim*

*Hughes v. Benjamin*,
   437 F. Supp. 3d 382 (S.D.N.Y. 2020) ...............................................................10

*In re Anonymous Online Speakers*,
   661 F.3d 1168 (9th Cir. 2011) ...................................................................1, 4

*In re DMCA Section 512(h) Subpoena to YouTube (Google, Inc.)*,
   No. 7:18-MC-00268 (NSR), 2022 WL 160270 (S.D.N.Y. Jan. 18, 2022) ...................................9

*In re DMCA Subpoena to Reddit, Inc.*,
  441 F. Supp. 3d 875 (N.D. Cal. 2020) ............................................................*passim*

*In re Verizon Internet Serv., Inc.*,
  257 F. Supp. 2d 244 (D.D.C. 2003)) ................................................................ 14

*Kelly v. Arriba Soft Corp.*,
  336 F.3d 811 (9th Cir. 2003) ............................................................................ 11

*Leadsinger v. BMG Music Pub.*,
  512 F.3d 522 (9th. Cir. 2008) ............................................................................ 9

*Lenz v. Universal*,
  815 F.3d 1145 (9th Cir. 2016) ............................................................................ 8

*Lombardo v. Dr. Seuss Enters., L.P.*,
  279 F. Supp. 3d 497 (S.D.N.Y. 2017) .............................................................. 10

*Marano v. Metro. Museum of Art*,
  472 F. Supp. 3d 76 (S.D.N.Y. 2020) ................................................................ 10

*Mattel v. Walking Mountain Prod.*,
  353 F.3d 792 (9th Cir. 2003) ...................................................................... 11, 12

*McIntyre v. Ohio Elections Comm'n*,
  514 U.S. 334 (1995) ............................................................................................ 3

*McVicker v. King*,
  266 F.R.D. 92 (W.D. Pa. 2010) ........................................................................ 14

*Mobilisa, Inc. v. Doe*,
  170 P.3d 712 (Ariz. Ct. App. 2007) .................................................................. 13

*Savage v. Council on Am.-Islamic Rels., Inc.*,
  2008 WL 2951281 (N.D. Cal. July 25, 2008) .................................................. 10

*Sedgwick Claims Mgmt. Servs., Inc. v. Delsman*,
  2009 WL 2157573 (N.D. Cal. July 17, 2009) .................................................... 9

*Seltzer v Green Day*,
  725 F.3d 1170 (9th Cir. 2013) .......................................................................... 11

*Signature Mgmt. Team, LLC v. Doe*,
  876 F.3d 831 (6th Cir. 2017) .........................................................................*passim*

*Signature Mgmt. Team, LLC v. Doe*,
  No. 13-cv-14005, 2015 WL 13036681 (E.D. Mich. Nov. 4, 2015) .................. 13

*Silvers v. Sony Pictures Entm't, Inc.*,
  402 F.3d 881 (9th Cir. 2005) .............................................................................. 8

*Sony Music Entm't, Inc. v. Does 1-40*,
  326 F. Supp. 2d 556 (S.D.N.Y. 2004) ................................................................ 4

*Suntrust Bank v. Houghton Mifflin*,
  268 F.3d 1257 (11th Cir. 2001) .......................................................................... 6

iii

*USA Tech., Inc. v. Doe*,
   713 F. Supp. 2d 901 (N.D. Cal. 2010) ...................................................................15

**Statutes**

17 U.S.C. § 512 .........................................................................................................7

**Other Authorities**

James Ball & Paul Hamilos, *Ecuador's President Used Millions of Dollars of Public Funds to Censor Critical Online Videos*, BuzzFeedNews (Sept. 24, 2015) ...............................7

Mitch Stoltz, *Using Copyright to Silence Oil Sands Satire? How Crude.*, EFF DeepLinks (Aug. 20, 2013) .........................................................................................................7

Nate Anderson, *What Fair Use? Three Strikes and You're Out… of YouTube*, Ars Technica (Jan. 15, 2009) .........................................................................................................7

*Prince vs. Prince Fan Sites*, Digital Media Law Project (Jan. 25, 2008) ........................7

*Takedown Hall of Shame,* Electronic Frontier Foundation ..............................................7

William F. Patry & Shira Perlmutter, *Fair Use Misconstrued: Profit, Presumptions, and Parody*, 11 Cardozo Arts & Ent. L.J. 667 (1993) .........................................................8

## **INTRODUCTION**

The Magistrate's ruling is deeply flawed, in multiple ways.

First, by centering its analysis of Bayside's subpoena on fair use, rather than the two-step test articulated in *Highfields Cap. Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969 (N.D. Cal. 2005), the Order assumes and reinforces a two-tiered system of protections for anonymous speakers. According to this approach, some speakers are more vulnerable to unmasking than others, based solely on the nature of the claims asserted again them. Under Ninth Circuit law, that was error: anonymity standards depend on the nature of the speech, not the nature of the claims. *See In re Anonymous Online Speakers*, 661 F.3d 1168, 1177 (9th Cir. 2011).

Second, the ruling exacerbates that risk by requiring the speaker, if they have engaged in fair use, to submit evidence themselves or face unmasking. In some cases, such evidence may be necessary. But many fair uses are obvious on their face, and courts can rule on the matter without hearing from the speaker. Moreover, a speaker may be unable to submit evidence to the court for many reasons, including the significant practical and financial burdens that internet users face in retaining counsel to adequately defend their First Amendment rights.

Third, as a corollary matter, the ruling effectively rewrites the rules of standing to prevent a service provider from stepping in to protect the speaker. It is well settled that online services that distribute others' speech are entitled to assert those speakers' First Amendment rights, and there is no reason to depart from that precedent here.

All these flaws in the Order chip away at the fundamental constitutional right to anonymous speech, setting a dangerous precedent for online speakers who wish to use copyrighted materials as part of their criticism and commentary. Such uses are common—as is misuse of copyright law to try to silence that criticism. Undermining First Amendment protections for those speakers will only encourage further misuse, chilling an important and effective form of speech.

Amici Electronic Frontier Foundation ("EFF") and ACLU Foundation of Northern California ("ACLU") urge the Court to correct the Magistrate's errors and chart a better path that affirms the First Amendment's robust protections for anonymous speakers. First, this Court should hold that a litigant's invocation of copyright law in support of a subpoena to unmask an online speaker does not create a shortcut past the First Amendment's strong protections under the test articulated in *Highfields*. Second, in applying the two-step test, the Court also should clarify that the proponent of unmasking bears the burden of establishing that their claims have merit and that their need to unmask the speaker outweighs the harms that follow from losing anonymity. Bayside cannot meet that burden here. Third, this Court should affirm that it is possible to conduct a fair use analysis without evidence from the speaker in question, particularly where, as here, a third-party online service stands in its user's shoes to argue fair use on their behalf.

## I.      The First Amendment requires all legal demands to unmask anonymous speakers—including DMCA subpoenas—to satisfy the two-part test recognized in Highfields

The multiple errors in the Magistrate's Order stem, in large part, from its decision to follow its sister court in failing to apply the full analysis set forth in *Highfields*. Order (Dkt. No. 21) at 5-6, citing *In re DMCA Subpoena to Reddit, Inc.*, 441 F. Supp. 3d 875 (N.D. Cal. 2020). Ninth Circuit precedent does not recognize a "copyright exception" to the First Amendment's protections for anonymous speakers where, as here, the use in question is highly expressive. Further, a fair use analysis, while necessary as *part* of the examination, is not an adequate substitute for the required two-step test under *Highfields.*

### A.      There is no copyright exception to *Highfields'* scrutiny

#### 1.      The First Amendment protects online anonymity and, in this circuit, and those protections do not vary by the nature of the claim

The First Amendment protects anonymous speakers from retaliation and other harms by

allowing them to separate their identity from the content of their speech to avoid retaliation and other harms. Anonymity is a distinct constitutional right: "an author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom of speech protected by the First Amendment." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995). It is well-settled that the First Amendment protects anonymity online, as it "facilitates the rich, diverse, and far-ranging exchange of ideas," *Doe v. 2TheMart.com, Inc.*, 140 F. Supp. 2d 1088, 1092 (W.D. Wash. 2001), and ensures that a speaker can use "one of the vehicles for expressing his views that is most likely to result in those views reaching the intended audience." *Highfields*, 385 F. Supp. 2d at 981. It is also well-settled that litigants who do not like the content of Internet speech by anonymous speakers will often misuse "discovery procedures to ascertain the identities of unknown defendants in order to harass, intimidate or silence critics in the public forum opportunities presented by the Internet." *Dendrite Int'l v. Doe No. 3*, 775 A.2d 756, 771 (N.J. App. Div. 2001).

Thus, although the right to anonymity is not absolute, courts subject discovery requests like the subpoena here to robust First Amendment scrutiny. And in the Ninth Circuit, as the Magistrate implicitly acknowledged, that scrutiny generally follows the *Highfields* standard when the individual targeted is engaging in free expression. Under *Highfields*, courts must first determine whether the party seeking the subpoena can demonstrate that its legal claims have merit. *Highfields*, 385 F. Supp. 2d at 975-76. If so, the court must look beyond the content of the speech at issue to ensure that identifying the speaker is necessary and, on balance, outweighs the harm unmasking may cause. *See id.* at 976.

2. <u>Those same First Amendment protections apply to copyright disputes and are essential to curb abuse</u>

The Ninth Circuit has held that "the nature of the speech should be a driving force in

choosing a standard by which to balance the rights of anonymous speakers in discovery disputes."
*In re Anonymous Online Speakers*, 661 F.3d at 1177. Thus, the expression, not "the cause of action
alleged by the plaintiff," should drive this Court's analysis. *Art of Living Found. v. Does 1-10*, No.
10-CV-05022-LHK, 2011 WL 5444622 at *5 (N.D. Cal. Nov. 9, 2011).

Accordingly, *Highfields*'s protections must apply where, as here, the case involves a highly
expressive use of a copyrighted work. Its robust protections stand in sharp contrast to, for example,
early Doe cases involving minimally expressive uses such as peer-to-peer filesharing.  *See, e.g.,
Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010); *Sony Music Entm't, Inc. v. Does 1-40*,
326 F. Supp. 2d 556 (S.D.N.Y. 2004). In *Sony*, for example, the court created a five-factor test to
consider whether to identify people sharing music over peer-to-peer networks: "(1) a concrete
showing of a prima facie claim of actionable harm (2) specificity of the discovery request; (3) the
absence of alternative means to obtain the subpoenaed information; (4) a central need for the
subpoenaed information to advance the claim; and (5) the party's expectation of privacy." 326 F
Supp.2d at 564-65 (citations omitted). Unlike *Highfields*, this test does not allow balancing of
harms to the Doe other than their expectation of privacy.

As explained by the court in *Art of Living*, that approach is not adequate beyond the file-
sharing context, if even there. Reviewing a request to unmask bloggers that had posted
commentary and materials regarding a religious organization, including a copyrighted work, the
court noted that the act of downloading and distributing copyrighted songs is less expressive than
critical, anonymous online commentary. *Art of Living*, 2011 WL 5444622 at *5. Following *In re
Anonymous Online Speakers*, the court held that *Highfields* applied even when the proponent of
unmasking alleged copyright infringement. *Id*. at *7.

The Sixth Circuit Court of Appeals took a similar approach in *Signature Mgmt. Team, LLC
v. Doe*, 876 F.3d 831 (6th Cir. 2017). In that case, a  multi-level  marketing  company  sought  to

4

identify the anonymous speaker who posted a downloadable copy of one of the company's copyrighted books on his blog. *Id*. at 834. On summary judgment, the company prevailed on its copyright infringement claim, but the district court denied the company's request to unmask the blogger. *Id*. at 834-35. On appeal, the company argued that "since Doe is an adjudicated copyright infringer, his speech is not protected by the First Amendment." *Id*. at 835.

The Sixth Circuit rejected that argument, noting that an unmasking analysis based solely on copyright law would mean disregarding the broader context of a speakers' expression: "Although Doe's infringing speech is not entitled to First Amendment protection, that speech occurred in the context of anonymous blogging activities that are entitled to such protection." *Id*. at 839. Endorsing a *Highfields*-like approach, including interest balancing, the court concluded that the Doe could remain anonymous. As the court observed, "an order unmasking Doe would [. . .] unmask him in connection with both protected and unprotected speech and might hinder his ability to engage in anonymous speech in the future." *Id*. at 839.

The same concerns apply here. The user's tweets involve a mix of lawful and potentially infringing expression. Narrowing the inquiry to focus exclusively on whether copyright infringement occurred incorrectly allows the nature of the *claim* to drive the analysis, rather than the nature of the *speech* at issue.

**B.**     **A fair use analysis alone is not a substitute for robust *Highfields'* scrutiny**

The Magistrate further confused matters by suggesting that a fair use analysis could be a proxy for the robust two-step First Amendment analysis *Highfields* requires. Order at 7. This suggestion follows a decision, in *In re DMCA Subpoena*, 441 F. Supp. 3d at 882, to resolve a similar case purely on fair use grounds, on the theory that *Highfields* "is not well-suited for a copyright dispute" and "the First Amendment does not protect anonymous speech that infringed copyright." *Id.*

That theory was legally incorrect. While fair use is a free-speech safety valve that helps reconcile the First Amendment and the Copyright Act with respect to restrictions on expression, anonymity is a distinct First Amendment right.[1] *Signature Mgmt.*, 876 F.3d at 839. Moreover, DMCA subpoenas like those at issue here and in *In re DMCA Subpoena*, concern attempts to unmask internet users who are engaged in commentary. In such cases, as with the blogger in *Signature Mgmt.*, unmasking is likely to chill lawful as well as allegedly infringing speech. They thus raise precisely the same speech concerns identified in *Highfields*: the use of the discovery process "to impose a considerable price" on a speaker's anonymity. 385 F. Supp. 2d at 981-82.

Indeed, where a use is likely or even colorably a lawful fair use, allowing a fair use analysis alone to substitute for a full *Highfields* review gets the question precisely backwards, given the doctrine's "constitutional significance as a guarantor to access and use for First Amendment purposes." *Suntrust Bank v. Houghton Mifflin*, 268 F.3d 1257, 1260 n.3 (11th Cir. 2001). Fair use prevents copyright holders from thwarting well-established speech protections by improperly punishing lawful expression, from critical reviews, to protest videos that happen to capture background music, to documentaries incorporating found footage, and so on. But the existence of one form of speech protection (the right to engage in fair use) should not be used as an excuse to give shorter shrift to another (the right to speak anonymously).

Moreover, in the DMCA context, requiring a full *Highfields* analysis helps limit the chilling effects of the DMCA's hair-trigger processes. Copyright holders already abuse the DMCA's takedown notice regime in Section 512(c) to shut down lawful speech. To take just a few examples:

---

[1] EFF was counsel to the Reddit user that prevailed in maintaining their anonymity in *In Re DMCA Subpoena to Reddit, Inc*., 441 F. Supp. 3d 875. Like EFF here, Doe argued to both the Magistrate Court and District Court that *Highfields* applied to the DMCA subpoena. *See id*., No. 19-mc-80005-SK (JD), Dkt. No. 8 at 8-10 (Motion to Quash); Dkt. No. 20 at 3-9 (Motion for De Novo Determination).

- The government of Ecuador engaged in a well-funded and sustained campaign of DMCA abuse to silence criticism of President Rafael Correa.[2]

- The Alberta tourism bureau, Travel Alberta, sent a takedown notice targeting a satirical video that happened to use four seconds of a Travel Alberta advertisement.[3] The video was tied to a fundraising campaign by Andy Cobb and Mike Damanskis, Los Angeles-based satirists who have authored over 100 political comedy videos.

- Film critic Kevin B. Lee found his entire account removed from YouTube in response to takedown notices complaining about clips Lee used in the criticism he posted there.[4]

- The musician Prince sent a series of takedown notices targeting fan videos—even though he did not own the music in question.[5]

Similar DMCA abuses have been documented for decades, and many more are collected at EFF's Takedown Hall of Shame.[6]

   *Highfields* alone cannot prevent takedown abuse under 17 U.S.C. § 512(c), but it can help mitigate the consequences by ensuring that even where fair use is not clear, rightsholders cannot automatically take advantage of Section 512(h) to further retaliate against the speaker.

## II.   Bayside's subpoena cannot survive the requisite scrutiny

   Under *Highfields*, Bayside bears the burden of making out a prima facie case of infringement, including, in the case, showing that the use was not a lawful fair use and that the balance of harms favors disclosure. It has not, and cannot, meet that burden.

---

[2] James Ball & Paul Hamilos, *Ecuador's President Used Millions of Dollars of Public Funds to Censor Critical Online Videos*, BuzzFeedNews (Sept. 24, 2015), www.buzzfeed.com/jamesball/ecuadors-president-used-millions-of-dollars-of-public-funds.

[3] *See* Mitch Stoltz, *Using Copyright to Silence Oil Sands Satire? How Crude.*, EFF DeepLinks Blog (Aug. 20, 2013), https://www.eff.org/deeplinks/2013/08/using-copyright-silence-oil-company-satire-how-crude.

[4] *See* Nate Anderson, *What Fair Use? Three Strikes and You're Out… of YouTube*, Ars Technica (Jan. 15, 2009), http://arstechnica.com/tech-policy/news/2009/01/what-fair-use-three-strikes-and-youre-out-of-youtube.ars.

[5] *See Prince vs. Prince Fan Sites*, Digital Media Law Project (Jan. 25, 2008), http://www.dmlp.org/threats/prince-v-prince-fan-sites (collecting Prince's threats).

[6] *Takedown Hall of Shame,* Electronic Frontier Foundation*,* www.eff.org/takedowns.

### A.      Bayside bears the burden on both steps

Bayside incorrectly claims that Twitter (and by implication, its user) bears the burden of demonstrating that the use in question was a lawful fair use. Opposition to Motion to Quash (Dkt. No. 9) at 15. The party seeking discovery normally bears the burden of showing its legal claims have merit. *Highfields*, 385 F. Supp. 2d at 975-76. In this pre-litigation stage, that burden should not shift to the anonymous speaker, for at least three reasons.

*First*, constitutional rights, such as the right to anonymity, trump statutory rights such as copyright. *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 883-84 (9th Cir. 2005). Moreover, fair use has an additional constitutional dimension because it serves as a First Amendment "safety valve" that helps reconcile the right to speak freely and the right to restrict speech. William F. Patry & Shira Perlmutter, *Fair Use Misconstrued: Profit, Presumptions, and Parody*, 11 Cardozo Arts & Ent. L.J. 667, 668 (1993). Shifting the *Highfields* burden to the speaker would create a cruel irony: an anonymous speaker would be less able to take advantage of one First Amendment safeguard—the right to anonymity—solely because their speech relies on another—the right to fair use. Notably, the Ninth Circuit has stressed that fair use is not an affirmative defense that merely excuses unlawful conduct; rather, it is an affirmative right that is raised as a defense simply as a matter of procedural posture. *Lenz v. Universal*, 815 F.3d 1145, 1152 (9th Cir. 2016).

*Second,* Bayside itself was required to assess whether the use in question was fair before it sent its DMCA takedown notices to Twitter; it cannot now complain if the Court asks it to explain that assessment before ordering unmasking. *In re DMCA Subpoena*, 441 F. Supp. 3d at 886 (citing *Lenz.*, 815 F.3d at 1153: "a copyright holder must consider the existence of fair use before sending a takedown notification under § 512(c)")

*Third,* placing the burden on the party seeking to unmask a Doe makes practical sense at this early stage, when many relevant facts lie with  the rightsholder. Here, for example, Bayside

presumably knows—though it has declined to address—the original purpose of the works. And as the copyright holder, it is best positioned to explain how the use at issue might affect a licensing market. While the copyright holder cannot see into the mind of the user, the user's purpose is easy to surmise here, and the same is likely to be true in any 512(h) case involving expressive uses. With respect to the nature of the work, any party can adequately address that factor. Indeed, both Bayside and Twitter have done so.

### B.     Bayside cannot meet its burden on the first step

The Magistrate erroneously concluded that it could not adequately consider fair use without evidence from the speaker, and, therefore, could not hold that Bayside had failed to establish its prima facie case. Order at 7-9. Amici urge the Court to reject both parts of that conclusion: (1) that a court cannot, as a categorical matter, determine fair use without evidence from the speaker; and (2) that this Court could not do so on these facts.

#### 1.     Lawfulness can be determined on the face of the use

While courts often reserve fair use determinations for summary judgment or trial, in appropriate circumstances it is possible to make the determination based on the use itself. *See In re DMCA Section 512(h) Subpoena to YouTube (Google, Inc.)*, No. 7:18-MC-00268 (NSR), 2022 WL 160270 (S.D.N.Y. Jan. 18, 2022) (rejecting the argument that fair use cannot be determined during a motion to quash proceeding). In *Burnett v. Twentieth Century Fox*, for example, a federal district court dismissed a copyright claim—without leave to amend—at the pleading stage based on a finding of fair use. 491 F. Supp. 2d 962, 967, 975 (C.D. Cal. 2007); *see also Leadsinger v. BMG Music Pub.*, 512 F.3d 522, 532–33 (9th Cir. 2008) (affirming motion to dismiss, without leave to amend, fair use allegations where three factors "unequivocally militated" against fair use). *See also, e.g., Sedgwick Claims Mgmt. Servs., Inc. v. Delsman*, 2009 WL 2157573 at *4 (N.D. Cal. July 17, 2009), *aff'd*, 422 F. App'x 651 (9th Cir. 2011); *Savage v. Council on Am.-Islamic*

9

*Rels., Inc.,* 2008 WL 2951281 at *4 (N.D. Cal. July 25, 2008); *City of Inglewood v. Teixeira*, 2015 WL 5025839 at *12 (C.D. Cal. Aug. 20, 2015); *Marano v. Metro. Museum of Art*, 472 F. Supp. 3d 76, 82–83, 88 (S.D.N.Y. 2020), *aff'd*, 844 F. App'x 436 (2d Cir. 2021); *Lombardo v. Dr. Seuss Enters*., *L.P.*, 279 F. Supp. 3d 497, 504–05 (S.D.N.Y. 2017), *aff'd*, 729 F. App'x 131 (2d Cir. 2018); *Hughes v. Benjamin*, 437 F. Supp. 3d 382, 389, 394 (S.D.N.Y. 2020); *Denison v. Larkin,* 64 F. Supp. 3d 1127, 1135 (N.D. Ill. 2014).

These ruling are possible because many fair uses are obvious. A court does not need to consult a user to determine that the use of an excerpt in a book review, the use of a thumbnail photograph in an academic article commenting on the photographer's work, or the inclusion of an image in a protest sign are lawful uses. There is no need to seek a declaration from a journalist when they quote a series of social media posts while reporting on real-time events.

Further, as noted above, in the context of a Section 512(h) subpoena to pierce a user's anonymity, fair use determinations will often be essential to curb abuse of the takedown process. As noted above, such abuse is rampant, and often involves fair uses for criticism and commentary. And unfortunately, in many cases involving the DMCA, the accused infringer may not be able to intervene on their own behalf. *See infra* Section III.

2.   Based on the facts in the record, the use at issue is a lawful fair use

Given that Twitter has fully briefed the fair use analysis here, Amici will merely highlight a few points.

First, the tweets appear to be noncommercial, transformative, critical commentary—classic fair uses. The tweets present photographs of a woman, identified as "the new Mrs. Brian Sheth" as part of commentary on Mr. Sheth, the clear implication being that Mr. Sheth has used his wealth to "invest" in a new, young, wife. As the holder of rights in the photographs, Bayside could have explained the original purpose of the photographs;  it has chosen not to do so. In any event, it

seems unlikely that Bayside's original purpose was to illustrate criticism and commentary regarding a billionaire investor. Hence, the user "used the [works] to express 'something new, with a further purpose or different character, altering the first with new expression, meaning, or message.'" *In re DMCA Subpoena to Reddit, Inc.*, 441 F. Supp. 3d at 883 (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994)).  While undoubtedly crass, the user's purpose is transformative and, Bayside's speculation notwithstanding, there is nothing to suggest it was commercial.

As for the second factor, while the underlying works are creative, they are minimally so—they appear to document the subject's appearance and activities. Further, where, as here, the use is transformative, the nature of the work is "not . . . terribly significant in the overall fair use balancing." *Mattel v. Walking Mountain Prod.*, 353 F.3d 792, 803 (9th Cir. 2003) (citation omitted).

On the third factor, the amount used—entire photographs—appears to be necessary to fulfill the user's purpose: illustrating and supporting their comments. "If the secondary user only copies as much as is necessary for his or her intended use, then this factor will not weigh against him or her." *Kelly v. Arriba Soft Corp.,* 336 F.3d 811, 820-21 (9th Cir. 2003). Bayside may not like that purpose, but that's not an argument against fair use.

Finally, it is difficult to imagine how this use could harm any licensing market cognizable under copyright law. Tweets and embedded thumbnail photos cannot conceivably substitute for the photos themselves. Bayside's failure to offer any evidence, much less an argument, showing *any* likely market harm is telling. *See Seltzer v Green Day*, 725 F.3d 1170, 1179 (9th Cir. 2013) (fourth factor favored fair use where, *inter alia*, plaintiff failed to provide any substantial evidence supporting claim to comparable licensing opportunity). Further, Bayside would not license the photos in question to enable criticism  and commentary like the user's expression here.

Fair use exists, in significant part, to protect uses that are unlikely to be permitted by the copyright owner. *See Campbell*, 510 U.S.at 585; *see also Mattel*, 353 F.3d at 806 (no market harm where copyright owner would not enter the relevant market).

### C.     Bayside cannot meet its burden on the second step

Even if Bayside had a viable infringement claim, it cannot show that unmasking is truly necessary to advance its interests, that those needs outweigh the harm that would result., and that no alternative path exists. *Highfields*, 385 F. Supp. 2d at 980; *Signature Mgmt.*, 876 F.3d at 834. Bayside offered no argument or evidence on the first point, which should have ended the inquiry in favor of quashing the subpoena. Twitter Mot. (Dkt. No. 10) at 14. Instead, the Magistrate ended the inquiry in another way, finding that the court could not balance the harms at all without user evidence. Order at 9. This, too, was error.

As a practical matter, again on the facts in the record, unmasking would accomplish little other than allowing retaliation and chilling further speech. Twitter removed all six copyrighted images from @CallMeMoneyBags' tweets in response to Bayside's DMCA takedown notices sent in October 2020. Order at 2-3. Thus, to the extent Bayside seeks to prevent continued infringement of the photos in those tweets, it has already obtained that relief via the DMCA's notice and takedown regime. *See Signature Mgmt.*, 876 F.3d at 838 (holding that unmasking was not necessary given that the copyrighted material was no longer being published on the anonymous defendant's blog). And there is no indication that statutory penalties are needed to deter further potentially unlawful conduct.

On the other side of the scale, unmasking would cause irreparable harm—or at the very least, the Magistrate could have inferred as much. It is well-settled that "[t]he loss of First Amendment freedoms . . . unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). As the Supreme Court has recognized   in   an   analogous   context,

unmasked individuals can be "vulnerable to threats, harassment, and reprisals." *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 97 (1982). The same is true for online speakers. *See Art of Living*, 2011 WL 5444622 at *9 (to "the extent that [a user's] anonymity facilitates free speech, the disclosure of his identity is itself an irreparable harm."); *see also Dendrite*, 775 A.2d at 771 (recognizing that unmasking speakers can let other people "harass, intimidate or silence critics").

Finally, the Magistrate could have considered alternatives short of full public disclosure of @CallMeMoneyBags' identity. For example, the district court in *Signature Mgmt.* permitted disclosure of the anonymous blogger's identity to plaintiff's counsel and the court, subject to a protective order that prevented the plaintiff company from learning the blogger's identity. *See Signature Mgmt. Team, LLC v. Doe*, No. 13-cv-14005, 2015 WL 13036681 at *8 (E.D. Mich. Nov. 4, 2015). The Sixth Circuit later held that no further disclosure of Doe's identity was necessary. *Signature Mgmt.*, 876 F.3d at 838-39; s*ee also Mobilisa, Inc. v. Doe*, 170 P.3d 712, 720 (Ariz. Ct. App. 2007) (recognizing that courts should consider whether other discovery, besides unmasking, is available to address a litigant's needs).

## III.    Online services must be able to defend their users' First Amendment rights

Of course, there was a party in court able and willing to offer evidence and argument on fair use: Twitter. The Magistrate's refusal to credit Twitter's own evidence, Order at 7-8, sends a dangerous message to online speakers: either show up and fully litigate their anonymity—risking their right to remain anonymous in the process—or face summary loss of their anonymity when they do not appear. Order at 7. That outcome inevitably "impose[s] a considerable price" on internet users' ability to exercise their rights to speak anonymously. *Highfields*, 385 F. Supp. 2d at 980-81. And "when word gets out that the price tag of effective sardonic speech is this high, that speech will likely disappear." *Id*. at 981.

That chilling effect will be particularly acute for speech from unsophisticated litigants who may have difficulty finding—much less paying for—counsel to defend their rights. *See Enterline v. Pocono Med. Ctr.*, 751 F. Supp. 2d 782, 785-86 (M.D. Pa. 2008). Those challenges aside, the speaker may have not received notice of the subpoenas, particularly given that 512(h) subpoenas, unlike most others, may be issued *ex parte*. The speaker may be hard to reach because they have shut down the email account associated with the tweets in question (and are therefore unreachable). Or they may simply too intimidated by the potentially ruinous statutory penalties copyright law authorizes. Some or all of these factors may be present here. For example, it's not clear whether @CallMeMoneyBags is even aware of this litigation. Although the Magistrate ordered Twitter to email @CallMeMoneyBags the order requiring the user to appear and provide evidence last November, Order at 7-8, there is no evidence that those efforts successfully provided the user with notice. Moreover, the account has not tweeted since October 2021, raising questions as to whether the user is checking the email account registered with Twitter.[7]

No relevant case law dictated the Magistrate's refusal to consider Twitter's evidence and argument. To the contrary, it is well settled that online services that distribute others' speech are entitled to assert those speakers' First Amendment rights. *Enterline*, 751 F. Supp. 2d at 786 (online publisher had standing to defend its users' anonymity); *McVicker v. King*, 266 F.R.D. 92, 95-96 (W.D. Pa. 2010) ("The trend among courts . . . is to hold that entities such as newspapers, internet service providers, and website hosts may, under the principle of *jus tertii* standing, assert the rights of their readers and subscribers."); *In re Verizon Internet Serv., Inc.*, 257 F. Supp. 2d 244, 257-58 (D.D.C. 2003), *rev'd on other grounds*, *RIAA v. Verizon Internet Serv., Inc.*, 351 F.3d 1229 (D.C. Cir. 2003); *Glassdoor, Inc. v. Superior Court*, 9 Cal. App. 5th 623, 629 (2017) ("a substantial

---

[7] *See* https://twitter.com/CallMeMoneyBags.

preponderance of national authority favors the rule that publishers, including Web site operators, are entitled to assert the First Amendment rights of their anonymous contributors in maintaining anonymity.").

Indeed, the Supreme Court has recognized that not permitting third-party standing under the First Amendment "would have an intolerable, inhibitory effect on freedom of speech." *Eisenstadt v. Baird*, 405 U.S. 438, 445 n.5 (1972); *see also USA Tech., Inc. v. Doe*, 713 F. Supp. 2d 901, 906 (N.D. Cal. 2010) (recognizing the "chilling effect that subpoenas would have on lawful commentary and protest" if online services aren't allowed to assert their users' anonymous speech rights).

Twitter was willing and able to stand in its users' shoes, and the Magistrate should have allowed it to do so.

## **CONCLUSION**

For the foregoing reasons, Amici respectfully requests that the Court grant Twitter's motion for de novo determination and quash Bayside's subpoena.

DATED: February 18, 2022                    Respectfully submitted,


                                        */s/ Aaron Mackey*
                                        Aaron Mackey

                                        Corynne McSherry
                                        ELECTRONIC FRONTIER FOUNDATION
                                        815 Eddy Street
                                        San Francisco, CA 94109
                                        Telephone: (415) 436-9333
                                        Facsimile: (415) 436-9993

                                        Jacob A. Snow
                                        jsnow@aclunc.org
                                        Nicole A. Ozer
                                        nozer@aclunc.org
                                        ACLU FOUNDATION OF NORTHERN
                                        CALIFORNIA

39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493

*Attorneys for Amici Curiae Electronic
Frontier Foundation and ACLU Foundation
of Northern California*