1  ROBERT E. ALLEN (SBN 166589)
   rallen@glaserweil.com
2  LAWRENCE M. HADLEY (SBN 157728)
   lhadley@glaserweil.com
3  THOMAS P. BURKE JR. (SBN 288261)
   tburke@glaserweil.com
4  GLASER WEIL FINK HOWARD
     AVCHEN & SHAPIRO LLP
5  10250 Constellation Boulevard, 19th Floor
   Los Angeles, California 90067
6  Telephone: (310) 553-3000
   Facsimile: (310) 556-2920
7
   Attorneys for Petitioner
8  Bayside Advisory LLC

9
10                 UNITED STATES DISTRICT COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12                    SAN FRANCISCO DIVISION

13                                    CASE NO.: 4:20-mc-80214-VC

14                                    **PETITIONER BAYSIDE ADVISORY
   IN RE DMCA § 512(h)               LLC'S OPPOSITION TO TWITTER'S**
15 SUBPOENA TO TWITTER, INC.         **MOTION FOR DE NOVO
                                     DETERMINATION OF DISPOSITIVE
16                                   MATTER REFERRED TO MAGISTRATE
                                     JUDGE**
17
                                     Hearing Date:  May 12, 2022
18                                   Time:          1:00 p.m.
                                     Judge:         Hon. Vince Chhabria
19                                                  Courtroom 4, 17th Floor
20
21
22
23
24
25
26
27
28

1

2

**TABLE OF CONTENTS**

Page

3

I.    INTRODUCTION ...................................................................................................1

4

II.   RELEVANT PROCEDURAL BACKGROUND ...................................................2

III.  ARGUMENT ........................................................................................................3

5

      A.     Twitter Does Not Have Standing to Bring The Motion...............................3

6

      B.     The Subpoena Does Not Suppress Free Speech. ......................................7

7

      C.     Bayside Has Shown Good Cause to Obtain the Subpoenaed Information. .............9

      D.     Whether an Alleged Infringer's Use of a Work Constitutes Fair Use Is

8

              Irrelevant to a 512(h) Subpoena and Cannot Be Considered By the Court ..........10

9

      E.     Even if the Court Considers Fair Use, Judge Ryu Was Correct that

              MoneyBags' Use of the Photographs Was Not Fair Use.......................................11

10

      F.     *Highfields* Does Not Apply, and Even If It Does, The Court Correctly

              Applied the *Highfields* Balancing Test. ..................................................17

11

      G.     The MTQ Was Untimely and Made Without Notice...........................................19

12

IV.  CONCLUSION.....................................................................................................20

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

2132054

# TABLE OF AUTHORITIES

Page

## CASES

*Agency for Int'l Dev. v. Alliance For Open Society Int'l, Inc.*, 140 S.Ct. 2082 (2020) .................. 4

*Alhawarin v. McCament,* 2018 WL 6265081 (C.D. Cal Mar. 29, 2018) ...................................... 6

*Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith*, 11 F.4th 26 (2d Cir. 2021) ....... 11, 14, 16

*Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010) ................................................. 8, 9, 19

*Art of Living Found. v. Does 1-10*, 2011 WL 5444622 (N.D. Cal. Nov. 9, 2011) ...................... 18

*Baugher v. GoDaddy.com LLC*, 2021 WL 4942658 (D. Ariz. Oct. 22, 2021) ........................... 18

*Benedict v. Hewlett-Packard Co.*, 2014 WL 234218 (N.D. Cal. Jan. 21, 2014) ........................... 9

*Brammer v. Violent Hues Prods., LLC*, 922 F.3d 255 (4th Cir. 2019) ................................... 12, 15

*BWP Media USA, Inc. v. Crowdgather, Inc.*, 2014 WL 12601054 (C.D. Cal. July 28,
      2014) ................................................................................................................................ 18

*Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332 (D.D.C. 2011) ..................... 9

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994) .................................. 12, 13, 14, 15, 16

*Chevron Corp. v. Donziger*, 2013 WL 4536808 (N.D. Cal. Aug. 22, 2013) ................................. 7

*Coal. Of Clergy Lawyers and Professors v. Bush*, 310 F.3d 1153 (9th Cir. 2002) ...................... 4

*Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573 (N.D. Cal. 1999) ................................... 17

*Dr. Seuss Enters., L.P. v. ComicMix LLC*, 983 F.3d 443 (9th Cir. 2020) ............................ 11, 14

*Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394 (9th Cir. 1997) ....... 13, 14, 16

*Drummond Co., Inc. v. Collingsworth*, 2013 WL 6074157  (N.D. Cal. Nov. 18, 2013) ............... 4

*Dubin v. Sup. Ct. of Haw.*, 2021 WL 4496946 (D. Haw. Sep. 30, 2021) ...................................... 4

*Eisentstadt v. Baird,* 405 U.S. 438 (1972) ................................................................................. 7

*Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004) ................................................................. 1

*Elvis Presley Enters. v. Passport Video*, 349 F.3d 622 (9th Cir. 2003) ...................................... 13

*Emy Franco v. Alorica, Inc.*, 2021 WL 6104816 (C.D. Cal. Nov. 5, 2021) ............................... 20

*Ensor v. Does 1-15*, 2019 WL 4648486 (W.D. Tex. Sep. 23, 2019) ............................................ 9

*First Senior Fin. Grp. LLC v. Watchdog*, 2012 WL 12903829 (E.D. Penn. Nov. 8, 2012) .......... 9

*Fleck and Assocs., Inc. v. Phoenix, City of, an Ariz. Mun. Corp.*, 471 F.3d 1100 (9th Cir.
      2006) ................................................................................................................................ 3

ii

Glaser Weil

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Gillespie v. Civiletti*, 629 F.2d 637 (9th Cir. 1980) ........................................................... 1

*Green Tree Servicing, LLC v. Collegium Fund LLC*, 2016 WL 5429652 (D. Nev. Sep. 27, 2016) ...................................................................................................................... 6

*Handloser v. HCL Am., Inc.*, 2020 WL 4700989 (N.D. Cal. Aug. 13, 2020) ......................... 20

*Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539 (1985) ...................... 8, 12, 18

*Highfields Capital Management, L.P. v. Doe*, 385 F. Supp. 2d 969 (N.D. Cal. 2005) ............... 17

*In re Anonymous Online Speakers*, 661 F.3d 1168 (9th Cir. 2011) ................................... 9, 18

*In re DMCA Subpoena to Reddit, Inc.,* 441 F. Supp. 3d 875 (N.D. Cal. 2020) ......................... 18

*In re Grand Jury Subpoena, No. 16-03-217,* 875 F.3d 1179 (9th Cir. 2017) ............................ 6

*In re PGS Home Co. Ltd.*, 2019 WL 6311407 (N.D. Cal. Nov. 25, 2019) .............................. 18

*In re Subpoena Issued Pursuant To The DMCA To: 43SB.COM, LLC*, 2007 WL 4335441 (D. Idaho Dec. 7, 2007) ............................................................................................. 18

*In re Verizon Internet Servs., Inc.*, 257 F. Supp. 2d 244 (D.D.C. 2003) ................................. 8

*IO Grp. v. J.W.,* 2011 WL 237673 (N.D. Cal. Jan. 24, 2011) ............................................. 18

*Katz v. Google*, 802 F.3d 1178 (11th Cir. 2015) ............................................................ 12

*Kowalski v. Tesmer*, 543 U.S. 125 (2004) ...................................................................... 7

*Laird v. Tatum*, 408 U.S. 1 (1972) .............................................................................. 4

*Lance v. Coffman*, 549 U.S. 437 (2007) ........................................................................ 4

*Legare v. Cal. Dep't of Corr. and Rehab.*, 2020 WL 5257603 (E.D. Cal. 2020) ....................... 3

*Leibovitz v. Paramount Pictures, Corp.,* 137 F.3d 109 (2d Cir. 1998) ................................... 16

*Lenz v. Universal Music Corp.,* 815 F.3d 1145, 1151 (9th Cir. 2016) ................................. 10

*London-Sire Records, Inc. v. Doe 1*, 542 F.Supp.2d 153 (D. Mass. 2008) ............................. 9

*Lucasfilm Ltd. v. Ren Ventures*, 2018 WL 5310831 (N.D. Cal. June 29, 2018) ....................... 13

*M.C. v. Geiger*, 2018 WL 7256344 (M.D. Fla. Nov. 21, 2018) ............................................ 9

*Malibu Media, LLC v. Doe*, 2019 WL 7876473 (M.D. Ill. Jan. 2, 2019) ................................. 9

*Mavrix Photographs LLC v. Sandra Rose LLC*, 2016 WL 6246408 (C.D. Cal. Apr. 6, 2016) ...................................................................................................................... 16

*McCollum v. Cal. Dept. of Corr. and Rehab.*, 647 F.3d 870 (9th Cir. 2011) ...................... 3, 4, 6

*McGowan v. State of Md.,* 366 U.S. 420 (1961) ................................................................ 4

iii

1   *Milton H Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983 (9th Cir. 2012)............ 20

2   *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164 (9th Cir. 2012) .............................. 12, 13, 15, 16

3   *Music Grp. Macao Commercial Offshore Ltd. V. Does*, 82 F. Supp/ 3d 979 (N.D. Cal.
        2015) ........................................................................................................................ 18

4
    *Northland Family Planning Clinic, Inc. v. Ctr. for Bio-Ethical Reform*, 868 F. Supp. 2d
5       962 (C.D. Cal. 2012)................................................................................................ 12

6   *Otto v. Hearst Commc'ns, Inc.*, 345 F. Supp. 3d 412 (S.D.N.Y. 2018)................................ 15

7   *Paisley Park Enters., Inc. v. Ziani*, 2018 WL 6567828 (D. Minn. Dec. 13, 2018) ...................... 9

8   *Perry v. Schwarzenegger,* 591 F.3d 1147 (9th Cir. 2010) ...................................................... 18

9   *Powers v. Ohio*, 499 U.S. 400 (1991) ...................................................................................... 3

10  *Secretary of State of Md. v. Joseph H. Munson Co., Inc.*, 467 U.S. 947 (1984) ........................... 7

11  *Seltzer v. Green Day, Inc.,* 725 F.3d 1170 (9th Cir. 2013)....................................................... 16

12  *Shabazz v. Giurbino*, 2017 WL 2671082 (E.D. Cal. June 21, 2017)....................................... 5, 6

13  *Signature Mgmt. Team, LLC v. Automattic, Inc.*, 941 F. Supp. 2d 1145 (N.D. Cal. 2013).......... 18

14  *Sines v. Kessler,* 2018 WL 3730434 (N.D. Cal. Aug 6, 2018). .................................................. 7

15  *Singleton v. Wulff*, 428 U.S. 106 (1976) .......................................................................... 3, 5, 6

16  *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) ..................................... 10

17  *Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556 (S.D.N.Y. 2004).............. 9, 17, 18, 19

18  *Spokeo, Inc. v. Robins,* 578 U.S. 330 (2016) ..................................................................... 3, 4

19  *Strike 3 Holdings, LLC v. Doe*, 2021 WL 4391206, (E.D. Mich. Sep. 23, 2021) ........................ 9

20  *Strike 3 Holdings, LLC v. Doe*, 2021 WL 5911671 (E.D. Cal. Nov. 11, 2021) .......................... 9

21  *SurvJustice Inc. v. DeVos*, 2018 WL 4770741 (N.D. Cal. Oct. 1, 2018)...................................... 3

22  *TCA Tele. Corp. v. McCollum,* 839 F.3d 168 (2d Cir. 2016) ...................................................... 14

23  *UMG Recordings, Inc. v. Does 1-4*, 2006 WL 1343597 (N.D. Cal. Apr. 19, 2006) ................... 19

24  *Venice PI, LLC v. Does 1-9*, 2017 WL 3611853 (D.N.C. Aug. 18, 2017) .................................... 9

25  *VHT, Inc. v. Zillow Grp.*, 918 F.3d 723 (9th Cir. 2019) ............................................................ 16

26  *Viceroy Gold Corp. v. Aubry*, 75 F.3d 482 (9th Cir. 1996) ............................................... 3, 6

27  *Voigt v. Savell*, 70 F.3d 1552 (9th Cir. 1995) .............................................................................. 5

28  *Voltage Pictures, LLC v/. Does 1-22*, 2013 WL 4028587 (D. Colo. Aug. 7, 2013)...................... 9

**Glaser Weil**

iv

*Walt Disney Prod. v. Air Pirates*, 581 F.2d 751 (9th Cir. 1978) ...................................................... 8

*Warth v. Seldin*, 422 U.S. 490 (1975) ................................................................................................. 3

*Werner v. Red Blue Media, Inc.*, 2021 WL 3560588 (C.D. Cal. Aug. 9, 2021) ........................... 13

*Worldwide Church of God v. Phila. Church of God, Inc.*, 227 F.3d 1110 (9th Cir. 2000) ......... 12

**STATUTES**

17 U.S.C. § 107 .......................................................................................................................... 10, 11

17 U.S.C. § 411(a) ............................................................................................................................. 9

17 U.S.C. § 512(c) ............................................................................................................... 5, 8, 9, 10

17 U.S.C. § 512(c)(3)(A)(v) ........................................................................................................... 10

17 U.S.C. § 512(g) ............................................................................................................................. 5

17 U.S.C. § 512(h) .................................................................................................................... passim

17 U.S.C. § 512(h)(1) ..................................................................................................................... 10

17 U.S.C. § 512(h)(5) ................................................................................................................ 10, 11

17 U.S.C. § 512(h)(6) ..................................................................................................................... 11

**RULES**

Fed. R. Civ. P. 45(d)(2)(B) ........................................................................................................... 20

Fed. R. Civ. P. 45(d)(3) ................................................................................................................. 20

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Art. 1, § 8, cl. 8 ............................................................................................................ 1

v

2132054

## I.   __INTRODUCTION__

Judge Ryu was correct to deny Twitter's motion to quash ("MTQ") and grant Bayside's motion to compel ("MTC"). Article I of the Constitution requires Congress to protect copyrights by appropriate legislative action. U.S. Const. Art. 1, § 8, cl. 8. In 1998, confronting the growth of the Internet, Congress enacted the Digital Millennium Copyright Act "to facilitate cooperation among Internet service providers and copyright owners to detect and deal with copyright infringements that take place in the digital networked environment." *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004) (quoting S. Rep. 105–190, at 20 (1998)). Copyright infringers like @CallMeMoneyBags ("MoneyBags") may not hide behind anonymity to shield their infringements. And, social media companies like Twitter may not benefit from the liability exemptions of the DMCA and then refuse to comply with a DMCA subpoena by claiming that the infringer's use was fair. Granting Twitter's motion to quash would nullify Bayside's constitutional and statutory rights by effectively denying it any remedy for copyright infringement.

As required by Section 512(h) of the DMCA, Bayside seeks to identify an infringer for the limited purpose of enforcing its copyrights. In this pretrial phase, after Twitter received a Notice of Claimed Infringement from Bayside, then took down the infringing photographs, and received no "put-back" request from MoneyBags, Twitter's only obligation was to comply with the lawfully issued 512(h) subpoena. Twitter took it upon itself to file the motion to quash but has failed conclusively to carry its burden of persuasion to demonstrate why it shouldn't have to comply with the lawfully issued subpoena. But Twitter merely speculates as to why the Court should deny a copyright owner the right to identify an infringer in order to bring suit. Twitter hasn't even heard from MoneyBags asking for it to maintain its anonymity. Instead Twitter has assumed the role of the protector of the alleged infringer, while not accepting any liability for refusing to comply. The Ninth Circuit instructs courts to provide plaintiffs like Bayside with the ability to identify unknown defendants in protecting its copyrights. (Dkt. 9 at 4). *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

Twitter now seeks through this Motion to deny Bayside its right to identify and sue the

1

1    infringer even though (a) Twitter does not have standing to assert MoneyBags' rights; (b)

2    Bayside's 512(h) subpoena to Twitter (the "Subpoena") does not suppress free speech; (c)

3    Bayside has shown good cause to obtain MoneyBags' identity, including establishing a prima

4    facie case of infringement; (d) Section 512(h) does not authorize a court to consider fair use in

5    enforcing the Subpoena; (e) even if it did, Judge Ryu was correct that MoneyBags' use of the

6    infringing photographs was not fair use; (f) the test in *Highfields* does not apply to copyright

7    cases, and even if it does, Judge Ryu was correct that MoneyBags' right to remain anonymous

8    must give way to Bayside's right to use the judicial process to pursue a meritorious copyright

9    infringement claim; and (g) Twitter's motion to quash was untimely.

10        Importantly, Twitter presents no evidence to support any of its assertions, instead relying

11   on pure speculation as to MoneyBags and the copyright owner. Judge Ryu correctly attempted to

12   obtain such evidence directly from MoneyBags, allowing it an additional 30 days to specially

13   appear anonymously, but MoneyBags, according to Twitter, refused. Without MoneyBags' in-

14   camera appearance before Judge Ryu, Judge Ryu (and now this Court) could only have denied

15   Twitter's motion to quash. Bayside only seeks a remedy to vindicate its copyrights against the

16   alleged infringer. The process to identify the alleged infringer by subpoena is clearly delineated

17   in 512(h), and Bayside's subpoena does not infringe on MoneyBags' First Amendment rights.

18   Thus, Twitter's objections to Magistrate Judge Ryu's sound decision should be overruled.

19   **II.       RELEVANT PROCEDURAL BACKGROUND**

20        In addition to the facts set forth in the Court's decision (Dkt. 21), Bayside notes the

21   following facts relevant to Twitter's objections to the Judge's Ryu's decision (Dkt. 9; 17):

22   Bayside is a communications and strategic advisory firm that, among other things, acquires and

23   licenses photographs for commercial exploitation. MoneyBags never filed a counter-notice under

24   Section 512(g). After Twitter removed the Photographs, the text and the hashtags of the tweets

25   remained publicly accessible. Upon receipt of the Subpoena, Twitter sent notice and a copy of it

26   to MoneyBags. The Subpoena compliance date was December 18, 2020. Twitter failed to

27   comply, instead objecting on December 14, 2020. Twitter filed its MTQ without notice on

28   January 23, 2021, making it untimely. (Dkt. 9 at 2-4).

III.  **ARGUMENT**

A.  **Twitter Does Not Have Standing to Bring The Motion.**

Contrary to its assertions, Twitter does not have standing to assert its users' First Amendment rights. Indeed, Twitter admits that no authority supports its position (Mot. at 5) and cites no copyright case where the service provider had standing to assert its user's rights. "In the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." *Powers v. Ohio*, 499 U.S. 400, 410 (1991). "The purpose of this requirement is twofold: (1) to avoid adjudicating rights a third-party may not wish to assert; and (2) to ensure effective advocacy." *Viceroy Gold Corp. v. Aubry*, 75 F.3d 482, 488 (9th Cir. 1996) (citing *Singleton v. Wulff*, 428 U.S. 106, 113–14 (1976)). There are certain, limited exceptions to this rule. "We have recognized the right of litigants to bring actions on behalf of third parties, provided three important criteria are satisfied: The litigant must have suffered an 'injury in fact,' thus giving him or her a 'sufficiently concrete interest' in the outcome of the issue in dispute; the litigant must have a close relation to the third party; and there must exist some hindrance to the third party's ability to protect his or her own interests." *Powers,* 499 U.S. at 410-11 (internal citation omitted); *accord McCollum v. Cal. Dept. of Corr. and Rehab.*, 647 F.3d 870, 879 (9th Cir. 2011).[1] Failure of a litigant to demonstrate all of these factors precludes Twitter from acting on behalf of MoneyBags. *Legare v. Cal. Dep't of Corr. and Rehab.*, 2020 WL 5257603, at *4 (E.D. Cal. 2020); *SurvJustice Inc. v. DeVos*, 2018 WL 4770741, at *8 (N.D. Cal. Oct. 1, 2018). Twitter has proven none of these.

First, Twitter has failed to establish how *it* would be injured from the disclosure of MoneyBags' identity. To establish injury in fact, Twitter must show that *it* suffered an invasion of a "legally protected interest" that is "concrete and particularized," "actual or imminent, not conjectural or hypothetical," *Spokeo, Inc. v. Robins,* 578 U.S. 330, 339 (2016), "personal" to Twitter and "distinct and palpable," *Warth v. Seldin*, 422 U.S. 490, 501 (1975), and "specific

---

[1] Twitter does not allege an injury in fact sufficient to make out a case or controversy under Article III. *See Fleck and Assocs., Inc. v. Phoenix, City of, an Ariz. Mun. Corp.*, 471 F.3d 1100, 1105 (9th Cir. 2006) (plaintiff's attempt "to champion the liberty interests of its customers" insufficient to establish a cognizable personal injury).

1    [and] objective," *Laird v. Tatum*, 408 U.S. 1, 14 (1972); *see also McGowan v. State of Md.,* 366

2    U.S. 420, 429 (1961) (declining standing to third parties who alleged "only economic injury to

3    themselves" and did not allege any infringement to their own First Amendment rights: "the

4    general rule is that a litigant may only assert his own constitutional rights or immunities"

5    (internal citation omitted)). "For an injury to be 'particularized,' it 'must affect the plaintiff in a

6    personal and individual way.'" *Spokeo*, 578 U.S. at 339 (internal citation omitted). "A 'concrete'

7    injury must be 'de facto'; that is, it must actually exist." *Id.* To the extent that Twitter claims that

8    it is injured by MoneyBags' inability to post infringing material, that does not constitute an

9    injury in fact because it "no more directly and tangibly benefits [it] than it does the public at

10   large." *Dubin v. Sup. Ct. of Haw.*, 2021 WL 4496946, at *10 (D. Haw. Sep. 30, 2021) (quoting

11   *Lance v. Coffman*, 549 U.S. 437, 439 (2007)).

12          Twitter makes no showing of an injury in fact, nor could it, considering that Twitter's

13   own privacy policy and terms of service advise all users not to post unauthorized copyrighted

14   works and that Twitter may disclose their personal data to comply "with a law, regulation, legal

15   process or governmental request." (https://twitter.com/en/privacy § 3.3; https://twitter.com/en/tos

16   §§ 3-4). Twitter therefore cannot argue that it suffers some injury by complying with the law

17   (Section 512(h) of the Copyright Act) in accordance with its disclosed policies, especially where

18   any user concerned that his identity might be disclosed by Twitter would not use the platform in

19   the first place. *See McCollum*, 647 F.3d at 879 (denying standing where McCollum asserted not

20   his own rights but the First Amendment rights of others); *Coal. Of Clergy Lawyers and*

21   *Professors v. Bush*, 310 F.3d 1153, 1163 (9th Cir. 2002) (denying standing where "the Coalition

22   makes no allegation of personal injury to its members"). Twitter has also presented no evidence

23   that MoneyBags is a U.S. citizen or otherwise entitled to protection under the First Amendment,

24   which is fatal to Twitter's third party standing. *Agency for Int'l Dev. v. Alliance For Open*

25   *Society Int'l, Inc.*, 140 S.Ct. 2082, 2086-87 (2020); *Drummond Co., Inc. v. Collingsworth*, 2013

26   WL 6074157, *16 (N.D. Cal. Nov. 18, 2013).

27          Second, Twitter has not shown that it has a "close relationship" with MoneyBags. That

28   relationship must be "special, on-going" and not "intermittent." *Voigt v. Savell*, 70 F.3d 1552,

4

1565 (9th Cir. 1995). Examples of such close relationships are (1) a physician and her patients where the patients faced criminal charges for receiving the physician's care; (2) the NAACP and its members' rights not to reveal their affiliation with the Association; (3) children's right to assert the equal protection rights of their mothers. *See id.; see also Shabazz v. Giurbino*, 2017 WL 2671082, at *6 (E.D. Cal. June 21, 2017) (denying standing where no close association proved—"No matter how friendly and sympathetic the litigant is to the cause of the individuals he seeks to represent, a plaintiff without a significant relationship is less likely to know the best interests of the individual."). On the contrary, Twitter and MoneyBags' interests are not aligned at all—MoneyBags faces a copyright infringement lawsuit related to the Photographs, while Twitter cannot because of the Section 512 safe harbor. Additionally, MoneyBags agreed to Twitter's terms of service and privacy policy, which specifically alerted MoneyBags that it was not permitted to post unauthorized copyrighted works and that Twitter would disclose MoneyBags' identity in compliance with any law. (https://twitter.com/en/privacy § 3.3; https://twitter.com/en/tos §§ 3-4).

Third, Twitter has not shown that MoneyBags is hindered from asserting its own rights in this proceeding. Such hinderance must be a "genuine obstacle" preventing MoneyBags from asserting its own rights. *Singleton*, 428 U.S. at 116. While Twitter asserts a parade of horribles of litigation, including expense, Twitter fails to establish that any of those obstacles is genuine and actually applies to MoneyBags, including whether MoneyBags could afford to litigate (or why, if Twitter was so concerned, it did not offer to pay MoneyBags' litigation expenses). The facts are that MoneyBags has had numerous opportunities to participate in this matter, including anonymously, but declined to do so in each instance: (1) MoneyBags could have filed a counter-notice to put the Photographs back up on Twitter (Section 512(g)) in response to Bayside's 512(c) takedown notice, but did not; (2) Twitter sent notice and a copy of Bayside's 512(h) subpoena to MoneyBags a month before filing its MTQ (Dkt. 5-2 at 3), but MoneyBags did not appear; and (3) Judge Ryu ordered Twitter to serve a copy of her November 4, 2021 order, advising MoneyBags that it could specially appear anonymously to provide the Court evidence regarding fair use. (Dkt. 19 at 3-4). Twitter did so, but MoneyBags did not appear. *See*

5

1    *McCollum*, 647 F.3d at 879 (third standing requirement not met where rights holders were able

2    to assert their own rights). "A simple lack of motivation does not constitute a 'genuine obstacle'

3    to asserting an interest"—and MoneyBags' decision to not appear plainly demonstrates only that.

4    *Viceroy Gold*, 75 F.3d at 489 (plaintiff denied standing to assert rights of its employees); *see also*

5    *Alhawarin v. McCament,* 2018 WL 6265081, *7 (C.D. Cal Mar. 29, 2018) ("Plaintiff fails to

6    demonstrate that the Third Parties are hindered in their ability to protect their own interests. …

7    Plaintiff argues that it is 'unlikely' that the Third Parties would seek to vindicate their rights due

8    to 'high costs and low benefits.' [] [I]t is conclusory as worded [and] is also different in kind

9    than the type of impediments generally recognized as giving rise to third party standing, such as

10   death."); *Shabazz*, 2017 WL 2671082, at *6 ("In order to bring a claim for a third party, Plaintiff

11   must show that the individual is unable to litigate his own claims due to mental incapacity, lack

12   of court access, or other similar disability …."); *Green Tree Servicing, LLC v. Collegium Fund*

13   *LLC*, 2016 WL 5429652, at *4 (D. Nev. Sep. 27, 2016) ("[I]t may be that in fact the holders of

14   those rights either do not wish to assert them, or will be able to enjoy them regardless of whether

15   the in-court litigant is successful or not" and "third parties themselves usually will be the best

16   proponents of their own rights." (quoting *Singleton*, 428 U.S. at 113-14)).

17        Twitter misleadingly cites *In re Grand Jury Subpoena, No. 16-03-217* in arguing that it

18   has the right to defend the First Amendment rights of its users, but omits the critical language in

19   the court's opinion that proves it position wrong: "The government does not contest that

20   Glassdoor has third-party standing to assert the rights of its users, but we … are satisfied here

21   because *Glassdoor has established* an injury in fact of its own, it has a sufficiently close

22   relationship to its users, and its users would face 'genuine obstacles' to the assertion of their own

23   putative right to anonymity." 875 F.3d 1179, 1183 n.2 (9th Cir. 2017) (emphasis added).

24   Notwithstanding that the facts were significantly different (the government sought to unmask

25   anonymous speakers in order to identify potential witnesses) and Glassdoor's motion to quash

26   was ultimately denied anyway, Twitter has failed to establish any of the three elements necessary

27   for it to have third party standing.

28        Indeed, this court has denied standing to a litigant in a similar situation. In *Sines v.*

6

*Kessler*, an anonymous user moved to quash a subpoena served on the social media platform Discord, arguing she had standing to represent not only herself but also forty-eight other Discord users because the subpoena violated First Amendment rights to anonymous speech and association. 2018 WL 3730434, at *4 (N.D. Cal. Aug 6, 2018). The user believed that disclosure of her identity "can and will result in serious harm to [her] personal and professional [life]." *Id.* While the court allowed the user to assert her own First Amendment rights in opposition to the subpoena, the court denied her standing to assert the rights of others. "Here, Doe does not argue that she has a close relationship with the other Discord users, nor does she claim that they are unable to protect their own interests." *Id.* at *10. The user argued that standing should be relaxed because of the First Amendment issues at stake and cited an out-of-circuit case that relaxed standing requirements in the context of the First Amendment when church members moved to challenge city officials' threats to prosecute them. This court rejected that argument: "Standing to claim injury from threats of prosecution under a criminal statute is not analogous to standing to move to quash a subpoena." *Id.* (citing *Chevron Corp. v. Donziger*, 2013 WL 4536808, at *5 (N.D. Cal. Aug. 22, 2013) ("But, a facial challenge to the chilling effect of a statute brought by a third party is not analogous to the Doe movants' motion to quash Chevron's subpoenas.")).[2] Additionally, this court has found that there is no recognized privacy interest in IP logs or account information of users of service providers. *Chevron*, 2013 WL 4536808, at *9 ("[T]he Doe movants accepted the terms of Google's and Yahoo!'s privacy policies, which indicated that the ISPs collect identifying information and log IP addresses and share information in response to a subpoena, court order, or legal process.").

### B.   The Subpoena Does Not Suppress Free Speech.

Twitter's argument that the Subpoena is designed to suppress speech is without merit.

---

[2] Amici cite *Eisentstadt v. Baird* (distributors of contraceptives had standing to litigate the rights of the potential recipients) for the proposition that the Supreme Court recognizes third-party standing under the First Amendment. (Dkt. 29-1 at 15). That statement is not accurate. While the Supreme Court has allowed third-party standing to challenge a *statute* that allegedly chills free speech, *Secretary of State of Md. v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 956 (1984), the Court made clear that beyond specific examples (none applicable here), it has "not looked favorably upon third-party standing." *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004).

2132054

The First Amendment does not afford protection for copyright infringement. *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 556 (1985). Nor does the First Amendment protect the identity of a copyright infringer. *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010) ("[T]o the extent that anonymity is used to mask copyright infringement or to facilitate such infringement by other persons, it is unprotected by the First Amendment."). Thus, a Section 512(h) subpoena "places no limits on protected activity; it governs unprotected copyright piracy, and § 512(h) reaches only the identity of the subscriber (already known to the service provider), not any underlying expression." *In re Verizon Internet Servs., Inc.*, 257 F. Supp. 2d 244, 262 (D.D.C. 2003), *rev'd on other grounds*, 351 F.3d 1229 (D.C. Cir. 2003).

In addition to fair use, "copyright's idea/expression dichotomy strikes a definitional balance between the First Amendment and the Copyright Act by permitting free communication of facts while still protecting an author's expression." *Harper*, 417 U.S. at 556 (internal citation omitted). MoneyBags' tweets consisted of both (a) text critical of individuals involved in private equity and (b) the copyrighted Photographs. After Bayside's 512(c) takedown, MoneyBags' critical text remained in the tweets. And since MoneyBags could have expressed its criticisms without copying protected expression, it has no free speech right to use copyrighted photographs to convey its message. *Walt Disney Prod. v. Air Pirates*, 581 F.2d 751, 759 (9th Cir. 1978) (dismissing First Amendment challenge because defendants could have expressed their ideas without copying plaintiff's protected expression). This is confirmed by the fact that after Twitter removed the Photographs from the Tweets, MoneyBags' criticism remained. Indeed, Twitter offers no justification as to why MoneyBags needed to copy *these Photographs* in order to express its criticisms of individuals in private equity.

Additionally, Twitter's argument that "critical speech will be chilled" if the user is unmasked falls flat. Indeed, Money Bags continued to actively tweet and the account continued to gain followers between March 5, 2021 (the last docket entry before Judge Ryu's ruling) and October 11, 2021, well after the 512(h) subpoena process was underway. (Declaration of Robert Allen ["Allen Decl."] ¶ 3, Ex. A).

C.      **Bayside Has Shown Good Cause to Obtain the Subpoenaed Information.**

Copyright owners have "a constitutional right to file a lawsuit and engage in discovery to determine whether there was infringement." *Benedict v. Hewlett-Packard Co.*, 2014 WL 234218, at *10 n.4 (N.D. Cal. Jan. 21, 2014) (internal citation omitted). In order to enable an owner to identify and pursue an alleged infringer, courts in every circuit use the *Sony* factors to determine whether there is good cause to allow the disclosure of an anonymous copyright infringer's identity, not only for 512(h) subpoenas, but also for requests for early discovery in a Doe complaint. *Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 567 (S.D.N.Y. 2004).[3] The Ninth Circuit has also cited *Sony* favorably in determining when to identify an anonymous infringer. *In re Anonymous Online Speakers*, 661 F.3d 1168, 1175 (9th Cir. 2011). Where the *Sony* factors weigh in favor of the plaintiff, courts order the disclosure of the alleged infringer's identity. (*See* n.3 above).

Twitter flip-flops in its speculation of Bayside's intentions, first arguing, without evidence, that "Bayside seeks to file a copyright infringement case for the sole purpose of silencing" critical commentary (Dkt. 13 at 8), and now arguing, without any evidence, that Bayside has no intention of filing an infringement claim at all, the recognition of which Twitter claims is "critical" to its MTQ. (Mot. at 1-2; 10). Twitter ignores that (a) Bayside registered the Photographs with the Copyright Office, which is a prerequisite to filing suit, 17 U.S.C. § 411(a), but which is not required to send a 512(c) takedown or obtain a 512(h) subpoena; and (b) Section 512(h) has built-in safeguards and disincentives to protect against baseless or abusive subpoenas, thereby preventing any intrusion on MoneyBags' First Amendment rights (Dkt. 9 at 6). Twitter

_____

[3] *See, e.g.:* 1st Cir., *London-Sire Records, Inc. v. Doe 1*, 542 F.Supp.2d 153, 164 (D. Mass. 2008); 2d Cir., *Arista*, 604 F.3d at 119; 3d Cir., *First Senior Fin. Grp. LLC v. Watchdog*, 2012 WL 12903829, *1 n.1 (E.D. Penn. Nov. 8, 2012); 4th Cir., *Venice PI, LLC v. Does 1-9*, 2017 WL 3611853, *2 (D.N.C. Aug. 18, 2017); 5th Cir., *Ensor v. Does 1-15*, 2019 WL 4648486, *2-*3 (W.D. Tex. Sep. 23, 2019); 6th Cir., *Strike 3 Holdings, LLC v. Doe*, 2021 WL 4391206, *1 (E.D. Mich. Sep. 23, 2021); 7th Cir., *Malibu Media, LLC v. Doe*, 2019 WL 7876473, *1 (M.D. Ill. Jan. 2, 2019); 8th Cir., *Paisley Park Enters., Inc. v. Ziani*, 2018 WL 6567828, *3 (D. Minn. Dec. 13, 2018); 9th Cir., *Strike 3 Holdings, LLC v. Doe*, 2021 WL 5911671, *1-*2 (E.D. Cal. Nov. 11, 2021); 10th Cir., *Voltage Pictures, LLC v/. Does 1-22*, 2013 WL 4028587, *3-*4 (D. Colo. Aug. 7, 2013); 11th Cir., *M.C. v. Geiger*, 2018 WL 7256344, *1 (M.D. Fla. Nov. 21, 2018); D.C. Cir., *Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332, 348 (D.D.C. 2011).

2132054

Glaser Weil

also presents no knowledge or evidence about MoneyBags, its motives, justification for using the Photographs, how MoneyBags' use of the Photographs would affect potential markets (including licensing markets) for the Photographs, or what, if any, burden MoneyBags would face if its identity as an alleged copyright infringer was revealed.

### D. Whether an Alleged Infringer's Use of a Work Constitutes Fair Use Is Irrelevant to a 512(h) Subpoena and Cannot Be Considered By the Court

Section 512(h) makes irrelevant whether an alleged infringer's use of a work constitutes fair use and precludes a court from considering fair use in enforcing a 512(h) subpoena. First, the DMCA allows a copyright owner to obtain a subpoena to the service provider "for identification of an *alleged infringer* … ." 17 U.S.C. § 512(h)(1) (emphasis added). The sole purpose of a fair use analysis is to determine whether an alleged infringer, in his use of a copyrighted work, is actually not an infringer under the law. "[A]nyone who … makes a fair use of the work is not an infringer of the copyright with respect to such use." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 433 (1984). But 512(h) does not limit the service provider to identify only actual infringers. It requires the service provider to identify an *alleged infringer*, which a copyright owner has already identified in both its 512(c) takedown notice and in its 512(h) subpoena request.

Second, upon receipt of the subpoena, "the service provider shall expeditiously disclose to the copyright owner … the information required by the subpoena, *notwithstanding any other provision of law* … ." 17 U.S.C. § 512(h)(5) (emphasis added). The Ninth Circuit in *Lenz v. Universal Music Corp.* considered an issue of first impression of whether Section 512(c)(3)(A)(v) "requires copyright holders to consider whether the potentially infringing material is a fair use of a copyright under 17 U.S.C. § 107 before issuing a takedown notification." 815 F.3d 1145, 1151 (9th Cir. 2016). Applying the "[c]anons of statutory construction [] that if the language of a statute is clear, we look no further than that language in determining the statue's meaning," the court held that the phrase "by the law" in Section 512(c) "unambiguously contemplates fair use." *Id.* The court then thoroughly analyzed Section 107 to support its conclusion. *Id.* at 1152–53. Consequently, the use in 512(h)(5) of the phrase

1  "notwithstanding any other provision of law" can only mean that fair use under Section 107 is a

2  provision of law to be disregarded when considering the enforcement of a 512(h) subpoena. This

3  is further supported by Section 512(h)(6), which provides that the remedies for noncompliance

4  with a 512(h) subpoena are governed "to the greatest extent practicable" by the Federal Rules of

5  Civil Procedure governing the enforcement of a subpoena duces tecum "*[u]nless otherwise*

6  *provided by this section* … ." 17 U.S.C. § 512(h)(6) (emphasis added). Since Section 512(h)(5)

7  requires a service provider to provide information about the alleged infringer, regardless of fair

8  use, enforcing a 512(h) subpoena under 512(h)(6) through a motion to quash or other remedy

9  under the Federal Rules must similarly disregard fair use.

10      **E.      Even if the Court Considers Fair Use, Judge Ryu Was Correct that**
              **MoneyBags' Use of the Photographs Was Not Fair Use**

11          As discussed at length in Bayside's Opposition to the MTQ (Dkt. 9 at 14–22) and in its

12  Reply to the MTC (Dkt. 17 at 2–4), MoneyBags' use of the Photographs was not fair use.[4]

13          **Purpose and Character of the Use.** Twitter argues, contrary to the facts and the law,

14  that the "Tweets, standing alone, are plainly non-commercial uses of candid photographs,

15  transformed by the accompaniment of ridicule and mockery." (Mot. at 7). First, Twitter

16  continues to refer to the Photographs as "candid," even though they are not.[5] Regardless of

17  whether a photograph is "candid," "photographs are 'generally viewed as creative aesthetic

18  expressions of a scene or image' and have long received thick copyright protection[,] … even

19  though photographs capture images of reality." *Andy Warhol Found. for Visual Arts, Inc. v.*

20  *Goldsmith*, 11 F.4th 26, 53 (2d Cir. 2021) (quoting *Brammer v. Violent Hues Prods., LLC*, 922

21

22

23  [4] While Twitter concedes that "the burden of proving fair use is always on the putative
    infringer," Twitter objects that it should not have those burdens in the MTQ because (1) this is
24  not a copyright action and (2) the alleged infringer is not a party. Both arguments are
    disingenuous. On behalf of MoneyBags, Twitter is the proponent of the fair use defense in its
25  MTQ, and "the Supreme Court and our circuit have unequivocally placed the burden of proof on
    the proponent of the affirmative defense of fair use." *Dr. Seuss Enters., L.P. v. ComicMix LLC*,
26  983 F.3d 443, 459 (9th Cir. 2020).

    [5] *See* Dkt. 9 at 20. Twitter's Reply falsely claims that "Bayside concedes that candid photographs
27  do not warrant copyright protection such that their use is generally considered fair." (Dkt. 13 at
    4). On the contrary, Bayside provided definitional evidence that the Photographs were not candid
28  and cited many cases to support that all photographs are "sufficiently creative to make the
    second fair use factor weigh in favor of photographer-plaintiffs." (Dkt. 9 at 20).

11

1  F.3d 255, 267 (4th Cir. 2019) (in turn quoting *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164,

2  1177 (9th Cir. 2012))).

3        Second, Twitter continues to claim that the use of photographs on a commercial, social

4  media platform that is accessible to billions of people on the Internet is "plainly non-

5  commercial" simply because there is "no indication" that MoneyBags "is getting paid." (Dkt. 5

6  at 11). But it is the infringer's burden, not Bayside's, to prove MoneyBags' compensation or lack

7  thereof, and Twitter (on behalf of MoneyBags) concedes that it does not know, *id.*, thereby

8  failing to meet its burden. More importantly, Twitter fails to address the correct legal standard:

9  "whether the user stands to profit from the exploitation of the copyrighted material without

10  paying the customary price." *Harper,* 471 U.S. at 562. Twitter's sole focus on monetary gain

11  missed the mark on the issue of commerciality and thus has failed to meet its burden. *Worldwide*

12  *Church of God v. Phila. Church of God, Inc.*, 227 F.3d 1110, 1117–18 (9th Cir. 2000). Indeed,

13  "[g]enerating traffic to one's website or conveying one's message effectively using copyrighted

14  material is within the type of 'profit' contemplated by *Worldwide Church*." *Northland Family*

15  *Planning Clinic, Inc. v. Ctr. for Bio-Ethical Reform*, 868 F. Supp. 2d 962, 979 (C.D. Cal. 2012).

16        Third, Twitter falsely claims that the photographs were "transformed by the

17  accompaniment of ridicule and mockery." But Twitter does not dispute that none of the tweets

18  comment on or criticize the Photographs themselves (or the owner, author, or subject of the

19  Photographs). Absent alterations, criticism of, or commentary *on the Photographs themselves*,

20  their use cannot be transformative. *Monge*, 688 F.3d at 1175 ("Campbell makes clear that the

21  'heart' of a claim for transformative use is 'the use of some elements of a prior author's

22  composition to create a new one *that, at least in part, comments on that author's works*.'"

23  (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 580 (1994) (emphasis added)).[6] Nor

24  has Twitter addressed that the minimal text in the tweets are insufficient, even if they were

25  critical of the Photographs themselves, to constitute a transformative use. *Elvis Presley Enters. v.*

26

27  [6] The one case Twitter cites, *Katz v. Google*, 802 F.3d 1178 (11th Cir. 2015), is inapposite, not
   only because it is inconsistent with Ninth Circuit precedent but also because the *Katz* blogger
28  criticized Katz, *who was the subject in the photographs and their owner*. Additionally, the *Katz*
   photographs were "candid," benefiting from "fortuitous timing," unlike the Photographs.

Glaser Weil

1   *Passport Video*, 349 F.3d 622, 628-29 (9th Cir. 2003) ("There must be real, substantial

2   condensation of the materials … and not merely the facile use of scissors; or extracts of the

3   essential parts, constituting the chief value of the original work." (internal citations omitted));

4   *accord Monge*, 688 F.3d at 1174; *Lucasfilm Ltd. v. Ren Ventures*, 2018 WL 5310831, at *4 (N.D.

5   Cal. June 29, 2018); *Werner v. Red Blue Media, Inc.*, 2021 WL 3560588, at *4 (C.D. Cal. Aug.

6   9, 2021) ("Stealing a copyrighted photograph to illustrate a news article, without adding new

7   understanding or meaning to the work, does not transform its purpose ….").

8       Additionally, Twitter wrongly conflates when the use of a copyrighted work may be

9   considered transformative. In *Campbell*, the Supreme Court held that *parodying* a work can be

10  transformative. 510 U.S. at 581. Twitter quotes *Campbell* to support its argument that the

11  Photographs "were 'copied' here for purpose of discussion … . *See id.* at 583 (holding that

12  'whether [] *parody* is in good taste or bad taste does not and should not matter to fair use' and

13  instead focusing on whether the alleged infringer 'reasonably could be perceived as *commenting*

14  *on the original or criticizing it, it [sic] some degree.*')" (Mot. at 8) (emphasis added). Thus,

15  MoneyBags needed to comment on or criticize the Photographs in order for the use to be fair,

16  which MoneyBags did not do. Indeed, Twitter does not argue that any of the Tweets were

17  parodies of the Photographs, instead claiming that MoneyBags posted the Photographs "for the

18  purpose of criticizing or satirizing Sheth." (Dkt. 5 at 12).

19      The distinction between parody and satire is important. "The [Supreme] Court pointed

20  out the difference between parody (in which the copyrighted work is the target) and satire (in

21  which the copyrighted work is merely a vehicle to poke fun at another target): 'Parody needs to

22  mimic an original to make its point, and so has some claim to use the creation of its victim's (or

23  collective victims') imagination, whereas satire can stand on its own two feet and so requires

24  justification for the very act of borrowing.'" *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*,

25  109 F.3d 1394, 1400 (9th Cir. 1997) (quoting *Campbell*, 510 U.S. at 580–81); *see also Campbell*,

26  510 U.S. at 597 (Kennedy, J., concurring) ("[P]arody may qualify as fair use only if it draws

27  upon the original composition to make humorous or ironic commentary about that same

28  composition."). Twitter provides no justification as to why MoneyBags needed *these particular*

13

1  *Photographs* and not any others readily available for license in the marketplace in order to

2  express its point of view.

3       Unlike parody, there is no transformation when an infringer uses a copyrighted work in

4  satire. *Penguin Books,* 109 F.3d at 1401 ("Although *The Cat NOT in the Hat!* does broadly

5  mimic Dr. Seuss' characteristic style, it does not hold *his style* up to ridicule. The stanzas have

6  'no critical bearing on the substance or style of' *The Cat in the Hat*" merely using elements and

7  the title "'to get attention' or maybe even 'to avoid the drudgery in working up something

8  fresh.'") (quoting *Campbell*, 510 U.S. at 578)). The Ninth Circuit recently reaffirmed this in *Dr.*

9  *Seuss Enters., L.P. v. ComicMix LLC*, finding that the infringing work was not a parody and

10  lacked "the benchmarks of transformative use": "(1) 'further purpose or different character' in

11  the defendant's work, i.e., 'the creation of new information, new aesthetic, new insights and

12  understanding'; (2) 'new expression, meaning, or message' in the original work, i.e., the addition

13  of 'value to the original'; and (3) the use of quoted matter as 'raw material,' instead of

14  repackaging it and 'merely supersed[ing] the objects of the original creation.'" 983 F.3d at 453.

15       Two recent cases involving photographs confirm MoneyBags' use was not

16  transformative. In *Goldsmith*, the Second Circuit rejected that Warhol's adding new expression

17  to Goldsmith's photograph made it transformative. 11 F.4th at 38–39. Indeed, "where a

18  secondary work does not obviously comment on or relate back to the original or use the original

19  for a purpose other than that for which it was created, the bare assertion of a 'higher or different

20  artistic use,' is insufficient to render a work transformative." *Id.* at 41 (internal citation omitted).

21  The court found that both Warhol's portrait and Goldsmith's photograph had the identical

22  purpose and function "not merely in the broad sense that they are created as works of visual art,

23  but also in the narrow but essential sense that they are portraits of the same person." *Id.* at 42.

24  Additionally, the court found that Warhol's appropriation was not reasonable. "While Warhol

25  presumably required a photograph of Prince to create the Prince Series, AWF proffers no reason

26  why he required *Goldsmith's* photograph." *Id.* at 47; *see also TCA Tele. Corp. v. McCollum,* 839

27  F.3d 168, 181–82, 185 (2d Cir. 2016) (wholesale borrowing of copyrighted comedy routine not

28  reasonable where "defendants offer[ed] no persuasive justification" for its use). Twitter's lack of

Glaser Weil

1  any justification for MoneyBags' copying *these particular Photographs* similarly makes

2  MoneyBags' copying unreasonable.

3      Similarly, in *Brammer* the Fourth Circuit rejected that the use of a substantively unaltered

4  photograph in a new setting to convey new information was transformative. The defendant used

5  the photograph "expressly for its content"—to depict the subject of the photograph while

6  providing information to film festival attendees. The court reasoned that "such a use does not

7  necessarily create a new function or meaning that expands human thought; if this were so,

8  virtually all illustrative uses of photography would qualify as transformative." 922 F.3d at 264.

9  The court also considered the fact that defendant's "ability to accomplish its purpose of

10 communicating information about area tourist attractions would not be hindered if it had to

11 comply with Brammer's copyright." *Id.*

12     For all of the above reasons, Twitter has failed to meet its burden of demonstrating that

13 MoneyBags' unaltered use of the Photographs was transformative or that the use was not

14 commercial. Accordingly, the first factor weighs heavily in favor of Bayside.

15     **Nature of the Work**. Although all of the fair use factors must be explored and weighed

16 together, *Campbell*, 510 U.S. at 578, neither Judge Ryu nor Twitter in the Motion address this

17 factor. Twitter argues that the Photographs are "candid," even though they are not and, even if

18 they were, there is no legal basis to distinguish candid from non-candid photographs in a fair use

19 analysis. *Monge*, 688 F.3d at 1177; *Otto v. Hearst Commc'ns, Inc.*, 345 F. Supp. 3d 412, 430

20 (S.D.N.Y. 2018) ("Although photographs are often 'factual or informational in nature,' the art of

21 photography has generally been deemed sufficiently creative to make the second fair use factor

22 weigh in favor of photographer-plaintiffs." (citation omitted)). Accordingly, Twitter has failed to

23 meet its burden in demonstrating that this fair use factor does not favor Bayside.

24     **Amount and Substantiality of the Portion Copied.** While Judge Ryu acknowledged

25 that this factor "asks whether 'the quantity and value of the materials used … are reasonable in

26 relation to the purpose of the copying,'" (Dkt. 21 at 8), the Court did not address the fact that

27 MoneyBags used six Photographs, in full, to make the same point. This factor weighs against an

28 alleged infringer when he copies "more than is necessary for his intended use." *Seltzer v. Green*

15

2132054

*Day, Inc.,* 725 F.3d 1170, 1178 (9th Cir. 2013). Further, "copying an entire work militates against a finding of fair use," *Worldwide Church of God*, 227 F.3d at 1118, and Twitter provides no justification for MoneyBags' "full copy display" of the Photographs. *See VHT, Inc. v. Zillow Grp.*, 918 F.3d 723, 744 (9th Cir. 2019) (finding third factor weighed against fair use where infringer copied the entirety of the owner's photographs without justification). Additionally, courts have found against fair use when an alleged infringer uses multiple photographs when one would have sufficed to convey his message. *Monge*, 688 F.3d at 1179; *Mavrix Photographs LLC v. Sandra Rose LLC*, 2016 WL 6246408, at *3 (C.D. Cal. Apr. 6, 2016). Accordingly, Twitter has failed to meet its burden in demonstrating that this fair use factor does not favor Bayside.

**Effect on the Potential Market.** Judge Ryu was correct that the absence of any evidence from MoneyBags "about the relevant market or the lack of market harm from the publication of Bayside's photos precludes a finding of fair use here." (Dkt. 21 at 8-9). Twitter offered no evidence to support its naked assertion that the Photographs have no value and that there is no marketplace for them. *Campbell*, 510 U.S. at 594 ("a silent record on an important factor bearing on fair use disentitled the proponent of the defense"); *Monge*, 688 F.3d at 1181.

Citing *Leibovitz v. Paramount Pictures, Corp.*, Twitter argues, that Bayside's "failure to introduce any evidence or even a theory of market impact results in the fourth factor being neutral in the court's fair use analysis." (Mot. at 9). First, that is not the law in the Ninth Circuit. *Penguin Books,* 109 F.3d at 1403 ("Since fair use is an affirmative defense, Penguin and Dove must bring forward favorable evidence about relevant markets. Given their failure to submit evidence on this point, instead confining 'themselves to uncontroverted submissions that there was no likely effect on the market for the original,' we conclude that … a silent record on an important factor bearing on fair use disentitle[s] the proponent of the defense"). Second, Bayside did identify a market for the Photographs. "Bayside is a communications and strategic advisory firm that, among other things, advises and partners with creators, artists, and entrepreneurs to protect, promote, and champion creative expression. Bayside owns a catalog of photographs (the Photographs are only a small part of the catalog) to exploit for those purposes." (Dkt. 17 at 2). Finally, this is also not the law in the Second Circuit. *Goldsmith*, 11 F.4th at 49 (affirming that

Glaser Weil

1   the burden of proof of this factor resides on the secondary user—"we have never held that the

2   rightsholder bears the burden of showing actual market harm. Nor would we so hold. Fair use is

3   an affirmative defense; as such, the ultimate burden of proving that the secondary use does not

4   compete in the relevant market is appropriately borne by the party asserting the defense: the

5   secondary user."). Accordingly, as Judge Ryu confirmed, Twitter failed to meet its burden in

6   demonstrating that this fair use factor does not favor Bayside.

7          **Balancing the Factors.** Since Twitter has failed to show that any of the factors favor fair

8   use, Judge Ryu was correct in concluding that Twitter had failed to establish that MoneyBags'

9   use of the Photographs was fair and properly denied Twitter's MTQ and granted Baysides MTC.

10         **F.      _Highfields_ Does Not Apply, and Even If It Does, The Court Correctly
                     Applied the _Highfields_ Balancing Test.**

11         Twitter argues that, in addition to a fair use analysis, this Court must apply a "balancing

12  of harms test" supposedly established in _Highfields Capital Management, L.P. v. Doe_, 385 F.

13  Supp. 2d 969, 970 (N.D. Cal. 2005). (Mot. at 9). Twitter is wrong for two reasons. First, as

14  discussed in Bayside's opposition to Twitter's MTQ, the _Highfields_ district court decision did

15  not adopt a separate "balancing of harms" test. Instead, the district court solely focused on

16  whether plaintiff made a _prima facia_ showing that subpoenaed party engaged in wrongful

17  conduct. _Id._; (Dkt. 9 at 11-12). While Magistrate Judge Brazil's Report and Recommendation

18  separately balanced harms, the Report failed to recognize that the fourth factor of the applicable

19  _Seescandy_ test did balance respective harms. _See Columbia Ins. Co. v. Seescandy.com_, 185

20  F.R.D. 573, 578 (N.D. Cal. 1999).

21         Second, as stated above, Bayside has satisfied each of the _Sony Music_ factors, as well as

22  the _prima facie_ wrongful conduct showing under _Highfields._[7] Twitter does not contend

23  otherwise. Accordingly, there is no basis for the Court to apply a separate balancing of harms test

24

25

26  [7] Twitter's argument that "fair use would preclude Bayside's ability to establish a _prima facie_
    case of infringement" under _Sony_ (Dkt. 13 at 2) is wrong. _Highfields_ did not involve copyright

27  infringement. And there are only two elements to a _prima facie_ copyright infringement claim: (1)
    ownership and (2) copying. _UMG Recordings, Inc. v. Augusto_, 628 F.3d 1175, 1178 (9th Cir.

28  2011). Twitter disputes neither. Fair use is not an element; it is a _defense_ to a copyright
    infringement claim.

1  involving a 512(h) subpoena. In fact, most district courts in the Ninth Circuit do not apply

2  *Highfields* in cases involving copyright infringement. *See, e.g., In re DMCA Subpoena to Reddit,*

3  *Inc.,* 441 F. Supp. 3d 875, 882 (N.D. Cal. 2020); *BWP Media USA, Inc. v. Crowdgather, Inc*.,

4  2014 WL 12601054, *2 (C.D. Cal. July 28, 2014); *IO Grp. v. J.W.,* 2011 WL 237673, *2 (N.D.

5  Cal. Jan. 24, 2011); *In re Subpoena Issued Pursuant To The DMCA To: 43SB.COM, LLC*, 2007

6  WL 4335441, *4 (D. Idaho Dec. 7, 2007). Courts that have considered this balancing test have

7  concluded that the copyright owner's interest in pursuing litigation outweigh the alleged

8  infringer's right to remain anonymous. *See Baugher v. GoDaddy.com LLC*, 2021 WL 4942658,

9  at *5 (D. Ariz. Oct. 22, 2021); *Signature Mgmt. Team, LLC v. Automattic, Inc*., 941 F. Supp. 2d

10  1145, 1158 (N.D. Cal. 2013).

11       Even if the Court conducts such a balance, Judge Ryu was correct that MoneyBags'

12  failure to submit evidence demonstrating that revealing the identity of this infringer could cause

13  harm or injury precludes the Court from concluding that such harm outweighs Bayside's harm if

14  it is unable to obtain MoneyBags' identity. (Dkt. 21 at 9). Twitter's arguments to the contrary are

15  meritless. First, Twitter cites inapposite cases having nothing to do with copyright infringement

16  to support its contention that the Court should have automatically found significant harm to

17  MoneyBags: *Perry v. Schwarzenegger* (political speech);[8] *In re PGS Home Co. Ltd.*

18  (defamation); and *Music Grp. Macao Commercial Offshore Ltd. V. Does* (defamation).[9]

19       Second, Twitter falsely claims that Bayside never articulated any harm it would suffer

20  should the subpoena be quashed. (Mot. at 10). As Bayside made clear, the "subpoenaed

21  information is central to Bayside's copyright infringement claims. As was the case in *Sony*

22  *Music*, '[a]scertaining the identities and residences of the Doe defendants is critical to plaintiffs'

---

[8] *Perry* involved the compelled disclosure of the proponents' political supporters of a ballot proposition, and the court found that the proponents had made a "prima facie showing of arguable first amendment infringement." 591 F.3d 1147, 1163 (9th Cir. 2010). Political speech is subject to the greatest First Amendment protection, *Online Speakers*, 661 F.3d at 1176, whereas copyright infringement is not protected by the First Amendment at all. *Harper*, 471 U.S. at 556.

[9] Twitter also cites *Art of Living Found. v. Does 1-10*, 2011 WL 5444622 (N.D. Cal. Nov. 9, 2011), which, although involving a copyright claim, "appears to be unique among the relevant body of case law" because the anonymous user not only appeared through counsel but was actively participating in discovery. *Id.* at *10.

18

1  ability to pursue litigation, for without this information, plaintiffs will be unable to serve

2  process.'" (Dkt. 9 at 10). Bayside has also explained, contrary to Twitter's false claims, who

3  Bayside is and why protecting its copyrights is important. (Dkt. 17 at 2). Further, "copyright

4  infringement claims necessarily involve irreparable harm" to Bayside. *UMG Recordings, Inc. v.*

5  *Does 1-4*, 2006 WL 1343597, at *1 (N.D. Cal. Apr. 19, 2006).

6         Third, MoneyBags' Twitter activity disproves that the possible discloser of its identity

7  chilled its speech in any way. Notwithstanding the distinct possibility that the Court would order

8  Twitter to identify MoneyBags as an alleged copyright infringer, MoneyBags continued to tweet

9  at a rapid pace, and became even more critical about the parties Twitter purports MoneyBags

10  might have reason to fear. (Allen Decl., ¶3, Ex. A)

11         Fourth, Twitter claims the Order is silent on Bayside's benefit from identifying

12  MoneyBags. But Twitter has conceded that Bayside has met each of the *Sony Music* factors,

13  including that: (1) Bayside has established a prima facie claim of infringement; (2) Bayside's

14  request is sufficiently specific; (3) Bayside has no alternative means for uncovering MoneyBags'

15  identity; (4) Bayside's ascertaining MoneyBags' identity is critical to its ability to pursue

16  litigation; and (5) MoneyBags had no expectation of privacy for copyright infringement in light

17  of Twitter's terms of use and privacy policy. Accordingly, the harm to Bayside if the MTQ were

18  granted is indisputable. MoneyBags' "right to remain anonymous must give way to [Bayside's]

19  right to use the judicial process to pursue what appear to be meritorious copyright infringement

20  claims." *Sony Music*, 326 F. Supp. 2d at 567; *see also Arista*, 604 F.3d at 119 ("We agree that

21  [the *Sony Music* test] constitutes an appropriate general standard for determining whether a

22  motion to quash, to preserve the objecting party's anonymity, should be granted."). Indeed,

23  without the Court compelling Twitter to reveal the infringer's identity, Bayside will have no way

24  to pursue its copyright infringement claim.

25        **G.**    **The MTQ Was Untimely and Made Without Notice.**

26         Twitter's MTQ was untimely.[10] "Courts generally agree that a motion to quash under

27

28  [10] Twitter should be judicially estopped from bringing the Motion because it represented to the
Court that "[if] Twitter's First Amendment objection is overruled, Twitter will produce

Rule 45 is timely if made before the date specified for compliance with the subpoena."

*Handloser v. HCL Am., Inc*., 2020 WL 4700989, at *4 (N.D. Cal. Aug. 13, 2020) (internal

citation omitted). Twitter argues that even though it did not file its MTQ until over a month after

the date of compliance, its timeliness is somehow excused by its timely filing of objections. (Dkt.

13 at 9-10). Not so. A nonparty can *either* object to a subpoena (Rule 45(d)(2)(B)) *or* move to

quash (Rule 45(d)(3)). *Id.* at 3 ("A non-party . . . may object to the subpoena before the time

specified for compliance . . . . *Alternatively*, a non-party may move to quash . . . .") (emphasis

added). Once Twitter objected, it had no obligation to respond "unless and until" Bayside

"obtained an order compelling" Twitter's compliance. *Id.* But if Twitter wanted to move to

quash, it needed to do so *before* the subpoena compliance date. *Emy Franco v. Alorica, Inc.*,

2021 WL 6104816, at *3 (C.D. Cal. Nov. 5, 2021) (even though non-party served objections, it

"must file a motion to quash the subpoena before the deposition date identified in the subpoena

or the requested date for production of documents."). Twitter offers to justification or excuse for

its late filing.

Further, Twitter did not comply with L.R. 37-1 prior to filing the MTQ. While the parties

were meeting and conferring about Bayside's related motion to compel, at no time did Twitter

mention that it was contemplating filing the MTQ, let along meeting and conferring about it in

accordance with this local rule. (*See* Dkt. 9 at 4-5).

**IV.     <u>CONCLUSION</u>**

For the forgoing reasons, the court should deny the Motion and affirm Judge Ryu's order,

denying Twitter's MTQ and granting Bayside's MTC.

---

information responsive to the subpoena . . . ." (Dkt. 16 at 2). *Milton H Greene Archives, Inc. v.*
*Marilyn Monroe LLC*, 692 F.3d 983, 993 (9th Cir. 2012).

1

DATED: March 11, 2021               GLASER WEIL FINK HOWARD

2                                        AVCHEN & SHAPIRO LLP

3

                                   By: */s/ Robert E. Allen*

4                                      ROBERT E. ALLEN

                                       Attorneys for Petitioner

5                                      *Bayside Advisory LLC*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2132054