Matthew J. Oppenheim (D.C. Bar No. 443698)
Scott A. Zebrak (D.C. Bar No. 452649)
Carly A. Kessler (NY No. 5410212)
Rebecca Weissman (CA Bar No. 322402)
**OPPENHEIM + ZEBRAK, LLP**
4530 Wisconsin Avenue, NW, 5th Floor
Washington, DC 20016
Phone: (202) 480-2999
matt@oandzlaw.com
scott@oandzlaw.com
carly@oandzlaw.com
rebecca@oandzlaw.com

*Attorneys for Amici Curiae*
*The Copyright Alliance*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE DMCA § 512(H) SUBPOENA TO TWITTER, INC. | Case No.: 20-mc-80214-VC<br><br>**AMICUS BRIEF OF THE COPYRIGHT ALLIANCE RE TWITTER'S OBJECTIONS TO MAGISTRATE JUDGE'S ORDER (DKT. 21)**<br><br>Date: May 12, 2022<br>Time: 10:00 A.M<br>Dept: Courtroom 4, 17th Floor<br>Hon. Vince Chhabria |

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

I.    Overview and Interests of the Copyright Alliance .............................................. 1

II.   Legal Principles ................................................................................................... 2

III.  Magistrate Judge Ryu's Ruling Should Be Adopted .......................................... 5

      A.    The Burden of Fair Use Is Always on Its Proponent .................................. 5

      B.    Twitter Cannot Raise Fair Use after the Alleged Infringer Declined to Assert It Themselves ................................................................................................... 7

      C.    Fair Use Is a Highly Fact-Intensive Inquiry and Was Not Established on the Record in This Case ..................................................................................... 9

      D.    *Sony Music* Is the Proper Test Given Copyright Law's Built-In First Amendment Considerations ................................................................................... 11

CONCLUSION ................................................................................................................ 15

# TABLE OF AUTHORITIES

## Cases

*Adobe Sys. Inc. v. Christenson,*
  809 F.3d 1071 (9th Cir. 2015) ....................................................................... 7

*American Geophysical Union v. Texaco Inc.,*
  60 F.3d 913 (2d Cir.1994) ............................................................................. 6

*Arista Records, LLC v. Doe,*
  604 F.3d 110 (2d Cir. 2010) ........................................................................... 3

*Authors Guild v. Google, Inc.,*
  804 F.3d 202 (2d Cir. 2015) ........................................................................... 6

*Baugher v. GoDaddy.com LLC,*
  No. MC-19-00034-PHX-JJT, 2021 WL 4942658 (D. Ariz. Oct. 22, 2021) ....................... 6, 15

*Cambridge Univ. Press v. Patton,*
  769 F.3d 1232 (11th Cir. 2014) ....................................................................... 6

*Campbell v. Acuff-Rose Music, Inc.,*
  510 U.S. 569 (1994) ........................................................................... 6, 10, 11

*Cohen v. Cowles Media Co.,*
  501 U.S. 663 (1991) ..................................................................................... 8

*Dr. Seuss Enter's., L.P. v. ComicMix LLC,*
  983 F.3d 443 (9th Cir. 2020) ........................................................................... 5

*Eldred v. Ashcroft,*
  537 U.S. 186 (2003) ............................................................................ 3, 12, 13

*Employers Mut. Cas. Co. v. Brant Lake Sanitary Dist.,*
  No. 4:18-CV-04029-RAL, 2019 WL 549878 (D.S.D. Feb. 12, 2019) .............................. 10

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,*
  499 U.S. 340 (1991) ..................................................................................... 2

*Friedman v. Live Nation Merch., Inc.,*
  833 F.3d 1180 (9th Cir. 2016) ......................................................................... 7

*Harper & Row Publishers, Inc.,*
  471 U.S. 539 (1985) ..................................................................................... 3

*Harris v. Evans,*
  20 F.3d 1118 (11th Cir. 1994) ......................................................................... 9

*Highfields Cap. Mgmt., L.P. v. Doe*,
    385 F. Supp. 2d 969 (N.D. Cal. 2005) .................................................................. 13

*In re Aimster Copyright Litig.*,
    334 F.3d 643 (7th Cir. 2003) ............................................................................... 12

*In re DMCA Subpoena to Reddit, Inc.*,
    441 F. Supp. 3d 875 (N.D. Cal. 2020) ................................................................. 13

*In re Verizon Internet Servs., Inc.*,
    257 F. Supp. 2d 244 (D.D.C.) ................................................................................ 3

*Lenz v. Universal Music Corp.*,
    815 F.3d 1145 (9th Cir. 2016) .................................................................... 4, 5, 6, 10

*Monge v. Maya Mags., Inc.*,
    688 F.3d 1164 (9th Cir. 2012) ......................................................................... 2, 11

*Perfect 10, Inc. v. Amazon.com*, Inc.,
    508 F.3d 1146 (9th Cir. 2007) ............................................................................... 3

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
    572 U.S. 663 (2014) ............................................................................................... 2

*Pony v. County of Los Angeles*,
    433 F.3d 1138 (9th Cir. 2006) ............................................................................... 9

*Salinger v. Colting*,
    607 F.3d 68 (2d Cir. 2010) .................................................................................. 11

*Sedersten v. Taylor*,
    No. 09-3031-CV-S-GAF, 2009 WL 4802567 (W.D. Mo. Dec. 9, 2009) .................. 8

*Singleton v. Wulff*,
    428 U.S. 106 (1976) ............................................................................................... 7

*Snepp v. United States*,
    444 U.S. 507 (1980) ............................................................................................... 8

*Sony Music Ent. Inc. v. Does 1-40*,
    326 F. Supp. 2d 556 (S.D.N.Y. 2004) ................................................................. 13

*Star Athletica, L.L.C. v. Varsity Brands, Inc.*,
    137 S. Ct. 1002 (2017) ........................................................................................... 2

*TD Bank N.A. v. Hill*,
    928 F.3d 259 (3d Cir. 2019) ................................................................................ 12

*Universal City Studios, Inc. v. Reimerdes*,
    82 F. Supp. 2d 211 (S.D.N.Y. 2000) ................................................................ 14

*Vampire Fam. Brands, LLC v. MPL Brands, Inc.*,
    No. CV 20-9482-DMG (ASX), 2021 WL 4134841 (C.D. Cal. Aug. 6, 2021)........................ 10

*VHT, Inc. v. Zillow Grp., Inc.*,
    918 F.3d 723 (9th Cir. 2019) ................................................................ 3

## Statutes

17 U.S.C. § 106(1) ................................................................ 2

17 U.S.C. § 512(c) ................................................................ 4, 6

17 U.S.C. § 512(g) ................................................................ 4, 15

17 U.S.C. § 512(h) ................................................................ 4, 14, 15

17 U.S.C. § 512(i) ................................................................ 4

## Other Authorities

4 Nimmer on Copyright § 12B.09 ................................................................ 5

H.R. Rep. No. 105-551 ................................................................ 3

## Introduction

The Copyright Alliance submits this amicus brief because its members have a strong interest in courts applying the proper legal framework in copyright matters.  There is no First Amendment right to infringe, anonymously or otherwise.  Yet Twitter and its amici supporters seek to rewrite existing legal rules for unmasking anonymous online infringers.  Under the guise of protecting free speech, they argue for a legal framework that would allow platforms to assert positions on behalf of their users—accused infringers—even when the users themselves have declined to assert those positions, and to saddle copyright owners with burdens that the law does not impose.  Magistrate Judge Ryu carefully considered the law, the record, and the circumstances presented.  The Copyright Alliance respectfully submits that the Court should adopt her thoughtful ruling.

## I.   Overview and Interests of the Copyright Alliance

The Copyright Alliance, a nonprofit, nonpartisan 501(c)(4) public interest and educational organization, is dedicated to advocating policies that promote and preserve the value of copyright and that protect the rights of creators.  It represents the copyright interests of over 1.8 million individual creators and over 13,000 organizations across all creative industries, including graphic and visual artists, photographers, writers, musical composers and recording artists, journalists, documentarians and filmmakers, software developers, and the businesses that support them.

The Copyright Alliance is not affiliated with Bayside or Twitter and is not here in support of any party.  Rather, the Copyright Alliance submits this amicus brief because its members have a strong interest in ensuring that the delicate balance Congress created through the Digital Millennium Copyright Act ("DMCA") is upheld and that Section 512 of the DMCA is implemented and interpreted as Congress intended.  Rampant copyright infringement occurs

across the Internet, including on Twitter.[1]  The Copyright Alliance's members depend on copyright law, including the DMCA, to protect their works against infringement and to sustain their ability to continue creating and disseminating expressive works for the public's benefit. Copyright Alliance members are also ardent supports of the First Amendment and actively fight for First Amendment freedoms.[2]  Our interest in both copyright and the right to free expression makes the Copyright Alliance uniquely suited to comment on the issues in this case.

## II. <u>Legal Principles</u>

A copyright holder bears the burden of establishing a prima facie case of copyright infringement, *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 683 (2014), which requires proof of (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original, *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).  As a threshold matter, there is no dispute that "individual photos merit copyright protection."  *Monge v. Maya Mags., Inc.*, 688 F.3d 1164, 1177 (9th Cir. 2012) (citation omitted).

It is well-settled that uploading a photograph onto a server without authorization is copying and thus a violation of the exclusive right of reproduction.  17 U.S.C. § 106(1); *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1010 (2017) (a copyright owner has the exclusive right to reproduce copyrighted works in copies); *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 736-37 (9th Cir. 2019) (an image stored on a computer is a "copy" under copyright law); *Perfect 10, Inc. v. Amazon.com*, Inc., 508 F.3d 1146, 1160 (9th Cir. 2007) (same).

---

[1] *See*, *e.g.*, https://transparency.twitter.com/en/reports/copyright-notices.html#2021-jan-dec (in January-June 2021 alone, Twitter received almost 180,000 DMCA takedown notices).
[2] *See*, *e.g.*, https://publishers.org/news/aap-supports-a-free-press/; https://www.motionpictures.org/press/mpaas-history-of-fighting-for-free-speech/; https://www.theesa.com/policy/first-amendment/; https://www.authorsguild.org/where-we-stand/free-speech/; https://nppa.org/page/advocacy.

It is also well-settled that the First Amendment does not excuse copyright infringement. *Harper & Row Publishers, Inc*., 471 U.S. 539, 556-60 (1985) (First Amendment was not a defense to copyright infringement claim); *Eldred v. Ashcroft*, 537 U.S. 186, 197 (2003) ("[T]here are no First Amendment rights to use the copyrighted works of others") (citation omitted); *Arista Records, LLC v. Doe*, 604 F.3d 110, 118 (2d Cir. 2010) ("[T]o the extent that anonymity is used to mask copyright infringement or to facilitate such infringement by other persons, it is unprotected by the First Amendment").

With the arrival of the digital era and recognition that the Internet would provide an easy avenue for copying, Congress enacted Section 512 of the DMCA in 1998 to balance the interests of Internet platforms, users, and copyright owners.  The legislation served as a compromise between copyright owners and Internet platforms to serve the dual purpose of encouraging the growth of the Internet and ensuring that copyright owners have an effective channel to protect their intellectual property online.  *See* H.R. Rep. No. 105-551, pt. 2 at 21 ("[T]he Committee believes it has appropriately balanced the interests of content owners, on-line and other service providers, and information users in a way that will foster the continued development of electronic commerce and the growth of the Internet.").  The legislation served to "*foster[]* speech by helping artists, musicians, and authors *protect* their creative works, in turn encouraging further expression."  *In re Verizon Internet Servs., Inc.*, 257 F. Supp. 2d 244, 266 (D.D.C.), *rev'd on other grounds*, *Recording Indus. Ass'n of Am. v. Verizon Internet Serv., Inc.*, 351 F.3d 1229 (D.C. Cir. 2003) (emphasis in original); *see also id.* at 266, 275 ("[Section] 512 . . . does not abridge the First Amendment rights of Internet users").

Section 512 sets up a process which permits a copyright owner (or someone on their behalf) to send a takedown notice to a service provider and request the provider to remove

infringing material.  17 U.S.C. § 512(c)(3).  Section 512 sets forth several elements that are to be included in a takedown notice such as the notice sender's contact information, the location where the infringing content can be found, a description of the original content, and a statement made in good faith confirming that the use of the work is not authorized.  *Id*.  A copyright holder is also directed to consider fair use before sending a takedown notice.  *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1153 (9th Cir. 2016).

After a takedown notice is sent to a service provider, the provider must take steps to "promptly notify the subscriber" that the material was removed.  17 U.S.C. § 512(g).  Qualifying service providers who comply with Section 512's conditions and procedures are insulated from monetary liability.  *See, e.g.*, 17 U.S.C. §§ 512(c)(1), (2) and § 512(i).

Importantly, Section 512 also includes safeguards for alleged infringers.  For example, if an alleged infringer in good faith does not believe the activity is infringing, they can send a counter-notice to the service provider explaining why they disagree with the copyright owner. 17 U.S.C. § 512(g).  After receiving a counter-notice, the service provider is obligated to forward that counter-notice to the person who sent the original takedown notice.  *Id*.  Once the service provider has received a valid counter-notice they must reinstate the claimed infringing material unless the service provider receives notice within 10-14 days that the copyright holder is bringing infringement claims in federal court against the alleged infringer.  *Id*.

Under 17 U.S.C. § 512(h), a copyright owner may seek a subpoena in U.S. District Court "for identification of an alleged infringer," so long as the subpoena request includes a copy of the takedown notice, a proposed subpoena, and a sworn declaration that the subpoena is sought "to obtain the identity of an alleged infringer and that such information will only be used for the purpose of protecting rights under this title."  As a leading treatise has recognized, precisely

because a qualifying service provider is immunized from liability, "it becomes all the more important for the copyright owner to discover the party actually responsible for uploading the infringing content in the first instance."  4 Nimmer on Copyright § 12B.09.

### III. Magistrate Judge Ryu's Ruling Should Be Adopted

The objections of Twitter and its amici, Electronic Frontier Foundation ("EFF") and American Civil Liberties Union Foundation of Northern California ("ACLU"), to Magistrate Judge Ryu's ruling are without merit and their positions are contrary to well-established legal precedent for several reasons.[3]

### A.  The Burden of Fair Use Is Always on Its Proponent

Twitter and its amici's position, that the burden of establishing an absence of fair use rests with the copyright owner, is contrary to black letter law.  Twitter and its amici have no support for their assertion that Magistrate Judge Ryu erred by recognizing that the burden of proving fair use is *always* on a putative infringer.  Dkt. 22 at 5-6; Dkt. 29-1 at 8-9.

Both in the Ninth Circuit and in courts around the country, the burden of proving fair use is always on the accused infringer.  *See, e.g.*, *Dr. Seuss Enter's., L.P. v. ComicMix LLC*, 983 F.3d 443, 459 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 2803 (2021); *Lenz*, 815 F.3d 1145 at 1152–53 ("Regardless of how fair use is viewed, it is clear that the burden of proving fair use is always on the putative infringer.") (citation omitted); *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994) (proponent of fair use carries burden); *Authors Guild v. Google, Inc.*, 804 F.3d 202, 213 (2d Cir. 2015) ("[T]he party asserting fair use bears the burden of proof.") (citing

---

[3] Copyright Alliance addresses the record and issues before the Court, not the hyperbole.  *See* Dkt. 22 at 2 (platforms must defend against copyright law "from being weaponized" to suppress and censor speech); Dkt. 29-1 at 1, 10 (contending "abuse" of takedown processes and discovery procedures to silence speech is "common" and "rampant").

*American Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 918 (2d Cir.1994)); *Cambridge Univ. Press v. Patton*, 769 F.3d 1232, 1279 (11th Cir. 2014) ("[T]he evidentiary burden on all four of [the fair use] factors rests on the alleged infringer."); *Baugher v. GoDaddy.com LLC*, No. MC-19-00034-PHX-JJT, 2021 WL 4942658, at *4 (D. Ariz. Oct. 22, 2021) (in case involving unmasking anonymous infringer under the DMCA, explaining that the "the burden of proving fair use is always on the putative infringer") (citation omitted).  No court has ever held otherwise.  Even Twitter recognizes this principle.  Dkt. 22 at 2, 5 ("[T]he burden of establishing fair use is 'always' on the putative infringer in a copyright action" and "an alleged infringer no doubt bears the burden of establishing fair use in a copyright action against that infringer. . .").

That this is a pre-lawsuit subpoena rather than a Rule 45 subpoena is a distinction without a difference.  In both situations, the copyright owner must be able to establish a prima facie claim of infringement and enforcement cannot proceed absent disclosure of the alleged infringer's identity.  The information the accused infringer possesses is the same in each instance.

A copyright holder cannot feasibly have the burden of *disproving* fair use.  It is one thing for a copyright holder to *consider* fair use before sending a takedown notice, *Lenz*, 815 F.3d at 1153 ("a copyright holder must consider. . .fair use before sending a takedown notification under § 512(c)"), based on available information.  But it would be a giant leap to shift onto a copyright holder a burden to *prove* a negative (the inapplicability of fair use).  It would be especially unreasonable to impose that burden in this case where there was no opportunity for discovery, through no fault of the copyright holder, because the putative infringer chose not to appear.  In such a situation, the re-allocation of the burden could extinguish the opportunity to

identify the infringer and remedy the infringement, allowing the infringer to continue infringing with impunity.

Placing the burden on the anonymous alleged infringer to rebut a well-supported claim of unauthorized copying is consonant with the general evidentiary principle that "fairness dictates that a litigant ought not have the burden of proof with respect to facts particularly within the knowledge of the opposing party." *Adobe Sys. Inc. v. Christenson*, 809 F.3d 1071, 1079 (9th Cir. 2015); *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1189 (9th Cir. 2016) ("[A] litigant ought not have the burden of proof with respect to facts particularly within the knowledge of the opposing party" and "[i]t would be unfair to burden [plaintiff]. . . with proving [] knowledge [about the infringement] with greater specificity than [the infringer] did.").

### B. Twitter Cannot Raise Fair Use after the Alleged Infringer Declined to Assert It Themselves

Twitter admitted it "is not aware of authority anywhere in the country that has yet addressed whether a platform may establish fair use on behalf of its anonymous user in quashing a pre-suit 512(h) subpoena." Dkt. 22 at 5. Because Magistrate Judge Ryu allowed Twitter to appear, it is not necessary to consider the potential metes and bounds of platform standing. Instead, Twitter's appearance and arguments in opposition to the subpoena are misplaced for several other reasons.

First, Twitter should not be allowed to assert objections on behalf of the user that, for purposes of opposing a Section 512(h) subpoena, the user knowingly and voluntarily waived after being given the opportunity to appear anonymously and present their case. *See, e.g., Snepp v. United States*, 444 U.S. 507, 526, n.3 (1980) (Confidentiality agreement restricting party from publishing information he learned while employed by the CIA did not violate First Amendment rights and suggesting that party may waive his or her First Amendment right to free speech when

they "voluntarily" do so); *see also Cohen v. Cowles Media Co.*, 501 U.S. 663, 672 (1991) (reporters who breached promise not to disclose their source's name in an article were not protected by the First Amendment and Court suggested that when parties agree to restrict their First Amendment rights, there is no First Amendment violation); *Sedersten v. Taylor*, No. 09-3031-CV-S-GAF, 2009 WL 4802567, at *2 (W.D. Mo. Dec. 9, 2009) ("Like other constitutional rights, a person may waive his or her first amendment right to free speech.").

The alleged infringer had opportunities at each step in the process to challenge the claim of infringement on fair use or other grounds.  As noted above, Section 512 establishes procedures for infringement notices, counter-notices, and subpoenas for identifying putative infringers.  *See supra* at pp. 3-5.  Those statutorily prescribed procedures, along with disclosure of a user's identity to comply with legal process, are incorporated into Twitter's terms of service and privacy policies that Twitter and the alleged infringer agreed to follow.[4]  By not providing a counter-notice—the basis for the takedown and the subpoena for the user's identity—the user chose not to dispute the allegation of infringement.  Nor, since that time, has the user disputed the infringement claim.  Indeed, the Magistrate Judge also gave the user the opportunity to appear anonymously before the court and present evidence in opposition to the subpoena, but the user chose not to take advantage of any of these options.  *See* Dkt. 19 at 4; Dkt. 21 at 1, 8.  Thus, with respect to the Section 512(h) subpoena, waiver should apply.

---

[4] https://twitter.com/en/tos; https://twitter.com/en/privacy at Section 3.3; and https://help.twitter.com/en/rules-and-policies/copyright-policy ("[Y]ou may file a counter-notice if you believe that [certain] material was misidentified, or you have a good faith belief that the material should not have been removed.  If you're unsure whether or not you should file a counter-notice, you may want to consult with an attorney."). Twitter also informs users that it will contact them via email and requires users to update their account information so that they will receive those emails. *See* https://help.twitter.com/en/managing-your-account/how-to-update-your-email-address.

Second, under the traditional rules for standing, a third-party cannot appear to assert positions inconsistent with those of the person upon whose behalf they purportedly represent. Here, Twitter speculates as to the accused infringer, including as to their purpose in uploading the photos and potential harm from unmasking, and asserts First Amendment and fair use arguments on behalf of a party who chose not to assert those arguments.  However, courts should avoid triggering an unnecessary adjudication where the holder of the rights at issue "do[es] not wish to assert them[.]"  *Singleton v. Wulff*, 428 U.S. 106, 114 (1976); *see also Pony v. County of Los Angeles*, 433 F.3d 1138, 1147 (9th Cir. 2006) (no third party standing where rights holder "d[id] not wish to assert [those rights]."); *Harris v. Evans*, 20 F.3d 1118, 1124-25 (11th Cir. 1994) ("Courts have repeatedly emphasized that the key to third-party standing analysis is whether the interests of the litigant and the third party are properly aligned. . ." and will deny standing where it will have no "effect on the ability of the [rights holder] to assert their own rights if they wish to do so."); *Employers Mut. Cas. Co. v. Brant Lake Sanitary Dist.*, No. 4:18-CV-04029-RAL, 2019 WL 549878, at *4 (D.S.D. Feb. 12, 2019) (third party lacked standing to bring claims "that not only belonged to [rights holder], but also that [rights holder] may not wish to bring at all and indeed [did] not raise.").  Instead, if there is a future litigation with Bayside, the user can raise arguments as to fair use if they choose to do so.

## C.  Fair Use Is a Highly Fact-Intensive Inquiry and Was Not Established on the Record in This Case

Even if Twitter could properly raise a fair use defense on behalf of its user in this case, Magistrate Judge Ryu correctly concluded that the record was too undeveloped to find that fair use applied.  Dkt. 21 at 7-8 ("evidence of 'the user's purpose and intended meaning' in posting the tweets, which is relevant to the first and third factors of the fair use test, 'is likely available only from the individual(s) who posted the tweets'" [and here] "the anonymous speaker did not

augment the record [] to meet their burden"); *id.* at 9 (user did not meet fourth factor because "it is impossible to deal with the fourth factor except by recognizing that a silent record on an important factor bearing on fair use disentitled the proponent of the [fair use] defense") (citing *Campbell*, 510 U.S. at 594).

Fair use is a fact-intensive analysis which is generally not "resolvable at the pleading stage." *See Vampire Fam. Brands, LLC v. MPL Brands, Inc.*, No. CV 20-9482-DMG (ASX), 2021 WL 4134841, at *5 (C.D. Cal. Aug. 6, 2021). Fair use varies case by case and requires "close questions of judgment." *Campbell*, 510 U.S. at 578, n.10; *Lenz*, 572 F. Supp. 2d at 1155 ("[F]air use is a fact-intensive inquiry."); *Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010) ("[A]rguments about why one work. . . [is] a fair use of another [is] often [a] sophisticated and fact-intensive [inquiry], and must be crafted with a good deal of thought and effort.") (citation omitted).

The factual record is deficient in large part because the alleged infringer elected not to participate, even anonymously. Magistrate Judge Ryu nonetheless still considered fair use but appropriately concluded that she could not adequately address it given the lack of a well-developed record. Dkt. 19 at 2; Dkt. 21 at 7-9. Reinforcing the reasonableness of this ruling, Twitter's brief illustrates just how many unanswered questions remain in the fair use analysis. Dkt. 22 at 7-8 (speculating that works were "transformed by the accompaniment of ridicule and mockery," were copied for "purpose of discussion" and user "could not profit from mere publication of a Tweet"). Twitter admits that "testimony from the anonymous user might assist in a fair use inquiry" yet baselessly concludes that such testimony is "not necessary." *Id.* at 3. Magistrate Judge Ryu properly refused to give Twitter's conjecture weight. Dkt. 19 at 3; Dkt. 21 at 7 ("Twitter's contentions about the purpose of the tweets was speculative.").

The parties have asserted various fair use arguments—both for and against fair use—and the Copyright Alliance will not repeat those here, except to note that, in particular, the use does not appear to be transformative.[5]  While a full fair use analysis is beyond the scope of this amicus brief, and not possible given the undeveloped record, neither the alleged infringer, nor Twitter on their behalf, have carried their burden to demonstrate that the copying is an authorized fair use.

### D. ___Sony Music___ **Is the Proper Test Given Copyright Law's Built-In First Amendment Considerations**

Twitter and its amici are wrong about Magistrate Judge Ryu's application of the *Highfields* balancing test.[6]  *Sony Music* is the proper test to apply, insofar as copyright law already includes First Amendment considerations within the fair use analysis.  *See*, *e.g.*, *Eldred*, 537 U.S. at 190 ("[C]opyright law contains built-in First Amendment accommodations."); *TD Bank N.A. v. Hill*, 928 F.3d 259, 284 (3d Cir. 2019) ("Though not 'categorically immune from challenges under the First Amendment,' copyright law generally does not invite First Amendment scrutiny, insofar as 'copyright's built-in free speech safeguards. . . ' adequately guarantee free expression") (quoting *Eldred*, 537 U.S. at 221); *In re Aimster Copyright Litig.*,

---

[5] "*Campbell* makes clear that the 'heart' of a claim for transformative use is 'the use of some elements of a prior author's composition to create a new one that, at least in part, *comments on that author's works.*'"  *Monge*, 688 F.3d at 1175 (citing *Campbell*, 510 U.S. at 580) (emphasis added in italics).  Here, the alleged infringer did not comment on or criticize the photographs themselves and thus did not give them new "meaning" or convey a new "message" that would constitute transformation.  The anonymous user copied the images and used them in their entirety, without engaging in commentary or criticism as to the actual images.  Copying and pasting photographs does not "add[] something new" or alter it with "new expression, meaning, or message."  *Campbell*, 510 U.S. at 579.

[6] The discussion below dispels EFF and ACLU's argument that Magistrate Judge Ryu "assumes and reinforces a two-tiered system of protections for anonymous speakers" where "some speakers are more vulnerable to unmasking than others, based solely on the nature of the claims asserted against them."  Dkt. 29-1 at 1.

334 F.3d 643, 656 (7th Cir. 2003) ("Copyright law [is] quite complicated enough without the superimposition of First Amendment case law on [it]; and we have been told recently by the Supreme Court [] that 'copyright law contains built-in First Amendment accommodations'" [and] "in any event, the First Amendment bears less heavily when speakers. . . copy, or enable the copying of, other people's" photographs) (quoting *Eldred*, 537 U.S. at 186).

The *Sony Music* test weighs the following factors: (1) a concrete showing of a prima facie claim of actionable harm; (2) specificity of the discovery request; (3) the absence of alternative means to obtain the subpoenaed information; (4) a central need for the subpoenaed information to advance the claim; and (5) the party's expectation of privacy. *Sony Music Ent. Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 565 (S.D.N.Y. 2004). On the other hand, the *Highfields* case involved trademark and unfair competition claims, not copyright law or fair use, and is therefore not a good fit here. *See In re DMCA Subpoena to Reddit, Inc.*, 441 F. Supp. 3d 875, 882 (N.D. Cal. 2020) ("While the *Highfields* test certainly has a role in some online speech cases, it is *not well suited for a copyright dispute*.") (emphasis added).

*Highfields* requires: (1) a showing of evidence supporting a finding of each fact that is essential to a given cause of action; and (2) if the plaintiff makes a sufficient evidentiary showing, a balancing of the magnitude of the harms that would be caused to the competing interests by a ruling in favor of the plaintiff and by a ruling in favor of the defendant." *Highfields Cap. Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 975–76 (N.D. Cal. 2005). The second element of the *Highfields* test is inapposite.

Given copyright law's built-in First Amendment considerations, the Court need not engage in that separate balancing test. *See In re DMCA Subpoena to Reddit, Inc.*, 441 F. Supp. 3d. at 882–83 ("[F]air use provides everything needed to balance the competing interests of the

First Amendment and the copyright laws" and "[t]he parties and the magistrate judge considered fair use in the context of balancing the harms, but a good argument can be made that it fits much better in determining whether there was a prima facie case of copyright infringement.").  When a case concerns copyright law, it is unnecessary for a court to take on "additional complications raised by the application of the First Amendment to anonymous online speech . . . because copyright law contains built-in First Amendment accommodations."  *Id.* (citing *Eldred*, 537 U.S. at 219-20).  Thus, "[t]here is no need to go further afield, or to treat fair use as an element in a broader First Amendment inquiry.  *Id.* at 882; *see also Universal City Studios, Inc. v. Reimerdes*, 82 F. Supp. 2d 211, 220 (S.D.N.Y. 2000) ("To the extent there is any tension between free speech and protection of copyright, [it is] accommodated fully by [the] traditional fair use doctrine. . .").

Regardless, both tests are satisfied here, so the Court need not pick among them –nor did the ruling.  Dkt. 21 at 7. ("[T]he court need not decide whether it is appropriate to use fair use as a proxy for the First Amendment analysis in a copyright infringement case involving an anonymous speaker, or whether to instead use the *Highfields* standard.  This is because the speaker fails to meet either test on the current record.").

Twitter argues that the harms of unmasking are "self-evident" and that the Court can engage in the *Highfields* balancing test without the user's participation.  Dkt. 22 at 3.  But that is simply not so.  As Magistrate Judge Ryu recognized, Twitter's assertions as to the balance of harms were "speculative."  Dkt. 19 at 3.  "[O]n the current record" the court could not conclude that the use of the copyrighted photos constituted fair use.  Dkt. 21 at 8.  The Magistrate Judge rightfully noted that the record "lacked sufficient information to balance the magnitude of the harms that would be caused to the competing interests [of the parties] to the extent such a

balancing was necessary." *Id*.   The court cannot consider evidence that is not in front of it, nor

can "the court [] balance the harms in favor of quashing the subpoena because, despite having

been given the opportunity to do so, the [anonymous] user(s) . . . did not submit evidence

demonstrating that unmasking their identity could cause harm or injury." *Id*. at 9.

Twitter argues that it must be permitted to establish fair use on behalf of the anonymous

user because "[t]o require a user to appear in any Section 512(h) action and establish fair use

would itself meaningfully chill protected First Amendment activity." Dkt. 22 at 6.  But this

argument ignores the fact that the Magistrate Judge offered the anonymous user an opportunity

to step forward *anonymously* to "file evidence regarding fair use and/or the harms that may result

if the court denies the motion to quash." Dkt. 21 at 7-8.

Twitter's argument about the putative infringer being burdened by the "daunting

expense" of litigation likewise rings hollow. Dkt. 22 at 6.  As noted above, the alleged infringer

could have taken the simple step of submitting a counter-notice, under Section 512(g)(3), if they

believed there was a legal basis to support their posting of the photographs on Twitter.  The

submission of such a counter-notice is neither costly, time-consuming, nor daunting; rather, it is

a routine procedure, and it certainly does not chill free speech.  And, while litigation may be

"expensive, time consuming, [and] embarrassing" that is not a valid defense to an infringement

claim.  Indeed, the same argument could be made about *any* potential infringer on the planet.

Finally, concerns about embarrassment or misuse of that person's identity are addressed

by the limitation that the information may be used only in vindicating rights under copyright.  17

U.S.C. § 512(h)(2)(C); *see also Baugher*, 2021 WL 4942658, at *5 ("The Does' fears that that

disclosure of their identities will be misused is addressed both by the DMCA itself, which states

the identities will only be used for the limited purpose of protecting the applicant's copyright, 17

U.S.C. § 512(h)(2)(C), and [the copyright holder's] attestation to the same.").

## Conclusion

Magistrate Judge Ryu's ruling is consistent with Congress's aims in enacting the DMCA

and with how courts have adjudicated issues surrounding anonymous infringers for years.  It

should be adopted.  Twitter and its amici's arguments, if adopted, would erect unnecessary and

even insurmountable barriers to U.S. copyright owners who need to enforce their copyrights

against anonymous infringers, and leave them without effective protection for their valuable

intellectual property.


Dated: April 4, 2022                          Respectfully submitted,

                                              */s/ Rebecca Weissman*
                                              Rebecca Weissman

                                              Matthew J. Oppenheim (D.C. Bar. No. 443698)
                                              Scott A. Zebrak (D.C. Bar. No. 452649)
                                              Carly A. Kessler (NY No. 5410212)
                                              Rebecca Weissman (CA Bar No. 322402)
                                              **OPPENHEIM + ZEBRAK, LLP**
                                              4530 Wisconsin Avenue, NW, 5th Floor
                                              Washington, DC 20016
                                              Phone: (202) 480-2999
                                              matt@oandzlaw.com
                                              scott@oandzlaw.com
                                              carly@oandzlaw.com
                                              rebecca@oandzlaw.com

                                              *Attorneys for Amici Curiae*
                                              *The Copyright Alliance*