1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Paul Alan Levy (pro hac vice sought)
Public Citizen Litigation Group
1600 20th Street, NW
Washington, D.C. 20009
(202) 588-7725
plevy@citizen.org

Phillip R.Malone
California Bar No. 163969
JUELSGAARD INTELLECTUAL PROPERTY AND INNOVATION CLINIC
Mills Legal Clinic at Stanford Law School
Crown Quadrangle, 559 Nathan Abbott Way
Stanford, California 94305-8610
Telephone: (650) 724-1900
Facsimile: (650) 725-0253
pmalone@stanford.edu

*Attorneys for Public Citizen*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| In re DMCA Sec. 512(h) Subpoena to Twitter, Inc. ) ) ) ) ) ) Twitter's Motion for De Novo Determination of Dispositive Matter ) ) ) ) ) ) ) ) ) _____ ) | Case No.: 20-mc-80214 VC **BRIEF OF PUBLIC CITIZEN AS AMICUS CURIAE IN SUPPORT OF NEITHER PARTY** Date: May 12, 2022 Time: 10:00 AM Dept: Courtroom 4, 17th Floor Hon. Vince Chhabria |

# TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Interest of Amicus Curiae. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.   PLATFORMS   HAVE   STANDING   TO   OPPOSE   SUBPOENAS   TO
     IDENTIFY THEIR USERS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II.  HIGHFIELDS CAPITAL AND DENDRITE, NOT SONY MUSIC, SUPPLY
     THE STANDARD GOVERNING ADJUDICATION OF TWITTER'S
     MOTION TO QUASH. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

     A.  *Dendrite* and *Highfields Capital* Set the Right Standard . . . . . . . . . . . . . . . . 5

     B. There Is No Broad "Copyright Exception" to the *Dendrite / Highfields
        Capital* Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

III. NEITHER SIDE SHOULD HAVE A BURDEN OF PROOF AT THE
     BALANCING STAGE OF THE ANALYSIS. . . . . . . . . . . . . . . . . . . . . . . . . . . 14

     A.  Possible Considerations of the Plaintiff's Needs to Enforce. . . . . . . . . . . . . .16

     B.  Possible Considerations Favoring Anonymity for the Doe. . . . . . . . . . . . . . . 17

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

## CASES

*America Online v. Anonymous Publicly Traded Co.,*
   542 S.E.2d 377 (Va. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Arista Records, LLC v. Doe 3,*
   604 F.3d 110 (2d Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Art of Living v. Doe,*
   2011 WL 5444622 (N.D. Cal. Nov. 9, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10

*Berkovitz v. Does,*
   No. 2:22-cv-01628 (C.D. Cal. Mar. 11, 2022)) . . . . . . . . . . . . . . . . . . . . . . . . 6, 18

*Columbia Insurance Co. v. Seescandy.com,*
   185 F.R.D. 573 (N.D. Cal. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Dendrite Int'lv. Doe,*
   775 A.2d 756 (N.J. App. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Digital Music News v. Superior Court,*
   171 Cal. Rptr. 3d 799 (Cal. App. 2d Dist. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re DMCA Sec. 512(h) Subpoena to YouTube (Google, Inc.),*
   2022 WL 160270 (S.D.N.Y. Jan. 18, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re DMCA Subpoena to Reddit,*
   441 F. Supp. 3d 875 (N.D. Cal. 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Doe v. 2theMart.com,*
   140 F.Supp.2d 1088 (W.D. Wash 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Doe v. Cahill,*
   884 A.2d 451 (Del. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

*Doe v. Coleman,*
   497 S.W.3d 740 (Ky. 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 15

*Fitch v. Doe,*
   869 A.2d 722 (Me. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Fodor v. Doe,*
   2011 WL 1629572 (D. Nev., April 27, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Glassdoor, Inc. v. Superior Court,*
   215 Cal. Rptr. 3d 395 (Cal. App. 6th Dist. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Gunning v. Doe,*
   159 A.3d 1227 (Me. 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10

*Highfields Capital Management v. Doe,*
   385 F. Supp.2d 969 (N.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Independent Newspapers, Inc. v. Brodie,*
    966 A.2d 432 (Md. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 9, 10

*In re Indiana Newspapers,*
    963 N.E.2d 534 (Ind. App. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 9, 15

*Koch Industries v. Does,*
    2011 WL 1775765 (D. Utah May 9, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Leadsinger, Inc. v. BMG Music Pub.,*
    512 F.3d 522 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*McIntyre v. Ohio Elections Commission,*
    514 U.S. 334 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9

*Mobilisa v. Doe,*
    170 P.3d 712 (Ariz. App. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 15

*Mortgage Specialists v. Implode-Explode Heavy Industries,*
    999 A.2d 184 (N.H. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 9, 15

*Music Group Macao Commercial Offshore Ltd. v. Does,*
    82 F. Supp. 3d 979 (N.D. Cal. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10

*Pilchesky v. Gatelli,*
    12 A.3d 430 (Pa. Super. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 16

*Ramos v. Wolf,*
    975 F.3d 872 (9th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Ron Paul 2012 Presidential Campaign Committee v. Doe,*
    No. 3:12-cv-00240- MEJ (N.D. Cal. Mar. 8, 2012) . . . . . . . . . . . . . . . . . . . . . . 2

*Salehoo v. Doe,*
    722 F.Supp.2d 1210 (W.D. Wash. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Signature Management Team v. Doe,*
    876 F.3d 831 (6th Cir. 2017),
    *on remand*, 323 F. Supp. 3d 954 (E.D. Mich. 2018) . . . . . . . . . . . . . . . . . . 10, 11

*Sony Music Entertainment v. Does 1-40,*
    326 F. Supp.2d 556 (S.D.N.Y. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Swiger v. Allegheny Energy,*
    2006 WL 1409622 (E.D. Pa. May 19, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Thomas M. Cooley Law School v. Doe 1,*
    833 N.W.2d 331 (Mich. App. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Ty, Inc. v. Publications International Ltd.,*
    292 F.3d 512 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*USA Technologies v. Doe,*
    2010 WL 1980242 (N.D. Cal. Ma7 17, 2010). . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Verizon Internet Services*,
257 F.Supp.2d 244 (D.D.C. 2003),
*rev'd sub nom. Recording Industrial Association of America v.
Verizon Internet Services*,
351 F.3d 1229 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Video Pipeline v. Buena Vista Home Entertainment*,
342 F.3d 191 (3d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Yelp, Inc. v. Hadeed Carpet Cleaning*,
752 S.E.2d 554 (Va. App. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

CONSTITUTION AND **STATUTES**

United States Constitution
First Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

17 U.S.C. § 412(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

17 U.S.C. § 512(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**OTHER AUTHORITIES**

Bowles, *How 'Doxxing' Became a Mainstream Tool in the Culture Wars*
(New York Times Aug. 30, 2017), available at https://www.nytimes.
com/2017/08/30/ technology/doxxing-protests.html . . . . . . . . . . . . . . . . . . 7

Eisenhofer and Liebesman, *Caught by the Net*,
10 Business Law Today No. 1 (Sept./Oct. 2000) . . . . . . . . . . . . . . . . . . . . . 8

Kosseff, UNITED STATES OF ANONYMOUS (2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Levenson, Hoping to Identify Cheaters, a Professor Sues His Own Students,
https://www.nytimes.com/022/03/17/s/chapman-law-cheating-
professor. html . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Levy, Watch Tower's Misuse of Copyright to Suppress Criticism
(Mar. 7, 2022), https://pubcit.typepad.com/clpblog/2022/03/watch-
towers -misuse-of-copyright -to-suppress-criticism.html . . . . . . . . . . . . . . . . 8

Lidsky & Cotter, Authorship, Audiences and Anonymous Speech,
82 Notre Dame L. Rev. 1537 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Pizzagate Conspiracy Theory,
https://en. wikipedia.org/wiki/ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Wilson, *An Online Agitator, a Social Media Exposé and the Fallout
in Brooklyn* (New York Times, June 2, 2018),
available at https://www.nytimes. com/ 2018/06/06/
nyregion/amymek- mekelburg-huffpost-doxxing.html . . . . . . . . . . . . . . . . . . 7

**INTRODUCTION**

Public Citizen submits this amicus brief in support of neither party to address the proper way to assess the balance between the First Amendment right to speak anonymously and the right to enforce based on the anonymous speech. Public Citizen agrees with Twitter and its amici that platforms such as Twitter have standing to assert the First Amendment rights of their users. We also agree that the *Dendrite* balancing test, often applied in this District in cases such as *Highfields Capital Management v. Doe*, 385 F. Supp.2d 969 (N.D. Cal. 2005), rather than the test of *Sony Music Entertainment v. Does 1-40*, 326 F. Supp.2d 556 (S.D.N.Y. 2004), supplies the proper legal standard. But in important respects, Public Citizen disagrees with Twitter and its amici about how to apply final prong of the *Dendrite* standard, under which a court balances the rights of the prospective plaintiff and the First Amendment right to speak anonymously.

Twitter and its amici variously argue that, under the *Dendrite* balancing prong, either a party seeking discovery bears the burden of making a showing at the balancing stage, or the mere fact that disclosure would strip the Doe of her anonymity is enough to strike the balance against identification. Properly applied, however, that stage of the analysis—which is reached only after a party claiming that the anonymous speech was wrongful has submitted both legal argument and evidence sufficient to show that it has a tenable basis for claiming a violation of its rights—provides an opportunity for both the party seeking enforcement of a subpoena and the party seeking to preserve anonymity to point to any special considerations that might warrant enforcing or denying enforcement in that the particular facts differ from the standard subpoena case. In addition, this amicus brief explains how the Court should approach this case in light of the interests presented, but does not take any position about how the Court should strike that balance here.

**INTEREST OF AMICUS CURIAE**

Public Citizen, Inc., is a public interest organization based in Washington, D.C. with members in all 50 states. Since its founding in 1971, Public Citizen has encouraged public participation in civic affairs, and has brought and defended numerous cases involving the

First Amendment rights of citizens to participate in civic affairs and public debates.

Of particular relevance here, Public Citizen frequently appears as amicus curiae in cases concerning subpoenas seeking to identify authors of anonymous Internet communications.  The courts in these and other cases have adopted slightly different versions of a standard for deciding such cases that was originally suggested by Public Citizen as amicus curiae and adopted by the New Jersey Appellate Division in *Dendrite v. Doe*, 775 A.2d 756 (N.J. App. 2001).  Other cases where Public Citizen has appeared as amicus curiae to address the test for identifying anonymous speakers include *Gunning v. Doe*, 159 A.3d 1227 (Me. 2017); *Thomas M. Cooley Law School v. Doe 1*, 833 N.W.2d 331 (Mich. App. 2013); *In re Indiana Newspapers*, 963 N.E.2d 534 (Ind. App. 2012); *Mortgage Specialists v. Implode-Explode Heavy Industries*, 999 A.2d 184 (N.H. 2010); *Mobilisa v. Doe*, 170 P.3d 712 (Ariz. App. 2007); *Doe v. Cahill*, 884 A.2d 451 (Del. 2005); and *Fitch v. Doe*, 869 A.2d 722 (Me. 2005).  Public Citizen has also filed briefs as amicus curiae in several cases in this District presenting the *Dendrite*  issue, including *Music Group Macao Com. Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 981 (N.D. Cal. 2015), *Ron Paul 2012 Presidential Campaign Committee v. Doe*, No. 3:12-cv-00240-MEJ (N.D. Cal. Mar. 8, 2012), and *Art of Living v. Doe*, 2011 WL 5444622 (N.D. Cal. Nov. 9, 2011).

**STATEMENT OF THE CASE**

This case arises from postings made on the Twitter account of an anonymous user calling herself "CallMeMoneyBags."[1]  As the name suggests, CallMeMoneyBags tended to post brief and satirical criticisms of wealthy people, with a particular reference to wealthy people in the technology industry.  In October 2020, CallMeMoneyBags turned her attention to Brian Sheth.   CallMeMoneyBags posted six provocative photographs of women along with short quips implying that Sheth was now investing his money in relationships with young women.  On October 29, 2020, a company called Bayside Advisory LLC, which had

---

[1] This brief uses female gender pronouns generically to refer to the anonymous individual whom Bayside charges with copyright infringement, without any intention to suggest the alleged infringer's actual gender.

been formed in Delaware earlier that same month, issued a takedown notice to Twitter, alleging infringement and demanding that the six photos be removed.  Twitter complied with the takedown notice.  Three days later, Bayside registered the copyright in the six photographs, and then filed a request for issuance of a DMCA § 512(h) subpoena to Twitter, seeking to identify CallMeMoneyBags for the purported purpose of enforcing its copyrights.

Twitter moved to quash the subpoena, arguing that the Court should apply the *Highfields Capital* standard.  Twitter argued that the postings constituted fair use, and that disclosure of CallMeMoneyBags' identity could create a serious chilling effect deterring criticism of private-equity capitalists.  Twitter's motion relied, in part, on speculation about whether Sheth himself was behind the takedown and the identification demand.  Bayside opposed the motion to quash, contending that Twitter lacked standing to protect its users' First Amendment interests and that *Sony Music*, rather than *Highfields*, provides the proper legal standard for protecting any First Amendment rights.  Bayside also stated that Sheth "never had any ownership or control interest in the photos and . . . does not own or control any interest in Bayside."  But Bayside did not provide any information about how it acquired the copyrights and from whom, or why it is interested in pursuing a copyright claim despite the fact that it is highly unlikely that it can secure either injunctive relief or an award of damages justifying the considerable expense of actually suing over a copyright claim.

Magistrate Judge Ryu ordered Twitter to provide notice of the pending subpoena to the email address associated with the CallMeMoneyBags Twitter account, and to include copies of the parties' briefing.  CallMeMoneyBags had stopped tweeting last fall, and did not appear to defend her own rights.  Judge Ryu then denied the motion to quash, but neither addressed the issue of standing nor decided what standard governs.  Rather, she concluded that Twitter's argument did not justify quashing the subpoena even under the *Highfields* standard because CallMeMoneyBags had not submitted any evidence about her purpose in posting the photographs or about "the relevant market or absence of market harm."  Consequently, Judge Ryu concluded that the Court could not consider all of the relevant fair use factors.  In addition, because Doe had not provided any "evidence demonstrating that

unmasking . . . could cause harm or injury," she ruled that the Court had no basis for quashing the subpoena based on the balance of the harms.

Twitter has now moved for de novo reconsideration of the Magistrate Judge's Order.

**ARGUMENT**

Public Citizen agrees with Twitter's position on standing, and on the relevant standard. As explained below, however, Twitter is incorrect in arguing that Bayside bears a burden of showing that the balance of equities favors disclosure. Rather, the balancing stage is an opportunity for both sides to introduce evidence or present argument that the balancing process should favor disclosure or continued anonymity. This balance is comparable to the balancing stage on a motion for issuance of an injunction, where either side may be able to show that the balance of equities runs in its favor.

**I.   PLATFORMS HAVE STANDING TO OPPOSE SUBPOENAS TO IDENTIFY THEIR USERS.**

In many cases, a Doe who is accused of wrongful speech is best suited to defend her own First Amendment rights. However, a Doe is often unable to do so, for a variety of reasons. For example, notice to the Doe is not always effective. Moreover, hiring a lawyer to move to quash a subpoena or to litigate a copyright claim can be very expensive.

Courts across the country have recognized the propriety of allowing online platforms to oppose subpoenas based on their users' First Amendment rights, because "a publisher has a strong interest in protecting the right of its users to speak anonymously." *Glassdoor, Inc. v. Superior Court*, 215 Cal. Rptr. 3d 395, 402 (Cal. App. 6th Dist. 2017). In one of the first DMCA subpoena cases, the court allowed Verizon to advocate its customers' First Amendment rights: "The relationship between an Internet service provider and its subscribers is the type of relationship courts have found will ensure that issues will be concrete and sharply presented. Verizon has a vested interest in vigorously protecting its subscribers' First Amendment rights, because a failure to do so could affect Verizon's ability to maintain and broaden its client base." *In re Verizon Internet Services*, 257 F. Supp. 2d 244, 258 (D.D.C. 2003) (internal quotation and citation omitted), *rev'd on other*

*grounds sub nom. Recording Indus. Ass'n of Am. v. Verizon Internet Services*, 351 F.3d 1229 (D.C. Cir. 2003).

Many of the leading Doe subpoena cases have been decided based on First Amendment arguments by the platforms hosting speech. *See Yelp, Inc. v. Hadeed Carpet Cleaning*, 752 S.E.2d 554, 566 (Va. App. 2014), *vacated on other grounds*, 770 S.E.2d 440 (Va. 2015); *Digital Music News v. Superior Court*, 171 Cal. Rptr. 3d 799, 809 n. 12 (Cal. App. 2d Dist. 2014); *In re Indiana Newspapers*, 963 N.E.2d 534 (Ind. App. 2012); *Mortgage Specialists v. Implode-Explode Heavy Indus.*, 999 A.2d 184 (N.H. 2010); *Independent Newspapers, Inc. v. Brodie*, 966 A.2d 432 (Md. 2009). This Court should join the many courts that have recognized platforms' standing to protect the anonymity of their anonymous users.

## II. *HIGHFIELDS CAPITAL* AND *DENDRITE*, NOT *SONY MUSIC*, SUPPLY THE STANDARD GOVERNING ADJUDICATION OF TWITTER'S MOTION TO QUASH.

### A. *Dendrite* and *Highfields Capital* Set the Right Standard.

In many cases in which there are Doe defendants, identifying those defendants is just the first step toward establishing liability for damages, but identification does not inherently deprive the would-be defendant of any legal rights. In contrast, in cases brought over anonymous **speech**, merely compelling disclosure of the speaker's identity can violate her First Amendment rights, because longstanding precedent recognizes that speakers have a First Amendment right to communicate anonymously, so long as they do not violate the law in doing so. *McIntyre v. Ohio Elections Commn.*, 514 U.S. 334, 379 (1995). Thus, a legal proceeding against an anonymous speaker implicates both a plaintiff's right to obtain redress from the perpetrators of alleged civil wrongs, on the one hand, and the right to anonymity of those who have done no wrong, on the other. Because an order compelling disclosure of a speaker's identity, if successful, would irreparably destroy the defendant's First Amendment right to remain anonymous, the court must balance the parties' respective interests.

Identifying the speaker gives the plaintiff immediate relief by enabling the plaintiff

to employ extra-judicial self-help measures to counteract both the speech and the speaker. It also creates a substantial risk of harm to the speaker, who forever loses the right to remain anonymous, not only on the speech at issue, but with respect to **all** speech that the user has ever posted using the same pseudonym.  Once identified, the speaker may be exposed to efforts to punish or deter his or her speech.

For example, an employer might discharge someone whose speech displeases it or threatens an economic relationship with the employer's business, or a public official might use influence to retaliate against the speaker.  A recent book about the line of cases that produced *Dendrite* and its progeny recounts the efforts of Raytheon and other companies that pursued litigation against anonymous online detractors only long enough to get their names, after which they dropped the litigation and fired them.  *See* Kosseff, UNITED STATES OF ANONYMOUS 93-100 (2022).  Similar cases across the country demonstrate that access to identifying information to enable extra-judicial action may, in many cases, be some plaintiffs' only reason for bringing such lawsuits at all.  For example, in *Swiger v. Allegheny Energy*, 2006 WL 1409622 (E.D. Pa. May 19, 2006), a company filed a Doe lawsuit, obtained the identity of an employee who criticized it online, fired the employee, and then dismissed the lawsuit without obtaining any judicial remedy other than identifying its internal critic.  Similarly, in a recent case filed by a law professor against anonymous students who posted some of his exam question online, the professor's lawyer admitted that this client did not want damages from the alleged infringers and might dismiss his suit once he got their names, because his only interest was in bringing them up on school disciplinary charges.  *Berkovitz v. Does*, No. 2:22-cv-01628 (C.D. Cal. Mar. 11, 2022), discussed in Levenson, *Hoping to Identify Cheaters, a Professor Sues His Own Students*, https://www.nytimes.com/022/03/ 17/s/chapman-law-cheating-professor. html

Internet speakers may choose to speak anonymously for a variety of reasons.  They may wish to avoid having their views stereotyped according to presumed racial, gender or other characteristics.  They may be associated with an organization but want to express an opinion of their own, without running the risk that, despite attribution disclaimers, readers

will assume that the group orchestrated the statement.  They may want to say or imply things about themselves that they are unwilling to disclose otherwise.  And they may wish to say things that might make other people angry and stir a desire for retaliation.

The threat to speakers once identified comes not just from the specific plaintiff who sends the subpoenas, but sometimes as well from the torrent of online hatred that sometimes follows online denunciations.  *See* Wilson, *An Online Agitator, a Social Media Exposé and the Fallout in Brooklyn* (New York Times, June 2, 2018), available at https://www.nytimes.com/2018/06/06/nyregion/amymek- mekelburg-huffpost-doxxing.html.  That hatred can lead to real-world consequences, as internet users will often "doxx" the targets of their ire and then communicate with employers or neighbors.  *See* Bowles, *How 'Doxxing' Became a Mainstream Tool in the Culture Wars* (New York Times Aug. 30, 2017), available at https://www.nytimes. com/2017/08/30/technology/doxxing-protests.html, or even bring weaponry to "investigate" claims of wrongdoing.  *E.g.*, *Pizzagate Conspiracy Theory,* https://en. wikipedia.org/wiki/Pizzagate_conspiracy_theory.

Although the internet allows individuals to speak anonymously, it also creates a means to track down those who do.  Anyone who sends an e-mail or visits a website leaves an electronic footprint that **could** start a path that can be traced back to the original sender.  A rule that enabled any company or political figure to identify critics, simply for the asking, could have serious chilling consequences; to avoid those consequences, courts have reasoned that the First Amendment right to speak anonymously requires the development of special procedural protections against such subpoenas.  *E.g.*, Lidsky & Cotter, *Authorship, Audiences and Anonymous Speech*, 82 Notre Dame L. Rev. 1537 (2007).

Thus, "[i]f Internet users could be stripped of that anonymity by a civil subpoena enforced under the liberal rules of civil discovery, this would have a significant chilling effect on Internet communications and thus on basic First Amendment rights."  *Doe v. 2theMart.com*, 140 F. Supp.2d 1088, 1093 (W.D. Wash. 2001).  A judge in this district was among the first to enunciate the need for a protective standard, so that "[p]eople who have committed no wrong should be able to participate online without fear that someone who

wishes to harass or embarrass them can file a frivolous lawsuit and thereby gain the power of the court's order to discover their identities." *Columbia Insurance Co. v. Seescandy.com*, 185 F.R.D. 573 (N.D. Cal. 1999). Indeed, exploiting just such concerns, some lawyers promoting their business bringing suits against Doe defendants have urged companies to bring suit, even if they do not intend to pursue the action to a conclusion, because "[t]he mere filing of the John Doe action will probably slow the postings." Eisenhofer and Liebesman, *Caught by the Net*, 10 Business Law Today No. 1, at 46 (Sept./Oct. 2000).

That chilling effect can be seen at work in this case. Bayside argues that the absence of a chilling effect can be found from the fact that "Money Bags continued to actively tweet and the account continued to gain followers [through] October 11, 2021, well after the 512(h) subpoena process was underway." DN 34, at 8. That date was carefully selected as Bayside's datapoint, however. More tellingly, since Judge Ryu ordered Twitter to give notice, there has not been a single tweet from the CallMeMoneyBags account.

The danger of misuse of process to identify anonymous speakers is particularly great when the proceeding seeks only pre-litigation discovery. In such a case, there is not a complaint that alleges the elements of a cause of action, but simply an expression of a desire to enforce legal rights in the future. For example, in *In re DMCA Subpoena to Reddit*, 441 F. Supp. 3d 875, 882-883 (N.D. Cal. 2020), the anonymous speaker was a reform-minded member of a religious group, the Jehovah's Witnesses, which has a history of expelling members found to have unconventional views, and barring the families and friends of the expelled member from having any further association with that individual. Indeed, the Jehovah's Witnesses have obtained more than seventy DMCA subpoenas to identify dissident members who posted copyrighted works online, usually succeeding by default. But this group has not filed an infringement action against a single one of the alleged infringers identified in that manner. Levy, *Watch Tower's Misuse of Copyright to Suppress Criticism* (Mar. 7, 2022), https://pubcit.typepad.com/clpblog/2022/03/watch-towers-misuse -of-copyright -to-suppress-criticism.html.

Whatever a speaker's reason for choosing anonymity, a rule that makes it too easy to

remove the cloak of anonymity will not only harm that speaker's right but, by chilling speech from those who know their vulnerabilities, deprive the marketplace of ideas of valuable contributions.  Moreover, our legal system ordinarily does not give substantial relief of this sort, even on a preliminary basis, absent proof that the relief is justified because success is likely and the balance of hardships favors the relief.  The challenge for the courts is to develop a test for the identification of anonymous speakers that makes it neither too easy for deliberate wrongdoers to hide behind pseudonyms, nor too easy for a big company or a powerful figure to unmask critics—thus violating their First Amendment right to speak anonymously—simply by filing a complaint that asserts a claim for relief.

Only a compelling interest is sufficient to outweigh the free speech right to remain anonymous.  *McIntyre*, 514 U.S. 334, 379 (1995). To find such a compelling interest, many state[2] and federal[3] courts across the country have applied the *Dendrite* test when faced with a demand for discovery to identify an anonymous Internet speaker so that she may be served with process.  Under that test, a court should:

(1) require notice to the potential defendant and an opportunity to defend her anonymity;

(2) require the plaintiff to specify the statements that allegedly violate her rights;

(3) review the complaint to ensure that it states a cause of action based on each statement and against each defendant;

(4) require the plaintiff to produce evidence supporting each element of her claims; and finally

---

[2] *Doe v. Coleman*, 497 S.W.3d 740, 747 (Ky. 2016); *In re Indiana Newspapers*, 963 N.E.2d 534 (Ind. App. 2012);  *Pilchesky v. Gatelli*, 12 A.3d 430 (Pa. Super. 2011); *Mortgage Specialists v. Implode-Explode Heavy Indus.*, 999 A.2d 184 (N.H. 2010); *Independent Newspapers v. Brodie*, 966 A.2d 432, 439 (Md. 2009); *Mobilisa v. Doe*, 170 P.3d 712 (Ariz. App. 2007)

[3] *Koch Industries v. Does*, 2011 WL 1775765 (D. Utah May 9, 2011); *Fedor v. Doe*, 2011 WL 1629572 (D. Nev., April 27, 2011); *Salehoo v. Doe*, 722 F. Supp.2d 1210 (W.D. Wash. 2010).

(5) balance the equities, weighing the potential harm to the plaintiff if the subpoena is not enforced against the harm to the defendant from losing her right to remain anonymous, in light of the strength of the plaintiff's evidence of wrongdoing. *Dendrite v. Doe*, 775 A.2d 756, 760-761 (N.J. App. 2001).

Applying this approach, a court can thus ensure that a plaintiff does not obtain important relief—identification of anonymous critics—and that the defendant is not denied important First Amendment rights unless the plaintiff has a realistic chance of success on the merits.[4]

Several judges in this District have taken this approach. *See Music Group Macao,* 82 F. Supp. 3d 979; *USA Technologies v. Doe*, 2010 WL 1980242 (N.D. Cal. May 17, 2010); *Art of Living* 2011 WL 5444622*; Highfields Capital,* 385 F. Supp.2d 969.

Although the test is often described as depending on whether the plaintiff can put forth legal argument and evidence supporting the elements of its prima facie case, courts consider as well whether the plaintiff can surmount defenses that may be apparent on the face of a well-pleaded complaint, such as the statute of limitations, *Brodie*, 966 A.2d at 441, 443, res judicata, *Gunning v. Doe,* 159 A.3d 1227, 1234 (Me. 2017), or fair use. *Art of Living,* 2011 WL 5444622 at *6. *See also Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 530 (9th Cir. 2008) (deciding fair use defense before discovery, albeit not in the Doe context); *In re DMCA Sec. 512(h) Subp. to YouTube (Google, Inc.)*, 2022 WL 160270, at *5 (S.D.N.Y. Jan. 18, 2022) (deciding fair use defense before discovery in rejecting a DMCA subpoena).

## B.  There Is No Broad "Copyright Exception" to the *Dendrite* / *Highfields Capital* Standard.

Pointing to *Sony Music* and *Arista Records v. Doe 3*, 604 F.3d 110 (2d Cir. 2010), Bayside contends that there is a copyright exception to the *Highfields* and *Dendrite* rule. But *Art of Living*, a decision  in this District, and *Signature Management Team v. Doe*, 876 F.3d

---

[4] Some states have accepted the *Dendrite* test without a final balancing stage. *E.g.*, *Doe v.Cahiill*, 884 A.2d 451 (Del. 2005).

831, 836 (6th Cir. 2017), show the opposite.  In both cases, the anonymous defendants had used copyrighted texts to illustrate their criticisms of the copyright owners, and it was apparent that the plaintiffs sought unmasking because of anger at the alleged infringers' **speech**, not concern about lost markets for their works or others profiting from the infringement.  And in both cases, the defendants faced a significant possibility of suffering from the imposition of extra-judicial self-help remedies if they were identified.  *See*, *e.g.*, *Signature Mgt. Team v. Doe*, 323 F. Supp. 3d 954, 960 (E.D. Mich. 2018).

The *Sony Music* standard was developed in response to a very different sort of anonymous speech, and a different sort of intellectual property claim.  In *Sony Music*, a group of seventeen record companies sued 40 anonymous internet users whose Internet Protocol addresses had been discovered participating in peer-to-peer music file-sharing networks where musical recordings owned by the plaintiff companies had been made available for download.  Arguing that the process of making selected musical recordings available for download was speech—the communication of the music, as well as an expression of affinity for the music—one of the Doe defendants, along with amici, urged that the plaintiff companies should not be allowed to use government power to identify the anonymous speakers unless they presented evidence of infringement by each of the 40 defendants.

The district judge held that the alleged infringing conduct "qualified as speech, but only to a degree," and hence that it is "not . . . entitled to the broadest protection of the First Amendment, . . . [but] is still entitled to some level of First Amendment protection . . . . That protection is limited, however, and is subject to other considerations."  *Sony Music*, 326 F Supp.2d at 564.  Consequently, instead of applying the *Dendrite* standard, the district court identified five factors that should be weighed to decide whether the need for disclosure outweighed the First Amendment interests at work in that case, "(1) a concrete showing of a prima facie claim of actionable harm; (2) specificity of the discovery request; (3) the absence of alternative means to obtain the subpoenaed information; (4) a central need for the subpoenaed information to advance the claim; and (5) the party's expectation of

privacy." *Id.* at 565 (citations omitted).

In the eighteen years since *Sony Music*, its test has gained wide acceptance among federal courts as the proper standard for deciding a particular, narrow set of cases: those in which copyright owners sued anonymous internet users alleging infringement of copyrights in musical recordings and movies via peer to peer networks or BitTorrent swarms.  But among the hundreds of district court cases where *Sony Music* has been cited,[5] not a single court outside the Second Circuit has used *Sony Music* standard to decide whether to identify defendants alleged to have engaged in actionable speech for any reason other than copyright cases involving mass downloading.  Applying the *Dendrite* approach over the *Sony Music* standard in cases involving expressive speech, including copyright cases, reflects that *Sony Music* sets an unduly pro-plaintiff standard that reflects its origins in a context in which a plaintiff's enforcement interests are usually at its apogee, and the defendant's speech interest is at its nadir.  The *Sony Music* standard makes the existence of a prima facie case that speech was actionable only one factor, to be weighed against four other factors, so that, in theory, even a plaintiff that has failed to state a prima facie case could be held entitled to identify an anonymous speaker because the lack of merit to the claim could be outweighed by the other four factors.  The *Dendrite* test, on the other hand, by requiring plaintiffs to surmount three separate prongs related to the merits of the plaintiff's claim that the anonymous speech was actionable, followed by a consideration of the overall equities, thereby focuses the court's attention on the likelihood that plaintiff has a valid claim that it should be able to pursue **despite the cost to the defendant's First Amendment right to speak anonymously**.

Moreover, in the way that the other four factors were assessed in *Sony Music*, and are generally assessed by courts in the mass downloading cases, each of the four factors will almost always favor disclosure even when applied to copyright cases involving expressive speech like this one, and to defamation and similar cases as well.  After all, when plaintiff

_____

[5] A citation check on Westlaw on March 23, 2022 found 382 such cases.

seeks to identify Doe defendants who have engaged in speech using pseudonyms, or have placed their allegedly actionable speech on internet platforms that require registration or that retain IP addresses for all such uses, the plaintiff will always be able to specify the pseudonym or statement whose author the plaintiff seeks to identify, thus satisfying the second factor. The plaintiff will also be able to show that the platform hosting the allegedly actionable speech has refused to provide identifying information except in response to a valid court order, thus satisfying the third factor. The plaintiff will also generally be able to argue that it needs to identify the speaker either to serve it with process, or to obtain discovery from the speaker, such as by oral deposition, thus meeting the fourth factor.

Moreover, *Sony Music* decided that the anonymous internet users in that case had a minimal expectation of privacy because their ISP's terms of service forbade the use of the service for the transmission of material "in violation of any applicable law . . . including copyright . . ." and notified users that the ISP could disclose information as needed to satisfy requests from a government body. In fact, almost all ISP's have terms of service that forbid violation of the rights of third parties, including intellectual property and defamation, and ISP's typically advise users that the ISP reserves the right to honor valid court process. As a result, if the *Sony Music* standard were to be applied to all anonymous speech cases, a plaintiff who has shown a prima facie basis for any sort of claim based on expressive speech will be able to show that the fifth *Sony Music* factor favors disclosure.

Thus, when applied to cases involving expressing speech (as opposed to downloading), each of the final four factors in the *Sony Music* standard will typically favor disclosure, especially in a case where the plaintiff has made a prima facie showing. Thus, these factors provide a one-way ratchet in favor of disclosure; they do not aid courts in differentiating cases in which disclosure should be ordered from those in which it should be denied. Moreover, because the five factors are balanced against each other, then, in contrast to the flexible standards governing motions for issuance of a preliminary injunction, *Ramos v. Wolf*, 975 F.3d 872, 887 (9th Cir. 2020), a plaintiff that failed to make a showing on the prima facie case factor potentially could nevertheless succeed in compelling

identification of the anonymous speakers.  This disclosure-friendly standard does not adequately protect the First Amendment right to speak anonymously in cases, like this one, that involve expressive speech rather than merely sharing or mass-downloading of music or movies.

Thus, the Court should apply the *Dendrite* standard, not the *Sony Music* standard, in deciding whether to quash Bayside's DMCA subpoena.

## III.   NEITHER SIDE SHOULD HAVE A BURDEN OF PROOF AT THE BALANCING STAGE OF THE ANALYSIS.

The Magistrate Judge faulted CallMeMoneyBags for failing to make a showing at the balancing stage of the *Highfields Capital* analysis, holding that because the anonymous target of discovery had not taken up her invitation to appear and make a showing on the balancing of interests, the Court was required to enforce the subpoena.    DN 21, at 9. Bayside endorses this approach, DN 34 at 18, but Twitter and its supporting amici argue that, even without any case-specific showing, balancing necessarily favors the Doe because it is self-evident that disclosure would result in the loss of the First Amendment right to speak anonymously and in Doe having to bear the burden of defending against a lawsuit. DN 22, at 9; DN 29-1, at 12-13.  Twitter's amici make an additional argument: that the burden always rests on the plaintiff or would-be plaintiff that seeks to identify the anonymous speaker to make a showing that the balance of interests favors disclosure.  DN 29-1, at 2, 8, 12.  Neither of the parties, nor the other amicus brief, has the analysis right.

In *Dendrite*, the court described each of the initial prongs of the required analysis as requiring actions or showings on the part of the plaintiff—the action of ensuring notice, the identification of the allegedly actionable words, a showing of a valid claim, and the presentation of prima facie evidence.  775 A.2d at 760.  The court did not, however, require a showing by either side at the balancing stage in order to be able to prevent or secure identification:

> Finally, assuming the court concludes that the plaintiff has presented a prima facie cause of action, the court must balance the defendant's First Amendment right of anonymous free speech against the strength of the prima facie case presented  and  the  necessity  for  the  disclosure  of  the  **761 anonymous

1    defendant's identity to allow the plaintiff to properly proceed.

2        The application of these procedures and standards must be undertaken and
3    analyzed on a case-by-case basis. The guiding principle is a result based on a
     meaningful analysis and a proper balancing of the equities and rights at issue.

4    775 A.2d at 760–761.

5    Similarly, in adopting the *Dendrite* approach, *Highfields* demanded a showing by the

6    plaintiff of the legal and evidentiary basis for its claims.  385 F. Supp. 2d at 975-976.  But

7    describing the balancing stage as the court's own responsibility, the court did not place a

8    burden on one side or the other to show that the balance was in its favor:

9        The court proceeds to the second component of the test if, but only if, the
     plaintiff makes an evidentiary showing sufficient to satisfy the court in the first
10   component of the test. If reached, the second component of the test requires the
     court to assess and compare the magnitude of the harms that would be caused
11   to the competing interests by a ruling in favor of plaintiff and by a ruling in
     favor of defendant. If, after such an assessment, the court concludes that
12   enforcing the subpoena would cause relatively little harm to the defendant's
     First Amendment and privacy rights and that its issuance is necessary to enable
13   plaintiff to protect against or remedy serious wrongs, the court would deny the
     motion to quash.

14   385 F. Supp. 2d at 976.

15   The various other courts that have adopted *Dendrite* as the governing standard for subpoena

16   to identify anonymous defendants have described the balancing stage in similar terms.  *E.g.,*

17   *Doe v. Coleman*, 497 S.W.3d at 752; *Indiana Newspapers*, 963 N.E.2d at 552; *Mortgage*

18   *Specialists*, 999 A.2d at 193; *Pilchesky,* 12 A.3d 430 at 445; *Brodie*, 966 A.2d at 457 (Md.

19   2009).  Only the Arizona Court of Appeals in *Mobilisa* put a burden on the proponent of

20   disclosure, analogizing to the balancing of interests on which issuance of a preliminary

21   injunction turns.  But even then, the burden was not a burden of **producing evidence** to

22   support its position on the balancing, but rather a burden of **persuading** the court that "a

23   balance of the parties' competing interests favors disclosure." 170 P.3d at 721.

24       Although the analogy to the preliminary injunction is a sensible one, in that discovery

25   is an equitable function, and it is appropriate for a court to consider the situation as one in

26   which the equities must be balanced, the original *Dendrite* formulation remains the best one.

27   And, regardless of whether the parties make useful arguments about balancing, if the

28

plaintiff meets its burden on each of the first four prongs of the test, the Court should conduct the *Dendrite* balancing as best it can.  *See*, *e.g.*, *Pilchesky,* 12 A.3d at 446  ("the reviewing court **must** conduct the *Dendrite* balancing test. The court **must expressly balance** the defendant's First Amendment rights against the strength of the plaintiff's prima facie case .") (emphasis added).

However, the mere facts that loss of anonymity constitutes loss of a First Amendment right, and that identification could force CallMeMoneyBags to bear the burden of defending against a lawsuit, are not alone a sufficient basis for concluding that the balance of equities favors anonymity.  These considerations are always present at the balancing stage, and hence they do not necessarily assist a court in deciding whether disclosure should be ordered or withheld.  The function of the balancing stage is to enable a court to consider whether there are any aspects of the case before it that distinguish it from the run of Doe subpoena cases.  On the current record in this particular case, the balancing supports neither party's position.

### A.    Possible Considerations of the Plaintiff's Needs to Enforce.

Looking first to the interests on the putative plaintiff's side, Twitter and its amici appear to assume, despite Bayside's carefully worded denials, that Brian Sheth is behind this copyright proceeding.  If that is so, the invocation of copyright claims for the purpose of suppressing criticism could amount to copyright misuse which, in turn could torpedo a copyright lawsuit if Bayside were to file one.  *See Video Pipeline v. Buena Vista Home Ent.*, 342 F.3d 191, 205 (3d Cir. 2003); *Ty, Inc. v. Publications Intern. Ltd.*, 292 F.3d 512, 520 (7th Cir. 2002).  But if it was a woman in one of the photographs, objecting to the public display of otherwise unpublished photographs, who is actually behind the copyright proceeding, a court might deem the equities on the plaintiff's side to be strong.

The Magistrate Judge faulted the Doe for not stepping forward to provide evidence of the need for anonymity, but Bayside is equally at fault for not presenting any information allowing the Court to understand its interests in pursuing this subpoena.  Indeed, it is hard to see how the pursuit of this litigation could be economically rational, considering that the

possible monetary remedies cannot justify the attorney fees that Bayside (or the interest behind Bayside) must be expending. After all, because the infringement both began and ended before the copyright was registered, there can be no claim for statutory damages or attorney fees, 17 U.S.C. § 412(1), and there has been no indication that the lost license fees for the six photographs are substantial enough to warrant an award of more than minimal actual damages.

Moreover, because Bayside Advisory LLC was not formed until the same month that the photos were posted on Twitter,[6] and because Bayside had never registered any copyrights until it registered its copyright in these six photos,[7] it appears possible that Bayside was created for the purpose of allowing some unknown person to pursue a copyright claim to identify the poster without disclosure of the identity of the real party in interest.  If the Court believes that further information on balancing is needed to decide the outcome of the *Dendrite*  test, it may, in the exercise of its equitable discretion, consider requiring Bayside to identify the real party in interest, or allowing Twitter to take discovery in aid of its opposition.  If Bayside refuses to provide such information, the Court could consider whether to follow the decision of the Virginia Supreme Court in *America Online v. Anonymous Publicly Traded Co.*, 542 S.E.2d 377, 385 (Va. 2001), which refused to allow an anonymous plaintiff to pursue a subpoena to identify an anonymous online poster unless the anonymous plaintiff provided a persuasive explanation for its need to conceal its identity.

**B.     Possible Considerations Favoring Anonymity for the Doe**.

Turning to the interests of the online anonymous Twitter user, the Magistrate Judge was wrong to suggest that the mere fact that CallMeMoneyBags has not appeared in the case to explain the need for anonymity is alone sufficient to warrant disregarding the interest in

---

[6] Based on a search of the California Secretary of State's web site, filing number 202104010564.

[7] Based on a search of the publicly accessible copyright registration database.

anonymity.   The need for confidentiality and the danger that could flow from being identified will be obvious in many cases, without any showing by or on behalf of the Doe.

For example, in many cases, such as those involving the employer-review site Glassdoor, where an employer is pursuing identification of a current employee, or a former employee still working in the same industry, there is an obvious danger of extrajudicial retaliation if the anonymous speaker's identity is revealed.   Cases involving students pursued by their professors or by their schools also involve an obvious the risk of consequences from disclosure, even without a showing by or on behalf of the Doe.   The *Berkovitz* case discussed above is one where the plaintiff himself made no secret that he hoped to use the subpoena to  enable extrajudicial remedies.   *See also Thomas Cooley Law School*, 833 N.W.2d 331, where a law school was seeking to identify a former student who was posting strident criticisms on a blog entitled "Thomas Cooley Law School Scam."   Law students depend on their schools for favorable bar references.

The special equitable need for anonymity may also be apparent in cases involving anonymous reviews of a business that reveal sensitive personal information that would be embarrassing if tied to an individual.   For example, if a review on Yelp or Avvo pertained to claimed mistreatment by a lawyer and described some circumstances involving litigation over embarrassing issues, or if  a review on Yelp, RateMD or ZocDoc discussed treatment by a gynecologist or plastic surgeon, the disclosure of the reviewer's name could alone tie the reviewer to embarrassing personal details.   Even if the post in question does not contain personally embarrassing information, other statements made using the same pseudonym may pose a significant danger of personal embarrassment or, indeed, might expose the anonymous speaker to retaliation by someone other than the plaintiff.

In this case, however, the record does not include any facts or circumstances implying particular risks to the Doe. If the Court concludes that further information on balancing is needed to enable it to determine whether the *Dendrite* test supports granting or denying the motion to quash, it may want to consider providing Twitter or CallMeMoneyBags with a further opportunity to present information showing particular risks—if any—posed by

disclosure in this case.  And, if CallMeMoneyBags has been deterred from participating by lack of ability to afford counsel, the Court might consider referring such representation to its pro bono panel.

**CONCLUSION**

The Court should allow Twitter to litigate its users' First Amendment rights, should use the *Dendrite* balancing standard, and should take the foregoing concerns about how the balancing standard should work into account in deciding whether to enforce the subpoena.

Respectfully submitted,

/s/ Paul Alan Levy
Paul Alan Levy
Public Citizen Litigation Group

/s/ Phillip R.Malone
California Bar No. 163969
JUELSGAARD INTELLECTUAL
PROPERTY AND INNOVATION CLINIC

April 4, 2022

Attorneys for Public Citizen