Julie E. Schwartz, CA Bar No. 260624
JSchwartz@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone:   206.359.8000
Facsimile:   206.359.9000

Hayden M. Schottlaender, TX Bar No. 24098391
(Admitted *pro hac vice*)
HSchottlaender@perkinscoie.com
PERKINS COIE LLP
500 N. Akard Street, Suite 3300
Dallas, Texas 75201
Telephone:   214.965.7700
Facsimile:   214.965.7799

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

IN RE DMCA § 512(h) SUBPOENA TO
TWITTER, INC.,

Case No. 4:20-mc-80214-DMR

**TWITTER'S REPLY IN SUPPORT OF ITS
MOTION FOR DE NOVO DETERMINATION
OF DISPOSITIVE MATTER REFERRED TO
MAGISTRATE JUDGE**

HEARING DATE: MAY 12, 2022

HEARING TIME: 10:00 A.M. (VIA ZOOM)

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ..................................................................................................ii

TABLE OF AUTHORITIES ........................................................................................... iii

I. INTRODUCTION ........................................................................................................1

II. REPLY .........................................................................................................................3

    A.   Twitter has standing to defend its users from unconstitutional attempts to unmask their identities. ..........................................................3

    B.   Twitter is statutorily permitted to raise fair use in response to a 512(h) subpoena. ...............................................................................5

    C.   Twitter's Motion to Quash was timely filed. ............................................7

    D.   Twitter has established that the Tweets are sufficiently transformative so as to constitute fair use. ................................................8

        1.   The Court can evaluate fair use based on the Tweets alone. .....................................................................................8

        2.   Bayside misapprehends the "transformation" component of fair use analysis. ...............................................................8

            a.   Bayside lacks authority to support its position that "candid" photographs are legally indistinguishable from non-candid photographs. ................................9

            b.   The Ninth Circuit has expressly rejected Bayside's argument that, to be transformative, a derivative work must comment on or criticize the original work. ...................................................................10

            c.   Bayside's juxtaposition of parody and satire is irrelevant to this dispute. ...................................................10

    E.   The balance of harms weighs in favor of protecting the user. ...............11

III. CONCLUSION...........................................................................................................13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Dhillon v. Does 1-10,*
  No. C 13-01465, 2014 WL 722592 (N.D. Cal. Feb. 25, 2014) ................................ 15

*East Coast Test Prep LLC v. Allnurses.com, Inc.,*
  167 F. Supp. 3d 1018 (D. Minn. 2016) ...................................................... 8

*Franco v. Alorica, Inc.,*
  No. 2:20-cv-05035, 2021 WL 6104816 (C.D. Cal. Nov. 5, 2021) ...................... 12, 13

*Friedman v. Old Republic Home Prot. Co.,*
  No. SACV 12-1833 AG (OPx), 2014 WL 12845131 (C.D. Cal. June 24,
  2014) .......................................................................................... 12

*Hilton v. Hallmark Cards,*
  599 F.3d 894 (9th Cir. 2010) ................................................................ 16

*In re Charter Comms., Inc., Subpoena Enforcement Matter,*
  393 F.3d 771 (8th Cir. 2005) ................................................................ 11

*In re DMCA Section 512(h) Subpoena to YouTube (Google, Inc.),*
  – F. Supp. 3d –, No. 7:18-mc-00268 (NSR), 2022 WL 160270
  (S.D.N.Y. Jan. 18, 2022) ..................................................................... 16

*In re DMCA Subpoena to Reddit, Inc.,*
  441 F. Supp. 3d 875 (N.D. Cal. 2020) ..................................................... 16

*In re Grand Jury Subpoena No. 16-03-217,*
  875 F.3d 1179 (9th Cir. 2017) ................................................................ 9

*In re Verizon Internet Svcs., Inc.,*
  257 F. Supp. 2d 244 (D.D.C. 2003) ...................................................... 8, 9

*Katz v. Google Inc.,*
  802 F.3d 1178 (11th Cir. 2015) ............................................................. 14

*Sedgwick Claims Mgmt. Svcs., Inc. v. Delsman,*
  No. C 09-1468 SBA, 2009 WL 2157573 (N.D. Cal. July 17, 2009) ................... 14

*Seltzer v. Green Day, Inc.,*
  725 F. 3d 1170 (9th Cir. 2013) .............................................................. 15

*Signature Mgmt. Team, LLC v. Automattic, Inc.,*
  941 F. Supp. 2d 1145 (N.D. Cal. 2013)................................................. 10, 11

*Yelp Inc. v. Super. Ct.,*
  17 Cal. App. 5th 1 (Cal. Ct. App. 2017).................................................. 7

**STATUTES**

17 U.S.C. § 107 ......................................................................................... 16

**RULES**

Fed. R. Civ. P. 45(d) ................................................................................. 12

**OTHER AUTHORITIES**

Antoine Gara, *Vista Co-Founder Brian Sheth And the Battle Over
  Salacious Twitter Account @CallMeMoneyBags*, Forbes Editors' Pick
  (Feb. 8, 2021),
  https://www.forbes.com/sites/antoinegara/2021/02/08/exclusive-vista-
  co-founder-brian-sheth-tied-to-battle-over-salacious-twitter-account-
  callmemoneybags/?sh=564ef262f497 ................................................. 17

Mike Masnick, *ACLU & EFF Step Up To Tell Court You Don't Get To
  Expose An Anonymous Tweeter With A Sketchy Copyright Claim*,
  Techdirt (Feb. 24, 2022), https://www.techdirt.com/2022/02/24/aclu-
  eff-step-up-to-tell-court-you-dont-get-to-expose-anonymous-tweeter-
  with-sketchy-copyright-claim/ ............................................................ 17

Wendy Davis, *Watchdogs Blast 'Deeply Flawed' Order Unmasking
  'CallMeMoneyBags'*, Media Post (Feb. 22, 2022),
  https://www.mediapost.com/publications/article/371401/watchdogs-
  blast-deeply-flawed-order-unmasking-c.html..................................... 17

# I. INTRODUCTION

Twitter respectfully requests that the Court vacate the Order, quash the subpoena, and deny Bayside's motion to compel.

In its Opposition, Bayside attempts to erect a number of barriers to prevent Twitter from raising important issues under the First Amendment on behalf of its users. First, it argues that Twitter lacks standing to protect its users from First Amendment encroachments. But the Ninth Circuit, and every other authority of which Twitter is aware, disagrees. Twitter has standing here because the challenge benefits society at large, because the interests of Twitter and its users on this question are aligned, and because Twitter is directly affected by this now very public unmasking.

Second, Bayside and its amici take the bold position that Section 512(h) statutorily prohibits providers from seeking any judicial review of such subpoenas *at all*. That argument would render Section 512(h) unconstitutional, and this precise argument has already been rejected by another court in this District—the only court to have weighed in upon the issue.

Third, Bayside argues that Twitter's motion to quash was untimely, even though it timely served written objections. Bayside's argument boils down to the contention that a subpoena recipient that has objected to a subpoena cannot thereafter seek judicial review, even (as here), where it is being threatened with an imminent motion to compel and the prospect of sanctions. Instead, a subpoena recipient must simply await a motion to compel. This argument is entirely unsupported.

Setting aside these baseless procedural arguments, Bayside's Opposition raises only limited substantive issues warranting reply. One such issue is the "transformation" component of fair use. The Tweets here use Bayside's allegedly copyrighted images to comment on Brian Sheth. Because Bayside ostensibly did not

copyright the photographs in order to similarly comment on Brian Sheth,[1] the Tweets are transformative fair uses. In its Opposition, Bayside misstates fundamental elements of the transformation analysis and even goes so far as to advance a legal theory expressly rejected by the Ninth Circuit (in a case cited elsewhere in Bayside's Opposition).

Another substantive issue, as identified by the amicus brief submitted by Public Citizen[2] and as outlined above, is each party's submissions of arguments and information relevant to the balancing test required here.

Twitter has explained its interest in defending this user's anonymity: preventing free speech from being chilled on its platform. Twitter is not alone in its concern regarding unmasking; that chilling threat has been recognized by dozens of prior courts, amici, news organizations, legal commentators, and the public. That chilling threat is self-evident with respect to critical commentary generally. And here, that threat may be evident directly from the user that Bayside is targeting. Pursuant to a court order in this case, Twitter notified the affected user of the subpoena and there has been no apparent public activity by the account since that notice was sent.

Conversely, Bayside has failed to disclose any information or evidence upon which the Court could possibly resolve the requisite balancing test in Bayside's favor. Indeed, after over a year of litigation and numerous briefs filed by Twitter, Bayside, and now several amici, the questions of "who is Bayside?" and "why does Bayside want to sue a Twitter account for posting candid snapshots of unknown women?" are left unanswered. As a result, Bayside has not set forth any factors to tip the balance in its favor, despite being singularly able to do so.

---

[1] Opp., at 2 ("Bayside…acquires and licenses photographs for commercial exploitation.").
[2] Referred to throughout as the "Public Citizen Brief."

## II.  REPLY

### A.  Twitter has standing to defend its users from unconstitutional attempts to unmask their identities.

Contrary to Bayside's argument, the law is clear that Twitter has standing to raise the First Amendment rights of its users in opposition to unmasking subpoenas. Indeed, Bayside fails to mention the numerous cases around the country rejecting its position and holding that a platform like Twitter (in fact, expressly including Twitter) has standing to assert its users' First Amendment rights.

The amicus briefs submitted by EFF, ACLU, and Public Citizen identify several such cases for the Court. *See* EFF/ACLU Brief, at 14 (citing, *inter alia*, *McVicker v. King*, 266 F.R.D. 92, 95-96 (W.D. Penn. 2010) ("The trend among courts . . . is to hold that entities such as . . . website hosts may, under the principle of *jus tertii* standing, assert the rights of their . . .subscribers.")); Public Citizen Brief, at 5 (citing, *inter alia*, *Digital Music News v. Super. Ct.*, 171 Cal. Rptr. 3d 799, 809 n.12 (2014) ("Digital possesses standing to assert Visitor's constitutional rights")). And there are many more beyond that. *See, e.g., Yelp Inc. v. Super. Ct.*, 17 Cal. App. 5th 1, 13 (Cal. Ct. App. 2017) (reviewing the standing issue in great detail before holding as a matter of law that "a website host such as Yelp has standing to assert the First Amendment rights of persons who post reviews anonymously on its site, as against an effort to compel Yelp to identify those persons."); *East Coast Test Prep LLC v. Allnurses.com, Inc.*, 167 F. Supp. 3d 1018, 1022-23 (D. Minn. 2016) (holding that website operator had third-party standing to raise First Amendment protections on behalf of its anonymous users).

Twitter and each of the amici supporting Twitter have directed the Court to *In re Verizon Internet Svcs., Inc.*, 257 F. Supp. 2d 244 (D.D.C. 2003), *rev'd on other grounds sub nom. Recording Indus. Ass'n of Am. v. Verizon Internet Svcs.*, 351 F. 3d 1229 (D.C. Cir. 2003), a case cited repeatedly by Bayside across its briefs. There,

Verizon asserted a First Amendment challenge to Section 512(h) on behalf of its users.[3] *Id.* at 246. In holding that Verizon had standing to do so, that Court recognized that: (1) this type of challenge is brought "for the benefit of society–to prevent . . . chilling the First Amendment rights of other parties not before the court[;]"[4] (2) that a provider is "an adequate advocate to assert the First Amendment rights of its subscribers" because the provider-user relationship is a "type of relationship courts have found will ensure that issues will be 'concretely and sharply presented;'" and (3) that a provider has a vested interest in protecting their users' First Amendment rights because "a failure to do so could affect [their] ability to maintain and broaden [their] client base." *Id.* at 258.

The Ninth Circuit has also held that Glassdoor, a website operator that likewise facilitates anonymous speech, had standing to assert its users' First Amendment rights based on its relationship to its users and judicial concern that those users would face "genuine obstacles" in asserting their own rights to anonymity. *In re Grand Jury Subpoena No. 16-03-217*, 875 F.3d 1179, 1183 n.2 (9th Cir. 2017). Bayside attempts to distinguish that binding authority by suggesting that Twitter should have to provide, in each case, repetitive and duplicative evidence to convince each court of the very same standing proposition. That exercise would be entirely unnecessary. As *Verizon* made clear, such standing is cognizable as a matter of law. *See generally Verizon*, 257 F. Supp. 2d at 258. And, to hold otherwise would risk grave harms to the First Amendment more broadly. *See generally*, EFF/ACLU Brief, at 15. But, should the Court require additional briefing or evidence as to Twitter's standing, Twitter is prepared to submit any such materials.

---

[3] For this reason, *Verizon* is relevant only with respect to standing. Twitter takes no position here on whether Section 512(h) is broadly unconstitutional; Twitter argues only that a particular user warrants First Amendment protection as limited to these facts.

[4] Quoting *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 958 (1984).

Bayside's own standing analysis fails to cite a single authority holding that an online platform does *not* have standing to raise the First Amendment rights of its users. The closest that Bayside comes is by lengthy illustration of *Sines v. Kessler*, a case that Bayside itself distinguishes as being about one *user* having standing to raise objections on behalf of *other users*. Opp., at 7 (citing *Sines v. Kessler*, No. 18-mc-80080-JCS, 2018 WL 3730434 (N.D. Cal. Aug. 6, 2018)). *Sines* is inapposite.

## B.   Twitter is statutorily permitted to raise fair use in response to a 512(h) subpoena.

Bayside and the Doniger Amici[5] are mistaken that under Section 512(h)(5), Twitter may not "challenge a subpoena served on it pursuant to that section at all." Doniger Brief, at 8; Opp., at 10-11.[6] Specifically, they point to the portion of Section 512(h)(5) that provides that a recipient of a subpoena "shall expeditiously disclose . . . the information required by the subpoena, *notwithstanding any other provision of law*." (emphasis added).

This precise argument has already been rejected by authority upon which Bayside relies. Opp. at 18 (*Signature Mgmt. Team, LLC v. Automattic, Inc.*, 941 F. Supp. 2d 1145 (N.D. Cal. 2013)). In *Automattic*, another court in this District recognized that Section 512(h) expressly incorporates the Federal Rules of Civil

---

[5] A group of five "creator rights organizations" has submitted an amicus brief (without leave) in this case through counsel Stephen M. Doniger. Mr. Doniger is counsel for plaintiff in *Stross v. Twitter, Inc., et al*, 2:21-cv-08360-SVW-E, copyright litigation currently pending in the United States District Court for the Central District of California.

[6] Bayside also argues that because Section 512(h) permits it to unmask an "alleged infringer" rather than merely "an infringer," fair use cannot be considered in adjudicating a 512(h) subpoena. But the statute uses "alleged" because the requesting party could plainly not yet have proven any infringement at the time of the subpoena's issuance. In other words, without that modifier, a copyright holder could *never* issue a 512(h) subpoena. The entire purpose of this litigation is to establish that "alleged" is not a limitation on Section 512(h)'s power, and that the First Amendment must operate to constrain copyright holders' investigations.

Procedure, which itself "clearly anticipates the assertion of defenses to production." *Id.* at 1152 (citing 17 U.S.C. § 512(h)(6) ("the remedies for noncompliance with the subpoena, shall be governed to the greatest extent practicable by those provisions of the Federal Rules of Civil Procedure governing the issuance, service, and enforcement of a subpoena duces tecum")). That court collected cases from around the country in which courts have reached "the merits of [a] motion to quash without casting any doubt on the validity of the procedure." *Id.* at 1153. The court thus concluded that "constitutional objections to a DMCA subpoena may properly be raised in a motion to quash," *id.*, and this Court should not depart from that holding.

By contrast, the Doniger Amici offer only nebulous authority regarding Congressional intent in legislative drafting to support their argument. Doniger Brief, at 9. And Bayside points to *Lenz*, which interprets a different phrase ("by the law"), in a different context (content removals), for purposes of adjudicating a different type of dispute (a lawsuit by a purported infringer). Opp., at 10-11.

Adopting Bayside's interpretation would render Section 512(h) unconstitutional. Section 512(h) creates a unique statutory scheme whereby "Congress, via statute, compels a clerk of a court to issue a subpoena, thereby invoking the court's power." *In re Charter Comms., Inc., Subpoena Enforcement Matter*, 393 F.3d 771, 777-78 (8th Cir. 2005). That alone "may unconstitutionally invade the power of the judiciary." *Id.* The only constitutional safety valve for Section 512(h) is the opportunity for judicial review after the subpoena's issuance. Otherwise, copyright organizations could simply compel the judiciary to issue subpoenas without any opportunity for the recipient of the subpoena to seek review. This would both violate the constitutional rights of subpoena recipients and generate plain abuses of process. *See Automattic*, 941 F. Supp. at 1153 ("At minimum, TEAM's interpretation raises grave doubts as to the constitutionality of the DMCA subpoena provision.").

1

**C.    Twitter's Motion to Quash was timely filed.**

2

Bayside repeats its unsupported theory that Twitter untimely filed its Motion,

3

despite having timely served written objections as permitted by the Federal Rules of

4

Civil Procedure. Opp., at 19-20. Twitter has already fully responded to this

5

argument in its Reply in Support of Its Motion to Quash § II.D and adopts here in

6

full each of the arguments it made there.

7

In summary, the Federal Rules establish a deadline by which a subpoena

8

recipient must provide a "written objection" to that subpoena. Fed. R. Civ. P.

9

45(d)(2)(B). There is no question here that Twitter met that deadline. Instead,

10

Bayside attempts to invent a *new* deadline under the Rules by which time a

11

subpoena recipient must move to quash, even if it has already timely served written

12

objections. *See* Fed. R. Civ. P. 45(d)(3)(A) (providing only that a motion to quash

13

must be made "timely"). Twitter submits that where a subpoena recipient has

14

*already* met its deadline for a "written objection" under Rule 45(d)(2)(B), a

15

subsequent motion to quash would be "timely" so long as it is filed within a

16

reasonable time after the conclusion of informal efforts to resolve those objections

17

without the Court's involvement.[7] *See Friedman v. Old Republic Home Prot. Co*., No.

18

SACV 12-1833 AG (OPx), 2014 WL 12845131, at *2 (C.D. Cal. June 24, 2014) ("It is

19

not appropriate . . . to rob CRES of the opportunity to move to quash the subpoena

20

because its good faith efforts to resolve the matter outside of Court made its request

21

untimely under some decisions interpreting Rule 45.").

22

Bayside's only addition to its argument is a citation to *Franco v. Alorica, Inc.*,

23

---

24

[7] In any event, this argument does not help Bayside. Bayside has, in parallel, moved
to compel Twitter's compliance with its subpoena. Doc. 10. Twitter opposed that

25

motion to compel by re-asserting the arguments it made in its Motion to Quash. *See*
Doc. 16 ("Twitter opposes the Motion on the same First Amendment bases outlined

26

in Twitter's motion to quash…"). Even if Bayside is correct that Twitter's motion to
quash was untimely, that ruling has no effect on this litigation; the exact same

27

issues must be resolved in connection with Bayside's pending motion to compel.

28

No. 2:20-cv-05035, 2021 WL 6104816, at *3 (C.D. Cal. Nov. 5, 2021), a decision post-dating Twitter's motion to quash in this case. *Emy Franco* concerned a third party's failure to timely move to quash *under an existing scheduling order*. *Id.*, at *3. This dispute does not involve a scheduling order.

**D.    Twitter has established that the Tweets are sufficiently transformative so as to constitute fair use.**

The elements of fair use and the extent to which the Tweets qualify as fair uses have sufficiently been briefed by the parties. *See* Motion to Quash, § III.B.1; Reply In Support of Motion to Quash, § II.B; Motion, § IV.B. Only two fair use arguments in Bayside's Opposition warrant additional briefing beyond that submitted to this point by Twitter and the participating amici.

1.    <u>The Court can evaluate fair use based on the Tweets alone.</u>

Bayside does not contest that, in general, allegedly infringing content itself is sufficient evidence upon which a court may conduct a fair use analysis.[8] Twitter's Motion identifies several authorities establishing that point. Motion, at 7. And the amicus brief jointly submitted by the Electronic Frontier Foundation and the ACLU Foundation of Northern California helpfully collects authorities holding the same. EFF/ACLU Brief, at 9-10. The Tweets alone here are sufficient to establish fair use for the reasons Twitter has previously articulated, including that, *inter alia*, Tweeting is not generally a for-profit activity and the photographs are candid snapshots on their face.

2.    <u>Bayside misapprehends the"transformation" component of fair use analysis.</u>

Bayside misstates the law regarding the fair use doctrine's "transformation"

---

[8] This general concession is important and departs from the Magistrate Judge's Order, even if Bayside maintains that *these particular* Tweets offer insufficient evidence of fair use.

analysis. The Tweets here were used for criticism and commentary such that the Tweets were transformative uses of the photographs contained therein. *See, e.g., Sedgwick Claims Mgmt. Svcs., Inc. v. Delsman*, No. C 09-1468 SBA, 2009 WL 2157573, at *5 (N.D. Cal. July 17, 2009) (finding transformative the defendant's use of two copyrighted photographs that were copied, in full, onto a "WANTED" poster for the purpose of criticizing the plaintiff).

　　　　a. *Bayside lacks authority to support its position that "candid" photographs are legally indistinguishable from non-candid photographs.*

Transformative use is easier to recognize for "candid" photographs, which are more factual than creative in nature. *Katz v. Google Inc.*, 802 F.3d 1178, 1183 (11th Cir. 2015).[9] A "candid" photograph, on its face, is a photograph that is primarily factual, one in which there is little attempt to "convey ideas, emotions, or in any way influence [the subject's] pose, expression, or clothing." *Id.*

Bayside attempts to argue that a photograph's "candid" nature does not impact its copyright protections with respect to fair use by citing *Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith*, 11 F. 4th 26, 53 (2d Cir. 2021). *See* Opp., at 11. *Warhol* has no bearing on the transformative use analysis for candid photographs; it does not mention the term "candid" once, and the underlying photograph at issue in that case was not candid – it was a "photograph of the musical artist Prince that was taken…in [a] studio," and licensed to Vanity Fair, by Lynn Goldsmith, a "professional photographer primarily focusing on celebrity photography . . . [whose] work has been featured widely, including on over 100 record album covers." *Id.* at 32-33.

---

[9] Twitter has cited *Katz* in every substantive brief submitted to this Court because it dealt with allegedly infringing uses <u>identical</u> to the Tweets at issue here and found those uses to be transformative based on the facial content of the blog posts in question there.

1

2

3

       *b.  The Ninth Circuit has expressly rejected Bayside's argument that, to be transformative, a derivative work must comment on or criticize the original work.*

4

5

6

7

8

9

10

11

12

      Bayside also claims that for a derivative work to be a fair use of an original, that derivative work must "comment on or criticize the Photographs themselves." Opp., at 12. But here again, the authority cited elsewhere by Bayside belies this argument. *See Seltzer v. Green Day, Inc.*, 725 F. 3d 1170, 1177 (9th Cir. 2013); Opp., at 15-16 (citing *Seltzer* only on substantiality). Indeed, *Seltzer* is binding authority directly contradicting Bayside's argument. Like Bayside, *Seltzer* first cites *Monge* in reviewing the "typical 'non-transformative' case," where a derivative use "makes no alteration to the *expressive content or message* of the original work." *Id.* (emphasis in original). But the Ninth Circuit continues:

13

14

15

16

> In contrast, an allegedly infringing work is typically viewed as transformative as long as new expressive content or message is apparent. This is so even where–as here–the allegedly infringing work makes few physical changes to the original *or fails to comment on the original.*

17

18

19

20

21

22

*Id.* (emphasis added) (collecting cases holding same). That holding should be uncontroversial; fair use is frequently recognized for uses that do not "comment on or criticize" the copyrighted works themselves. *See, e.g., Dhillon v. Does 1-10*, No. C 13-01465, 2014 WL 722592, at *5 (N.D. Cal. Feb. 25, 2014) (defendant's use of copyrighted photograph was transformative fair use where used "as part of its criticism of, and commentary on, the plaintiff's politics").

23

       *c.  Bayside's juxtaposition of parody and satire is irrelevant to this dispute.*

24

25

26

27

      Bayside's asserted distinction between parody and satire is not determinative of whether the Tweets constitute fair use. Opp., at 13-14. "[W]hat matters is whether the work is transformative, not whether it is parody or satire or caricature or serious social commentary or any other specific form of expression." *Hilton v. Hallmark*

28

*Cards*, 599 F.3d 894, 910 n.13 (9th Cir. 2010) (cleaned up). And no matter how the Tweets are classified, they were facially intended to criticize or comment on Brian Sheth's lifestyle. *See* 17 U.S.C. § 107 ("criticism, comment" expressly protected as an authorized fair use purpose); *In re DMCA Subpoena to Reddit, Inc.*, 441 F. Supp. 3d 875, 884 (N.D. Cal. 2020) (use of Watch Tower's copyrighted works "in their original and unaltered states" was transformative where accompanied by criticism of Watch Tower, because "physical changes are not required for a new use to be transformative"); *In re DMCA Section 512(h) Subpoena to YouTube (Google, Inc.)*, – F. Supp. 3d –, No. 7:18-mc-00268 (NSR), 2022 WL 160270, at *9 (S.D.N.Y. Jan. 18, 2022) (quashing Section 512(h) subpoena to Google because YouTube user's use of copyrighted works was critical commentary and therefore transformative fair use). So long as that criticism of Sheth was not the use for which the photographs were originally copyrighted–and Bayside concedes it is not–the user's application here was transformative. *See* Opp., at  2 (articulating that, rather than being in the business of criticizing billionaires, Bayside "acquires and licenses photographs for commercial exploitation").

### E. The balance of harms weighs in favor of protecting the user.

Twitter shares Public Citizen's position as to how the Court should apply the "balancing test" supplied by *Highfields*,[10] and Twitter also agrees that no party bears the burden of proof (nor any evidentiary burden) at the balancing test stage. Public Citizen Brief, at 14-16; Motion, at 9 ("no evidence is needed").

Tipping the balance in the user's favor are the inherent and profound harms

---

[10] The briefing already before the Court, both by Twitter and by Public Citizen, sufficiently establishes that *Highfields* offers the appropriate First Amendment standard here. The *Sony* standard advanced by Bayside applies to an entirely different type of alleged copyright infringement (naked file-sharing) that enjoyed very limited protections under the First Amendment. *See* Public Citizen Brief, Part II.

that enforcement of subpoenas like this have in chilling free speech. As numerous courts have recognized, unmasking alone (even without any eventual lawsuit being filed) is enough to dissuade other individuals from engaging in protected speech activities, particularly where they would be criticizing rich and powerful individuals capable of sustaining lengthy and costly litigation. Motion, at 9-10. And this Court's decision will not go unnoticed; as should be evident from the substantial amici participation *already* at this stage, and by the substantial volume of press attention[11] and critical commentary[12] on these proceedings, the outcome of this dispute could substantially impact public discourse.

Bayside, on the other hand, has not set forth any factors to tip the balance in its favor, despite being singularly able to do so. For example, Bayside could have explained why or how its inability to pursue a copyright claim here would impact its business or the copyrighted works' values. Bayside has not even articulated how these copyrighted works are important to it, or how–as Public Citizen points out– "the pursuit of this litigation could be economically rational" considering that it could recover only limited damages on its infringement claims and could not recover attorneys' fees. Public Citizen Brief, at 16-17.

Bayside's silence on the balancing test is noteworthy because the facts that *are* available about Bayside should give the Court serious pause before crediting its

---

[11] *See, e.g.,* Antoine Gara, *Vista Co-Founder Brian Sheth And the Battle Over Salacious Twitter Account @CallMeMoneyBags*, Forbes Editors' Pick (Feb. 8, 2021), https://www.forbes.com/sites/antoinegara/2021/02/08/exclusive-vista-co-founder-brian-sheth-tied-to-battle-over-salacious-twitter-account-callmemoneybags/?sh=564ef262f497; Wendy Davis, *Watchdogs Blast 'Deeply Flawed' Order Unmasking 'CallMeMoneyBags'*, Media Post (Feb. 22, 2022), https://www.mediapost.com/publications/article/371401/watchdogs-blast-deeply-flawed-order-unmasking-c.html.
[12] Mike Masnick, *ACLU & EFF Step Up To Tell Court You Don't Get To Expose An Anonymous Tweeter With A Sketchy Copyright Claim*, Techdirt (Feb. 24, 2022), https://www.techdirt.com/2022/02/24/aclu-eff-step-up-to-tell-court-you-dont-get-to-expose-anonymous-tweeter-with-sketchy-copyright-claim/.

arguments. *See* Public Citizen Brief, at 17 (noting that Bayside was not formed until the month the photos were posted on Twitter; Bayside had never registered any copyrights until it registered the copyrights in these six photographs; and Bayside lacks any publicly available information about its controllers, formation, or purpose).

Twitter has offered the Court everything it can offer with respect to balancing the harms between the anonymous user and Bayside's purported copyright interests. And Twitter contends that that offering is sufficient; numerous other courts have held that the "self-evident" prospect of chilled speech is enough to quash similar subpoenas. Motion, at 9-10. If the Court seeks additional information so as to conduct the balancing test, the Court may in its discretion ask that Bayside further explain its interests here. *See generally* Public Citizen Brief, at 17 (citing *America Online v. Anon. Pub. Traded Co.*, 542 S.E.2d 377, 385 (Va. 2001) for this option).

### III.  CONCLUSION

For the foregoing reasons, Twitter requests that the Court vacate the Order, quash the subpoena, and deny Bayside's motion to compel.

Dated:  April 25, 2022                    PERKINS COIE LLP

By:*/s/ Julie E. Schwartz*
Julie E. Schwartz, CA Bar No. 260624
Hayden M. Schottlaender, TX Bar No. 24098391